# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

PATRICIA CAVALLARO-KEARINS and
YOLANDA PITRE, on behalf of themselves
and all others similarly situated,

          Plaintiffs,

   v.

GRUNS NUTRITION, INC.,

          Defendant.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Case No. 25-cv-4998

Plaintiffs Patricia Cavallaro-Kearins and Yolanda Pitre, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Gruns Nutrition, Inc. ("Grüns" or "Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

## TABLE OF CONTENTS

NATURE OF THE ACTION ........................................................................... 1

THE PARTIES ............................................................................................... 2

JURISDICTION AND VENUE....................................................................... 3

FACTUAL ALLEGATIONS .......................................................................... 4

    A.    Defendant Markets the Gummies as Providing Comprehensive and
        Complete Nutrition or Health ................................................................ 6

        1.    Advertising Grüns Adults ............................................................ 6

        2.    Advertising Grüns Kids ............................................................. 13

        3.    Advertising the Gummies as a Cure-All ..................................... 22

        4.    Marketing the Gummies Through Email..................................... 27

        5.    Marketing the Gummies on the Website ..................................... 29

        6.    Marketing the Gummies on Product Packaging........................ 34

    B.    Defendant's Promises of "Comprehensive" and "Complete" Nutrition
        are Misleading and Deceptive ............................................................. 35

        1.    Misleading Claims of "Comprehensive" Nutrition .................... 36

        2.    Misleading Claims Targeting GLP-1 Users................................ 38

        3.    Misleading Claims Targeting Children and Parents ................. 40

        4.    Commanding a Price Premium Based on These
            Misrepresentations........................................................................ 45

CLASS ACTION ALLEGATIONS ............................................................. 46

FIRST CAUSE OF ACTION ....................................................................... 52

SECOND CAUSE OF ACTION .................................................................. 54

THIRD CAUSE OF ACTION ...................................................................... 56

FOURTH CAUSE OF ACTION .................................................................. 59

FIFTH CAUSE OF ACTION....................................................................... 61

SIXTH CAUSE OF ACTION....................................................................... 63

PRAYER FOR RELIEF ............................................................................... 65

## NATURE OF THE ACTION

1.    Defendant manufactures, markets, and sells Superfoods Greens Gummies for Adults ("Grüns Adults") and a parallel product for children called Grüns Cubs or Kids ("Grüns Kids") (together, "the Gummies").

 

2.    The Gummies are expensive. A one-time purchase of Grüns Adults (Low Sugar) has retailed for $79.99 or higher, and Grüns Adults (Sugar-Free) has been priced at $87.99.

3.    Grüns Kids (both Low Sugar and Sugar-Free) are currently only available through an "AutoShip and Save" subscription model, and have been available for purchase at up to $50.24 for a four-week pouch.

4.    Through aggressive marketing, Defendant presents the Gummies as a "comprehensive" and "complete" solution for daily nutrition, claiming they provide

"100% of kids' daily nutrition," "all-in-one" support for GLP-1 users, and a replacement for essential nutrients.

5.      These claims are false and misleading. The Gummies lack key macronutrients like protein and fat, contain inadequate amounts of critical nutrients like fiber and iron, and none of others, like calcium and omega-3 fatty acids, and cannot plausibly replace the nutritional complexity of real food.

6.      Defendant's false and misleading statements caused Plaintiffs and members of the proposed classes to pay a price premium for the Gummies. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Gummies or would have paid significantly less.

7.      Plaintiffs seek monetary and injunctive relief against Defendant for violating New York General Business Law ("GBL") §§ 349–50; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and common law prohibitions on unjust enrichment.

## THE PARTIES

8.      Plaintiff Patricia Cavallaro-Kearins is a New York resident. Plaintiff Cavallaro-Kearins purchased Grüns Kids (Low Sugar) and Grüns Adults (Sugar Free) from Grüns's website, gruns.co. Plaintiff relied on Defendant's representations regarding the Gummies' nutritional benefits and would not have purchased them, or would have paid less, had she known the truth.

9.     Plaintiff Yolanda Pitre is a California resident. Plaintiff Pitre purchased Grüns Adults from Target. Plaintiff relied on Defendant's representations regarding the Gummies' nutritional benefits and would not have purchased them, or would have paid less, had she known the truth.

10.     Defendant Gruns Nutrition, Inc. is a Delaware corporation headquartered at 9450 SW Gemini Drive, Beaverton, Oregon 97008.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

12.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

13.     This Court has personal jurisdiction over Defendant because it committed the tortious acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

15.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

16.    Defendant markets and sells the Gummies through its own website and through third-party retailers including Target, Amazon, Sprouts, and TikTok Shop.

17.    Defendant's advertising constructs the unified and deceptive narrative that Grüns provides "comprehensive" or "complete" nutrition sufficient to meet daily health needs, obviating the need for other supplements, nutrients, or whole foods.

18.    Defendant complements these representations by marketing Grüns Adults as a substitute for the nutritional impact of diet curbed by GLP-1 agonists, and Grüns Kids as full-scale substitutes for fruits and vegetables. These claims blur the line between a dietary supplement and a nutritionally complete product that can act as a stand-in for almost all nutrition, including the eating of actual whole foods.

19.    Defendant's advertising is prolific and reckless. For example, on May 29, 2025 alone, Defendant launched over 200 separate advertisements across Meta platforms.

20.    This volume reflects an aggressive campaign that prioritizes market saturation over truth. Indeed, Defendant's own messaging frequently contradicts itself. On the same day, it ran one ad claiming that "95% of kids don't get enough fiber," while another stated that "78% of the children do not meet the recommended intake for fiber."

 

21.     Defendant's marketing blitz is so aggressive and unchecked that it contradicts itself, even about basic facts, just to push its products.

22.     Defendant charges a significant price premium for the Gummies. On Defendant's website, Adult Gummies (Low Sugar) has retailed for $79.99 or higher, and Adult Gummies (Sugar-Free) has been priced at $87.99.

23.     Grüns Kids are only available through an "AutoShip and Save" subscription model, and have been available for purchase at up to $50.24 for a four-week pouch (both Low Sugar and Sugar-Free).

24.     This premium is not driven by higher manufacturing costs or proven health benefits. Rather, it stems from Defendant's marketing strategy, which

---

[1] https://www.facebook.com/ads/library/?id=3619067991560120 (last accessed June 12, 2025)

[2] https://www.facebook.com/ads/library/?id=1330634621917776 (last accessed June 12, 2025)

promotes the Gummies as replacements for multivitamins, balanced diets, and complex health routines. Through repeated claims of "comprehensive nutrition," "all-in-one health," and "everything you need," Defendant manufactures a net impression that is both false and misleading. No single gummy product, regardless of branding, can meet the full nutritional needs of a human being.

25.     By deceptively and misleadingly representing the "comprehensive" and "complete" nature of the Gummies, Defendant induces consumers to pay for effects the products cannot deliver. Consumers reasonably believe they are purchasing a truly "comprehensive" and "complete" product for the sake of nutrition and health and are misled into overpaying for a product based on false or unsubstantiated claims.

## A.   Defendant Markets the Gummies as Providing Comprehensive and Complete Nutrition or Health

26.     Defendant repeatedly markets the Gummies as providing comprehensive or complete nutrition. Across its website, advertising, and social media, Defendant positions the Gummies as a total solution to nutritional needs.

### 1.   Advertising Grüns Adults

27.     Defendant aggressively markets Grüns Adults as a standalone, comprehensive nutrition solution. In video ads, product graphics, and captions, Defendant asserts that Grüns Adults eliminate the need for other supplements or dietary adjustments.

28.     Video ads describe Grüns Adults as:

- "Basically everything you need in a fun comprehensive gummy,"[3] and

- A way to "jumpstart your journey to comprehensive health with Grüns."[4]



29.    In graphics, Defendant advertises, "Grüns Comprehensive Nutrition Gummies,"[5] and "One packet, all the nutrients:"[6]

---

[3] https://www.facebook.com/ads/library/?id=599718822567859 (last accessed June 12, 2025)

[4] https://www.facebook.com/ads/library/?id=3997479610464537 (last accessed June 12, 2025)

[5] https://www.facebook.com/ads/library/?id=1964640477674353 (last accessed June 12, 2025)

[6] https://www.facebook.com/ads/library/?id=1375142393757819 (last accessed June 12, 2025)



30. In another graphic, Defendant specifies that Grüns Adults, an "[a]ll-in-one supplement," is the converse of other products that "[n]eed other supplements to complement."[7]



---

[7] https://www.facebook.com/ads/library/?id=1750064268940449 (last accessed June 12, 2025)

31.    In captions, Defendant uses total and definitive language, declaring:

- "Grüns Superfood Gummies are your all-in-one health hack!"[8]

- "Grüns Daily is your all-in-one supplement solution[.]"[9]

- "Enjoy all the nutrients in 8 tasty gummy bears[.]"[10]

- "Grüns Superfood Gummies are your all-in-one solution for daily nutrition."[11]

32.    Grüns often uses similar language in other pieces of its social media marketing, tagging various advertisements with "comprehensive":



[12]

---

[8] https://www.facebook.com/ads/library/?id=990548536623180 (last accessed June 12, 2025)

[9] https://www.facebook.com/ads/library/?id=695048983273093 (last accessed June 12, 2025)

[10] https://www.facebook.com/ads/library/?id=3997479610464537 (last accessed June 12, 2025)

[11] https://www.facebook.com/ads/library/?id=1400196511126490 (last accessed June 12, 2025)

[12] https://www.facebook.com/ads/library/?id=683984764260137 (last accessed June 12, 2025)



33.     The message that Grüns replaces the need for traditional food-based nutrition is extended to individuals taking GLP-1 agonists like Ozempic.

34.     Defendant's marketing repeatedly targets this population with specific claims that the Gummies compensate for dietary deficiencies caused by reduced appetite. For instance, Grüns markets the product as "Comprehensive Gummies for Ozempic Users." In another ad, the graphic describes Grüns as "The most convenient way to get all my nutrients on Ozempic," stating:

> Are you on a weight loss journey? These 8 gummies are packed with 100% of your essential nutrients and prebiotics in a convenient, on-the-go pouch. Grüns is here to ensure you are getting all of your daily nutrients while you are eating less.

---

[13] https://www.facebook.com/ads/library/?id=1004988344954469 (last accessed June 12, 2025)

 

35.    Other social media captions and graphics echo the same promise: "get ALL [] nutrients on Ozempic."

[14] https://www.facebook.com/ads/library/?id=1066177061955212 (last accessed June 12, 2025)

[15] https://www.facebook.com/ads/library/?id=1220311976156497 (last accessed June 12, 2025)

 



36.     These GLP-1-focused messages build on the "comprehensive" branding,

reinforcing the core claim that Grüns can substitute for food-derived nutrition.

---

[16] https://www.facebook.com/ads/library/?id=564049856465079 (last accessed June 12, 2025)

[17] https://www.facebook.com/ads/library/?id=694624616546187 (last accessed June 12, 2025)

[18] https://www.facebook.com/ads/library/?id=1377551056879971 (last accessed June 12, 2025)

37.    A key focus across both general comprehensive and GLP-1-targeted ads is fiber. In all three above ads, Defendant stresses the fiber content. In others, Defendant explicitly promotes its fiber content as a substitute for whole foods, often using punchy comparisons.

38.    For example, one ad states: "Fiber without the leafy overload," and another claims, "You'd need a whole salad bar to match the fiber in just one pack of Grüns."[19]



39.    Across the board, Defendant positions itself as a supplement that replaces—not complements, a healthy diet.

### 2.    Advertising Grüns Kids

40.    Defendant advertises Grüns Kids as a complete and comprehensive nutritional solution. Promotional graphics describe the product as providing

---

[19] https://www.facebook.com/ads/library/?id=1012562877529336 (last accessed June 12, 2025)

"Complete Nutrition for Kids,"[20] a "Daily Comprehensive" supplement,[21] and "The Easy Way to Cover Kids' Nutrients:"[22]

 

 

---

[20] https://www.facebook.com/ads/library/?id=1434981407538015 (last accessed June 6, 2025); https://www.facebook.com/ads/library/?id=1916615092446628 (last accessed June 12, 2025)

[21] https://www.facebook.com/ads/library/?id=697101979741540 (last accessed June 12, 2025)

[22] https://www.facebook.com/ads/library/?id=2074668173028248 (last accessed June 12, 2025)

41.    Defendant reinforces this message across multiple ads:

- "100% of Kids' Daily Nutrition! . . . Easily meet your daily nutrient needs with one grab-and-go snack pack of gummies."[23]

- "All-in-One Nutrition."



[24]

---

[23] https://www.facebook.com/ads/library/?id=1381246499745415 (last accessed June 12, 2025)

[24] https://www.facebook.com/ads/library/?id=1334734747613912 (last accessed June 12, 2025)

 

42.     Video content echoes these representations. In one clip, Grüns is described as "a convenient, comprehensive formula."[27] In another, a child actor states, "They're actually the best way to fill in important nutritional gaps in my diet," followed by the narrator: "Choose family-friendly comprehensive nutrition."[28]

43.     Defendant's social media advertisements position Grüns Kids as so nutritionally complete that it can act as a substitute, not just a complement, for fruits

[25] https://www.facebook.com/ads/library/?id=1070646531847982 (last accessed June 12, 2025)

[26] https://www.facebook.com/ads/library/?id=4020955848118526 (last accessed June 12, 2025)

[27] https://www.facebook.com/ads/library/?id=1766397620751713 (last accessed June 12, 2025)

[28] https://www.facebook.com/ads/library/?id=1803966656817789 (last accessed June 12, 2025)

and vegetables. The campaign repeatedly asserts that six gummies provide "complete nutrition." This claim of equivalence is the foundation of Grüns' value proposition: better nutrition, no vegetables, no arguments.



44.    Defendant's advertising explicitly equates the gummies with produce. One graphic declares: "THIS HAS A FULL SERVING OF VEGGIES."[30]

---

[29] https://www.facebook.com/ads/library/?id=707908994973207 (last accessed June 12, 2025)

[30] https://www.facebook.com/ads/library/?id=24057805273823160 (last accessed June 12, 2025)



45.    Other messaging promises "100% of Kids' Daily Nutrition" in a single pouch.[31]

46.    The substitution message is tailored to a familiar concern: children who refuse vegetables. One caption states, "Grüns Cubs provide essential vitamins and minerals in a delicious gummy form . . . without the fight over veggies."[32] A testimonial reads, "My kid won't eat veggies AT ALL. Will these actually help with nutrition gaps?" to which the brand responds: "100%. They sneak the veggies kids won't eat in a delicious way."[33]

---

[31] https://www.facebook.com/ads/library/?id=1381246499745415 (last accessed June 12, 2025)

[32] https://www.facebook.com/ads/library/?id=1681880509362498 (last accessed June 12, 2025)

[33] https://www.facebook.com/ads/library/?id=708068214964316 (last accessed June 12, 2025)



47.    To further entrench this idea, draws direct cost comparisons between its gummies and real produce. One graphic presents a side-by-side price comparison between a month of Grüns Kids and a month of vegetables.[34]

---

[34] https://www.facebook.com/ads/library/?id=29634352956179174 (last accessed June 12, 2025)



48.    Defendant's videos feature child narrators claiming that Grüns is "very best way to get all the vitamins, minerals, fruits, and veggies growing kids like me need."[35]

49.    Defendant explicitly advertises Grüns Cubs to parents of children with sensory processing difficulties:

---

[35] https://www.facebook.com/ads/library/?id=1235862061270126 (last accessed June 12, 2025)



50.    Nowhere in the campaign does Grüns encourage consumption of fruits and vegetables. Instead, the messaging consistently pivots toward ease, avoidance, and substitution:

- "The Easiest Way for Kids to Get Their Greens."[37]

- "Your Kid Refuses Veggies? Start Here."[38]

- "Tired of unhealthy snacks for your kids? . . . . Say goodbye to fights over food, hello to happy tummies!"[39]

---

[36] https://www.facebook.com/ads/library/?id=1494281481575764 (last accessed June 12, 2025)

[37] https://www.facebook.com/ads/library/?id=1098394848799637 (last accessed June 12, 2025)

[38] https://www.facebook.com/ads/library/?id=2198205547266693 (last accessed June 12, 2025)

[39] https://www.facebook.com/ads/library/?id=1381246499745415 (last accessed June 12, 2025)

 

51.    Taken together, Defendant's messaging of Grüns Kids tells parents that fruits and vegetables are no longer necessary. Defendant promises "complete" nutritional coverage from six gummies and offers parents a way out of the dinner table standoff. That is the offer, and that is the claim.

### 3.    Advertising the Gummies as a Cure-All

52.    Defendant's promotion of the Gummies as offering "comprehensive" or "complete" nutrition also extends to health outcomes. Defendant markets the Gummies as a one-stop solution for a wide range of unrelated health concerns, positioning a single daily dose as capable of improving everything from digestion to testosterone levels. Defendant advertises the Gummies as addressing gut health, energy, cognition, immunity, mood, hair growth, skin clarity, and men's health.

53.    To support this positioning, Defendant promotes the supposed beneficial effects of the Gummies across multiple domains of health, making sweeping claims tailored to consumers with a variety of issues, including gut and digestive health,

energy and focus, cognitive function and mood, immune support and cold and flu prevention, hair, skin, and nails, and testosterone and men's health, including the following:

54.   **Representations regarding gut and digestive health**:

- "Support gut health and stay regular"[40]

- "Beat the bloat" and "Say goodbye to bloat"[41]

- "Better digestion & no bloating"[42]

- "Way better poops"[43]

- "No more bloating"[44]

- "[F]ewer tummy troubles"[45]

- "Gut Health That Fits in a Lunchbox"[46]

---

[40] https://www.facebook.com/ads/library/?id=1705662416721560 (last accessed June 12, 2025)

[41] https://www.facebook.com/ads/library/?id=721632420424331 (last accessed June 12, 2025)

[42] https://www.facebook.com/ads/library/?id=1344295530004355 (last accessed June 12, 2025)

[43] https://www.facebook.com/ads/library/?id=28871389362476246 (last accessed June 12, 2025)

[44] https://www.facebook.com/ads/library/?id=527769356745598 (last accessed June 12, 2025)

[45] https://www.facebook.com/ads/library/?id=1024765459120601 (last accessed June 12, 2025)

[46] https://www.facebook.com/ads/library/?id=1267691905359277 (last accessed June 12, 2025)

55.    **Representations regarding energy and focus**:

- "Crush your day without the 2pm crash"[47]

- "#1 energy hack"[48]

- "[N]o energy crashes"[49]

- "Keep your energy high"[50]

- "Boost of energy"[51]

- "Radiant and energetic"[52]

56.    **Representations regarding cognitive function and mood**:

- "Sharpened focus"[53]

- "[E]levated mood"[54]

---

[47] https://www.facebook.com/ads/library/?id=1287239012342001 (last accessed June 12, 2025)

[48] https://www.facebook.com/ads/library/?id=3552606408375449 (last accessed June 12, 2025)

[49] https://www.facebook.com/ads/library/?id=2021444941594494 (last accessed June 12, 2025)

[50] https://www.facebook.com/ads/library/?id=961034979572843 (last accessed June 12, 2025)

[51] https://www.facebook.com/ads/library/?id=1039597584715359 (last accessed June 12, 2025)

[52] https://www.facebook.com/ads/library/?id=3825046627808067 (last accessed June 12, 2025)

[53] https://www.facebook.com/ads/library/?id=1453900052415155 (last accessed June 12, 2025)

[54] *Id.*

- "These gummies support cognitive function, enhance focus, and improve mental clarity"[55]
- "Cognition That Fits in a Lunchbox"[56]

57.    **Representations regarding immune support and cold and flu prevention**:

- "A Tasty Way to Help Fight Off Germs"[57]
- "STOP SICK DAYS"[58]
- "Holiday fun without the sniffles"[59]
- "Ingredients in Grüns help reduce colds by 70%"[60]
- "Immunity That Fits in a Lunchbox"[61]
- "[F]ewer sick days"[62]

---

[55] https://www.facebook.com/ads/library/?id=1040581778023580 (last accessed June 12, 2025)

[56] https://www.facebook.com/ads/library/?id=1361273708347725 (last accessed June 12, 2025)

[57] https://www.facebook.com/ads/library/?id=9959131294176276 (last accessed June 12, 2025)

[58] https://www.facebook.com/ads/library/?id=1702091587367522 (last accessed June 12, 2025)

[59] https://www.facebook.com/ads/library/?id=1167260974690814 (last accessed June 12, 2025)

[60] https://www.facebook.com/ads/library/?id=9328074477246943 (last accessed June 12, 2025)

[61] https://www.facebook.com/ads/library/?id=1178969560199919 (last accessed June 12, 2025)

[62] https://www.facebook.com/ads/library/?id=1889524888508681 (last accessed June 12, 2025)

58.    **Representations regarding hair, skin, and nails**:

- "Struggling with hair loss? Grüns Superfood Gummies are designed to help boost hair growth"[63]

- "Keep the hair, lose the stress"[64]

- "Stronger hair in just 30 days"[65]

- "Skin is nicer"[66]

- "Nails grow faster"[67]

- "Boost hair health naturally"[68]

59.    **Representations regarding testosterone and men's health**:

- "[T]hese gummies give your body what it needs to support healthy testosterone levels."[69]

- "Testosterone-boosting ingredients in 8 delicious gummies"[70]

---

[63] https://www.facebook.com/ads/library/?id=1481453853234214 (last accessed June 12, 2025)

[64] *Id.*

[65] https://www.facebook.com/ads/library/?id=1040581778023580 (last accessed June 12, 2025)

[66] https://www.facebook.com/ads/library/?id=1039597584715359 (last accessed June 12, 2025)

[67] *Id.*

[68] https://www.facebook.com/ads/library/?id=634357959481677 (last accessed June 12, 2025)

[69] https://www.facebook.com/ads/library/?id=976734874218227 (last accessed June 12, 2025)

[70] https://www.facebook.com/ads/library/?id=663381679569019 (last accessed June 12, 2025)

- "[O]ur formula is designed to naturally support healthy testosterone levels, improve strength, and enhance performance."[71]

- "Boost T-levels, naturally"[72]

60.    This sweeping set of representations across fundamentally unrelated systems of the body mimics the pattern of classic "cure-all" advertising by offering consumers a promise of comprehensive or complete wellness. By layering together so many benefits, Defendants constructs the illusion of efficacy by volume, relying on the cumulative weight of dozens of specific claims to give the impression that the product works broadly and reliably.

### 4.    Marketing the Gummies Through Email

61.    Defendant repeatedly reinforces its deceptive marketing through direct email communications sent from its customer service address, care@gruns.co. These emails prominently feature uniform claims about Grüns providing comprehensive nutrition, complete supplementation, and substitutes for whole foods.

62.    **Representations regarding replacement of food and supplements**:

- "You could eat a bowl of kale… or just chew 8 gummies. (We vote gummies)." (June 12, 2025)

---

[71] *Id.*

[72] https://www.facebook.com/ads/library/?id=683768307497684 (last accessed June 12, 2025)



- "Bye, Supplements." (June 8, 2025)

- "Compare This…" "Buying 5 different supplements separately" "To This…" "Just buy Grüns" (June 8, 2025)

- "Gruns replaces all supplements" (June 6, 2025)

63.  **Representations regarding comprehensive nutrition**:

- "All Your Health Essentials" "PACKED IN 8 TASTY GUMMIES" (June 11, 2025)

- "MOST COMPREHENSIVE NUTRIENT BLEND" (June 10, 2025)

- "CONSIDER YOUR NUTRITIONAL BASES COVERED" (June 9, 2025)

- "COMPREHENSIVE NUTRITION IN TASTY GUMMIES" (June 8, 2025)

- "PACKABLE, SNACKABLE, COMPREHENSIVE NUTRITION" (June 7, 2025)

- "Don't Miss Your Chance On Comprehensive Nutrition That Your Body Needs" (June 7, 2025)

- "GIVE YOUR LITTLE ONES THE SAME COMPREHENSIVE NUTRITION YOU LOVE" (June 6, 2025)

- "What You Need" [accompanied by a Grüns Adults pouch and repeated "COMPREHENSIVE NUTRITION" graphic] (June 6, 2025)

64.    Defendant's email marketing makes specific, outcome-based promises about the effects of its Gummies. For example, in an email sent on June 12, 2025, Defendant claims, "Say Bye to Bloat, Hello to Fiber," and later asks, "READY TO BE BLOAT FREE?" In a different email sent that same day, Defendant claims, "Yes, It Actually Works," and "Fix your gut with 8 green gummies." Another email sent on June 8, 2025, asserts that the Gummies "[s]upport gut health & immunity" and "[h]elp give you strength and support[] weight loss and metabolism."

65.    Taken together, these emails reflect a consistent messaging strategy aimed at positioning Grüns as a complete and convenient replacement for both food and supplements, while emphasizing its purported health benefits.

### 5.    Marketing the Gummies on the Website

66.    Defendant's insistence on providing "comprehensive" nutrition continues on its website, gruns.co, where it doubles down on its promise of total nutritional sufficiency. According to the website, the Gummies are:

- A "revolutionary comprehensive nutrition gummy"[73]

- The "world's only comprehensive nutrition gummy"[74]

- "[C]omprehensive nutrition, made convenient and delicious."[75]

67.    The site claims that Defendant "combines 60 whole-food bioavailable ingredients, vitamins and minerals, super mushrooms, and more to create the perfect blend for optimal health."[76] The repetition of "comprehensive" is deliberate and constant:

- "Our **comprehensive gummies** integrate a variety of nutrients in complementary pairings to work in harmony, delivering maximum benefits and better absorption."[77] (emphasis added.)

- "Grüns gummies work together to provide **comprehensive nutrition** for your body and mind. Our plant-based, vegan, gluten-free, dairy-free, and nut-free formula ensures that everyone can enjoy the benefits of **comprehensive nutrition** in a convenient and delicious form."[78] (emphasis added.)

---

[73] https://gruns.co/pages/how-gruns-works (last accessed June 12, 2025)

[74] https://gruns.co/pages/our-story (last accessed June 12, 2025)

[75] *Id.*

[76] https://gruns.co/pages/how-gruns-works (last accessed June 12, 2025)

[77] *Id.*

[78] *Id.*

- "Embrace the delightful flavor and myriad health advantages of our **comprehensive nutrition gummies** at any moment throughout the day."[79] (emphasis added.)

- "Grüns makes **comprehensive nutrition** easy."[80] (emphasis added.)

- "Witness the gradual yet powerful impact of **comprehensive nutrition**[.]"[81] (emphasis added.)

- "We're dedicated to bringing **comprehensive and real nutrition** to you through our gummies, formulated from 60 nutrient-dense and whole-food ingredients."[82] (emphasis added.)

68.    Relatedly, Grüns also claims to address Americans' widespread nutritional deficiencies:

- "Grüns is here to help 92% of people with nutrient deficiencies."[83]

- "Grüns are a total upgrade to your traditional multivitamin. Each daily pack of gummies combines the benefits of eight different health products in one, so you're covered on everything from vitamins to minerals, prebiotics, mushrooms, adaptogens, superfoods, greens, and

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] https://gruns.co/pages/our-story (last accessed June 12, 2025)

[83] https://gruns.co/pages/faqs (last accessed June 12, 2025)

phytonutrients. Just eat some cute gummy bears, and you're good to
go!"[84]

69.    Defendant continues to make these representations on the specific
product pages of the Grüns Adults' and Kids' sections of the website. Defendant
displays a go-to-product-page button that states "Try comprehensive gummies" on
the Adults' product page and "Try cubs comprehensive gummies" on the Kids' product
page:



---

## The Healthy Habit Kids Will Want to Keep

Give your kids what they need to reach their full potential with tasty daily gummies. Created by parents, Grüns Kids are the best way to fill nutrient gaps and promote healthy growth.

**Try cubs comprehensive gummies**

70.    In both FAQs, Defendant answers, "Why Grüns?" with "**Comprehensive:** Nutrition that works. Grüns replaces handfuls of health products at a fraction of the cost." And lists of characteristics of both Gummies include "comprehensive."

## Get Your Grüns

Vegan | Comprehensive | Delicious | Fast Acting

★★★★★  4.8 stars from 35,000 reviews | **250,000+** members

## Get Grüns Cubs

A Sneaky Delicious Surprise | Vegan | Comprehensive

★★★★★  4.8 stars from 20,000 reviews | **250,000+** members

71.    On its website, Defendant also makes health claims tied to specific ingredients and nutrients, including fiber. For example, Defendant states that the

Gummies "support[] digestive health by providing a blend of prebiotic fibers that nourish healthy gut bacteria, improve regularity, and enhance overall gastrointestinal function."[85]

72.    Defendant further claims that the Gummies offer an extraordinarily broad range of benefits:

> The benefits of Grüns make up a long list. Try saying all of this with one breath of air: gut health, immunity, brain health, cognitive clarity, energy, thicker hair and nails, healthier skin, anti-aging, potential stress relief, recovery, strength building, detoxification, better sleep, prenatal health, and overall health.[86]

### 6.    Marketing the Gummies on Product Packaging

73.    Defendant's product packaging cements the claim. On the front of Grüns Adult pouches, in bright yellow font against a green background, Defendant declares: "Comprehensive Nutrition." The sugar-free version carries the same label.

 

---

[85] https://gruns.co/pages/science (last accessed June 12, 2025)

[86] https://gruns.co/ (last accessed June 12, 2025)

74.    Both version of Grüns Kids packaging reiterates: "Comprehensive Nutrition for Kids." Defendant also tacks on "All-In-One."



75.    From the front of the pouch to the FAQs on its website, Defendant drives home the same message: Grüns is all you need. Not some of what you need. Not a helpful addition. All of it.

## B.    Defendant's Promises of "Comprehensive" and "Complete" Nutrition are Misleading and Deceptive

76.    Defendant markets its products as delivering "comprehensive" and "complete" nutrition to adults and children. Defendant repeatedly promises consumers that six or eight gummies a day can meet complex nutritional needs.

77.    These claims collapse under even minimal scrutiny. Grüns' gummies omit entire classes of essential nutrients and provide inadequate amounts of others. By claiming to offer "all-in-one" solutions, "100% daily nutrition," or "everything you need," Defendant presents its "comprehensive" products as nutritionally sufficient across the board when they are not.

78.     In short, Defendant promises total nutrition. It delivers a fraction.

### 1.     Misleading Claims of "Comprehensive" Nutrition

79.     Across its website, packaging, and social media, Defendant markets a handful of gummies as delivering "comprehensive nutrition," claiming users can "get all [their] nutrients" from six or eight gummies.

80.     Grüns Adults is labeled "All-in-One Nutrition," promoted as filling "nutritional gaps," and advertised as delivering "100% of your essential nutrients."

81.     Grüns Kids promises "100% of Kids' Daily Nutrition."

82.     By claiming that its products provide "comprehensive" nutrition, Defendant conveys the message that Defendant "cover[s] completely or broadly" the dietary needs of consumers for essential nutrients.[87]

83.     This is misleading. According to the Cleveland Clinic, the human body requires six essential nutrients: fats, carbohydrates, protein, vitamins, minerals, and water.[88] Defendant's Gummies, however, lack protein and fats entirely, including essential omega-3 fatty acids, and only deliver minimal amounts of key minerals like iron and none of others, like calcium.

84.     Omega-3 fatty acids, such as eicosapentaenoic acid ("EPA") and docosahexaenoic acid ("DHA"), are crucial in a healthy human diet. Indeed, "most health organizations agree that 250–500 mg of combined EPA and DHA is enough for

---

[87] https://www.merriam-webster.com/dictionary/comprehensive (last accessed June 12, 2025)

[88] https://health.clevelandclinic.org/essential-nutrients (last accessed June 12, 2025)

adults to maintain their overall health."[89] Yet the Gummies lack omega-3 fatty acids, or any fats at all.

85.    Experts argue that multivitamins should contain calcium and iron.[90] Almost 1/3 of American adults are iron deficient.[91] Yet Grüns Adults contain 4.5 milligrams of iron, or 25% of the daily value. While the National Academy of Medicine recommends that individuals consume 1 to 1.2 grams of calcium per day, depending on age and gender, the Gummies provide none. A "substantial proportion of people in the United States" do not consume recommended amounts of calcium.[92]

86.    Defendant's fiber claims are similarly misleading. One serving of Grüns Adults contains approximately 6 grams of fiber, yet the daily value for dietary fiber 28 grams per day.[93] A consumer relying solely on Grüns, as Defendant suggests, would fall drastically short.

87.    Independent nutritionists underscore the same point. The New York Nutrition Group describes Grüns as having "Lower Nutrient Concentration" and writes: "While gummies can help supplement your diet, they should not be relied upon

---

[89] https://www.healthline.com/nutrition/how-much-omega-3#general-guidelines (last accessed June 12, 2025)

[90] https://www.healthline.com/health/food-nutrition/best-vitamins-to-take-daily#5-Iron (last accessed June 12, 2025)

[91] https://www.healthline.com/health-news/iron-deficiency-healthy-tips-to-get-more-iron (last accessed June 12, 2025)

[92] https://ods.od.nih.gov/factsheets/Calcium-HealthProfessional/ (last accessed June 12, 2025)

[93] https://www.accessdata.fda.gov/scripts/interactivenutritionfactslabel/assets/InteractiveNFL_DietaryFiber_October2021.pdf (last accessed June 12, 2025)

as a primary source of nutrition. Whole foods provide a broader range of nutrients and health benefits that gummies cannot fully replicate."[94]

88.    Despite these gaps, Defendant repeatedly tells consumers they or their children can "get all [their] nutrients" from six or eight gummies. But the Cleveland Clinic emphasizes that "[e]ating well is a balancing act" that requires all six nutrients.[95] The Mayo Clinic is equally clear: "Nutritional supplements are meant to complement a healthy diet, not replace it."[96]

### 2.    Misleading Claims Targeting GLP-1 Users

89.    Defendant's "comprehensive" claims regarding Grüns Adults specifically target individuals taking GLP-1 medications or agonist receptors like Ozempic and Wegovy. The product is marketed as capable of filling nutritional gaps created by reduced appetite and food intake and providing "all" nutrients for individuals taking GLP-1 medications.

90.    This is misleading. GLP-1 users face well-documented nutritional risks, including deficiencies in protein, fat, fiber, iron, and other critical nutrients. These deficits have clinical consequences, including muscle wasting, fatigue, impaired immunity, and metabolic disruption. Addressing those risks requires careful, targeted supplementation. Grüns does not come close.

---

[94] https://www.nynutritiongroup.com/nutrition-blog/2025/4/1/dietitians-review-of-the-new-supergummy-grns (last accessed June 12, 2025)

[95] https://my.clevelandclinic.org/health/articles/nutrition (last accessed June 12, 2025)

[96] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/basics/nutritional-supplements/hlv-20049477 (last accessed June 12, 2025)

91.    Experts recommend that individuals on antiobesity medications ("AOMs") like GLP-1 medications consume 60 to 75 grams of protein daily to avoid muscle loss.[97] Grüns Adults contains none.

92.    Fat intake should land between 27 and 58 grams per day, depending on caloric intake.[98] Grüns Adults again contains none.

93.    Fiber requirements range from 21 to 38 grams per day,[99] yet Grüns Adults offers just 6 grams, or **28.6%** the lower bound for women and **20%** the lower bound for men. Individuals on AOMs are advised to consume 130 grams of carbohydrates per day. Grüns provides 15 grams, or **11.5%** of the recommended amount.

94.    Research has also shown that GLP-1 medications may impair the body's ability to absorb iron and that "[p]atients undergoing semaglutide treatment may require closer monitoring of iron status."[100] Yet, Grüns only contains 4.5mg, or **25%** of the daily value for iron.

95.    Experts caution that "[t]reatment of micronutrient deficiencies may require targeted micronutrient supplementation rather than reliance on food

---

[97] https://onlinelibrary.wiley.com/doi/10.1002/oby.24067?af=R#oby24067-bib-0055 (last accessed June 12, 2025)

[98] *Id.*

[99] *Id.*

[100] https://dom-pubs.onlinelibrary.wiley.com/doi/10.1111/dom.16368?af=R (last accessed June 12, 2025)

sources."[101] Grüns uses this legitimate medical concern as a marketing foothold but offers a product that is categorically unfit to meet it. The formulation is not tailored to the specific needs of GLP-1 users and lacks the dosage strength, clinical targeting, or comprehensiveness required to meaningfully address the deficiencies it invokes.

96.    In short, Grüns identifies the right problem but markets the wrong solution, offering a generic, underpowered gummy in place of the individualized, clinically guided supplementation experts actually recommend.

97.    This misrepresentation is compounded by the product's broader nutritional deficiencies. A supplement with no protein, no fat, low fiber, low carbohydrates, and low iron cannot reasonably be marketed as a "comprehensive" replacement for "all nutrients." Defendant grossly overstates what the product provides.

### 3.    Misleading Claims Targeting Children and Parents

98.    Defendant markets Grüns Kids as a "comprehensive" and "complete" nutritional "candy" for children, explicitly targeting parents whose children resist eating fruits and vegetables.

99.    Through slogans like "Your Kid Refuses Veggies? Start Here," cost comparisons between the gummies and real produce, and repeated promises like "100% of Kids' Daily Nutrition" and "All-in-One Nutrition," Defendant asserts,

---

[101] https://onlinelibrary.wiley.com/doi/10.1002/oby.24067?af=R#oby24067-bib-0055 (last accessed June 12, 2025)

explicitly and implicitly, that Grüns Kids can replace fruits, vegetables, and other whole foods.

100.    But this premise is medically baseless. Most children don't need supplements at all. As the Mayo Clinic explains, "Most healthy children don't need multivitamins if they are growing at the typical rate and eating a variety of foods."[102] Dr. Rachel Dawkins, Director of the Pediatric and Adolescent Medicine Clinic at Johns Hopkins All Children Hospital, clarifies further, "Even picky eaters get all of the nutrients they need from food."[103] Defendant manufactures a problem (general children's nutritional deficiency) that, for most families, doesn't exist.

101.    And even for those with legitimate concerns, Grüns Kids is no solution. Dr. Jennifer Sample explains, "Multivitamins aren't a substitute for fruits and vegetables because fruits and vegetables provide more than vitamins and minerals. They offer fiber, protein, and other micronutrients not found in a multivitamin."[104]

102.    Dr. Dawkins adds, "Just don't let [vitamins] take the place of a healthy diet, which children need for good growth."[105]

---

[102] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/multivitamins/faq-20058310 (last accessed June 12, 2025)

[103] https://www.hopkinsmedicine.org/health/wellness-and-prevention/do-kids-need-vitamin-supplements (last accessed June 12, 2025)

[104] https://www.goodrx.com/well-being/diet-nutrition/kids-picky-eaters-fruits-and-veggies?srsltid=AfmBOopDHsGBUHBqVd3WEOqFsWNEsjmACrLSuiHVdF44MDQuDQ1Mo_7D (last accessed June 12, 2025)

[105] https://www.hopkinsmedicine.org/health/wellness-and-prevention/do-kids-need-vitamin-supplements (last accessed June 12, 2025)

103.    Whole produce delivers more than isolated nutrients. It provides a unique and irreplaceable package of macronutrients (fiber, protein, fat), antioxidants, phytonutrients, and textural variety that support digestive and sensory development. Grüns Kids, by contrast, does not have **any** protein nor **any** fat, yet markets itself as equivalent to fruits and vegetables.

104.    Calcium, another crucial nutrient, is noticeably absent. According to a study published by the American Association of Pediatricians, "[e]nsuring adequate intake of calcium" is an "important nutritional goal[] for children."[106] The National Institute of Health recommends that children ages 2 to 13 consume between 700 to 1300 milligrams of calcium per day, depending on age.[107] Grüns Kids provides **none**.

105.    Even among the nutrients it does include, the levels are inadequate.

106.    According to Defendant's marketing materials, fiber deficiency impacts "up to 78% of the children." The Children's Hospital recommends that children ages 2 to 13 consume 19 to 31 grams of fiber, depending on age and gender. [108]

107.    But Grüns Kids contains just 4 grams of fiber, or **21%** of the lowest daily recommendation. The Children's Hospital warns that fiber shortfalls are linked to type 2 diabetes, obesity, and constipation.

---

[106] https://publications.aap.org/pediatrics/article-abstract/127/3/566/65017/Dietary-Guidelines-for-Calcium-and-Vitamin-D-A-New?redirectedFrom=fulltext (last accessed June 12, 2025)

[107] https://ods.od.nih.gov/factsheets/Calcium-Consumer/ (last accessed June 12, 2025)

[108] https://www.childrenshospital.org/sites/default/files/media_migration/c0e77168-ea9a-4d5f-8838-0523bc31bf4e.pdf (last accessed June 12, 2025)

108.    Iron is similarly underdosed. Children ages 2 to 13 require 7 to 10 milligrams daily, depending on age.[109]  Grüns Kids provides just 2.23 milligrams, or **32%** of the recommended amount. Iron deficiency is a "common problem in children," and without treatment, "it can affect a child's growth and development."[110]

109.    While claiming to offer a complete and comprehensive solution, Defendant provides inadequate support for issues that are common, like fiber, iron, and calcium deficiency. Defendant's claim that Grüns Kids is the "very best way to get all the vitamins, minerals, fruits, and veggies growing kids . . . need," directly contradicts guidance from the Mayo Clinic, which states, "Foods are the best source of nutrients: fat, protein, carbohydrates, vitamins and minerals."[111]

110.    The formulation is also indiscriminate. Grüns Kids claims to serve children ages 2 to 13, a range that spans 4 different age groups[112] with vastly different nutritional profiles. As Johns Hopkins Medicine cautions, "Just make sure to choose a vitamin that is formulated to your child's age group."[113] Defendant does not.

111.    And while the product's nutritional claims are thin, the emotional appeals are thick. Grüns trades on the stress and guilt of parenting, invoking

---

[109] https://www.mayoclinic.org/healthy-lifestyle/childrens-health/in-depth/iron-deficiency/art-20045634 (last accessed June 12, 2025)

[110] *Id.*

[111] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/multivitamins/faq-20058310 (last accessed June 12, 2025)

[112] https://www.healthychildren.org/English/ages-stages/Pages/default.aspx (last accessed June 12, 2025)

[113] https://www.hopkinsmedicine.org/health/wellness-and-prevention/do-kids-need-vitamin-supplements (last accessed June 12, 2025)

"mealtime battles" and promising peace through gummies. Defendant tells parents to skip the fight and give their child candy instead.

112.    For children with sensory processing challenges or feeding issues, that message is especially misleading. Pediatric nutrition is not just about hitting nutrient targets. It's about repeated, structured exposure to textures, temperatures, and food experiences during critical developmental windows.

113.    Researchers have found that "[f]ood texture acceptance is learned from an early age" and hinges on oral motor development and exposure to a variety of textures.[114] Even simple practices like tasting one vegetable or fruit per day for 8 to 10 days can increase acceptance.[115] As experts note, "[t]he establishment of eating practices that contribute to lifelong nutritional habits and overall health begins in toddlerhood."[116]

114.    Defendant's marketing undermines this developmental process. Rather than encouraging sensory engagement, it promotes avoidance, offering a gummy in place of food and calling it "complete nutrition."

115.    At bottom, Grüns sells the simplification that "complete" nutrition can come from a handful of gummies and that parents can skip vegetables, dodge stress, and still feel virtuous. The product omits essential nutrients, misrepresents its

---

[114] https://www.tandfonline.com/doi/full/10.1080/10408398.2022.2136619#d1e1037 (last accessed June 12, 2025)

[115] https://pubmed.ncbi.nlm.nih.gov/30982874/ (last accessed June 12, 2025)

[116] https://www.aafp.org/pubs/afp/issues/2018/0815/p227.html (last accessed June 12, 2025)

formulation, and exploits parental fears. It offers a partial solution, packaged as a total one, and in doing so, fails the children it claims to nourish.

### 4. Commanding a Price Premium Based on These Misrepresentations

116. Across ads, packaging, and its website, Defendant consistently represents Grüns Gummies as "comprehensive" or "complete" and a substitute for other supplements, nutrients, and whole foods. Nowhere does Defendant clarify that the product lacks key nutritional components.

117. Defendant's marketing is tailored to exploit common consumer anxieties, e.g., children refusing vegetables or adults losing appetite on medications like Ozempic.

118. Defendant uses the words "comprehensive" and "complete" as concrete nutritional claims, e.g., "100% of kids' daily nutrition" or "100% of your essential nutrients." These are specific and factual representations. The terms "comprehensive" and "complete" are not abstract value judgments but measurable assertions in the context of supplements.

119. Defendant's misleading claims about "complete" and "comprehensive" nutrition drive sales and allow Defendant to command a substantial price premium. Consumers are willing to pay more for products that promise total nutritional coverage, especially those that claim to eliminate the need for additional food, supplements, or multivitamins.

120.    Defendant charges a significant price premium for the Gummies. A one-time purchase of Grüns Adults costs up to $87.99. For Grüns Kids, consumers must sign up for a cancellable subscription that charges up to $50.24 every four weeks.

121.    These inflated prices are not attributable to higher manufacturing costs or demonstrably superior efficacy. Rather they stem from Defendant's marketing strategy. By marketing the Gummies as a source of "comprehensive nutrition," and claiming that the Gummies provide "everything you need," Defendant induces consumers to pay for effects the product cannot deliver.

122.    Consumer did not receive the benefit of their bargain. They paid a price premium for a product falsely marketed as delivering "comprehensive" health and nutrition. Defendant's Gummies were not capable of delivering on the promises Defendant made in its widespread marketing materials.

123.    Consumers reasonably believed they were purchasing a solution to medical or personal concerns. Consumers were misled into overpaying for a product based on false or unsubstantiated claims.

## CLASS ACTION ALLEGATIONS

124.    Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

125.    Plaintiff Cavallaro-Kearins also brings this action on behalf of herself and on behalf of the following proposed New York Subclass, initially defined as follows:

> All individuals in New York who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

126.    Plaintiff Pitre also brings this action on behalf of herself and on behalf of the following proposed California Subclass, initially defined as follows:

> All individuals in California who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

127.    Excluded from the proposed Classes are Defendant and its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

128.    Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

129.    The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

130.    Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

131.    Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

132.    Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

133.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

134.    **Ascertainability.** The Class is ascertainable because its members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control. Plaintiffs anticipate providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

135.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant's marketing claims about Gummies are misleading to a reasonable consumer;

(b) Whether Defendant engaged in the conduct alleged in this Complaint;

(c) Whether Defendant violated the applicable statutes alleged herein;

(d) Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

(e) Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

(f) Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

(g) Whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(h) Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(i) Whether Plaintiffs and the Classes are entitled to civil penalties; and

(j) Whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

136. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way,

and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

137. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained counsel competent and experienced in complex class action, business competition, health care and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

138. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation, the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues

involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

139. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff Cavallaro-Kearins and the New York Subclass)

140.   Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

141.   NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

142.   NY GBL § 349 applies to Plaintiff Cavallaro-Kearins and the New York Subclass because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

143.   Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

144.   The practices employed by Defendant, by which it advertises and promotes the Gummies, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets the Gummies as a source of "comprehensive

nutrition," claiming that they provide "everything you need" and can effectively replace multivitamins, dietary supplements, and even whole food.

145. Defendant's Grüns Adults advertising campaign targets individuals taking GLP-1 medications and fosters the false impression that Grüns Adults are sufficient to meet their nutritional needs, despite containing minimal quantities of essential nutrients, often far below the daily recommended levels of intake.

146. Defendant's Grüns Kids advertising campaign targets parents and caregivers and fosters the false impression that Grüns Kids are sufficient to meet a child's daily nutritional needs, despite containing minimal quantities of essential nutrients, often far below the daily recommended levels of intake.

147. Defendant's acts and practices deceived Plaintiff Cavallaro-Kearins and the New York Subclass. Plaintiff and the Subclass reasonably relied on these representations and believed they were purchasing a "comprehensive" or "complete" nutritional substitute for a balanced diet. In truth, Grüns cannot provide the advertised benefits.

148. Plaintiff Cavallaro-Kearins and the New York Subclass did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as delivering "comprehensive" health and nutrition. Grüns Gummies were not capable of delivering on the promises Defendant made in its widespread marketing materials.

149. Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through

reasonable care, to be untrue and misleading to consumers, including Plaintiff Cavallaro-Kearins and the New York Subclass.

150.    Plaintiff Cavallaro-Kearins and the New York Subclass have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

151.    Plaintiff Cavallaro-Kearins and the New York Subclass have no adequate remedy at law.

152.    Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Cavallaro-Kearins and the New York Subclass and will continue to mislead consumers unless enjoined by this Court.

## SECOND CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 350
### (On Behalf of Plaintiff Cavallaro-Kearins and the New York Subclass)

153.    Plaintiff Cavallaro-Kearins incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

154.    By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Cavallaro-Kearins and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

155.    Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

156.    Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

157.    Plaintiff Cavallaro-Kearins and the New York Subclass have been injured by Defendant's deceptive acts or practices.

158.    Plaintiff Cavallaro-Kearins and the New York Subclass have no adequate remedy at law.

159.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Cavallaro-Kearins and the New York Subclass and will continue to damage both Plaintiff Cavallaro-Kearins and the New York Subclass and deceive the public unless enjoined by this Court.

160.    Pursuant to NY GBL § 350-e, Plaintiff Cavallaro-Kearins and the New York Subclass seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

161.    Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false

advertising in deciding to purchase the Gummies. By marketing the Gummies as providing "comprehensive nutrition" and as a substitute for multivitamins and healthy eating, despite lacking adequate quantities of essential nutrients, Defendant misled reasonable consumers into paying a premium for a product that cannot deliver the advertised benefits. The widespread deception not only caused financial harm to consumers but also promoted misleading narratives about children's and adults' nutritional needs, thereby exploiting parental concerns and discouraging reliance on more effective, evidence-based sources of nutrition.

162.    Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

### THIRD CAUSE OF ACTION

**Violations of Consumers Legal Remedies Act (the "CLRA")
California Civil Code § 1750, *et seq.*
(On Behalf of Plaintiff Pitre and the California Subclass)**

163.    Plaintiff Pitre incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

164.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

165.    Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

166.    The Gummies that Plaintiff (and other similarly situated California Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

167.    By engaging in the actions, representations, and conduct set forth in the Complaint, Defendant has violated, and continues to violate §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

168.    In violation of § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

169.    In violation of § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

170.    In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

171.    Defendant's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Gummies are dietary supplements that provide "comprehensive" or "complete" nutrition capable of meeting complex, real-world health needs, including as stand-ins for the diverse nutrients and benefits found in food, such as for children who avoid fruits and vegetables or individuals whose diets are limited by GLP-1 medications.

172.    In reality, the Gummies omit entire classes of essential nutrients and provide inadequate amounts of others. Moreover, the Gummies fail to replicate the broader nutritional and functional value of whole foods. The Gummies do not and cannot deliver the advertised benefits.

173.    Plaintiff Pitre reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the adequacy of the Gummies an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

174.    Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Pitre and the California Subclass. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Gummies or would have paid substantially less for them.

175.    Plaintiff Pitre seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution. Plaintiff reserves the right to amend the Complaint to seek damages under the CLRA.

176.    Plaintiff Pitre also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Gummies. Injunctive relief is appropriate because Defendant continues to deceptively market the Gummies as dietary supplements that provide "comprehensive" or "complete" nutrition capable of meeting complex, real-world health needs. Plaintiff would like to purchase products from Defendant in the future if she could have confidence

regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

**FOURTH CAUSE OF ACTION**

**Violations of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff Pitre and the California Subclass)**

177.  Plaintiff Pitre incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

178.  California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

179.  Defendant's false and misleading advertising claims regarding the Gummies violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

180.  First, Defendant's representations and omissions regarding the Gummies are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

181.  Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Gummies are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the

negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

182. Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

183. Plaintiff Pitre reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the adequacy of the Gummies an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

184. As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Pitre and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Gummies and/or were denied the benefit of the bargain.

185. Absent Defendant's misrepresentations and omissions, Plaintiff Pitre would not have purchased the Gummies or would have paid substantially less for them.

186. Plaintiff Pitre seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full

refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

187.    Plaintiff Pitre also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Gummies. Injunctive relief is appropriate because Defendant continues to deceptively market the Gummies as dietary supplements that provide "comprehensive" or "complete" nutrition capable of meeting complex, real-world health needs. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

## FIFTH CAUSE OF ACTION

### Violations of California False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of Plaintiff Pitre and the California Subclass)

188.    Plaintiff Pitre incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

189.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

190.    The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

191.    Defendant violated section 17500 when it advertised and marketed the Gummies through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Gummies are dietary supplements that provide "comprehensive" or "complete" nutrition capable of meeting complex, real-world health needs, including as stand-ins for the diverse nutrients and benefits found in food, such as for children who avoid fruits and vegetables or individuals whose diets are limited by GLP-1 medications. In reality, the Gummies omit entire classes of essential nutrients and provide inadequate amounts of others. Moreover, the Gummies fail to replicate the broader nutritional and functional value of whole foods. The Gummies do not and cannot deliver the advertised benefits.

192.    Plaintiff Pitre reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the adequacy of the Gummies an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

193.    As a direct and proximate result of Defendant's violations of the FAL, Plaintiff Pitre and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Gummies and/or were denied the benefit of the bargain.

194.    Absent Defendant's misrepresentations and omissions, Plaintiff Pitre would not have purchased the Gummies or would have paid substantially less for them.

195.    Plaintiff Pitre seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

196.    Plaintiff Pitre also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Gummies. Injunctive relief is appropriate because Defendant continues to deceptively market the Gummies as dietary supplements that provide "comprehensive" or "complete" nutrition capable of meeting complex, real-world health needs. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

### SIXTH CAUSE OF ACTION

#### Unjust Enrichment
#### (On Behalf of Plaintiffs and All Classes)

197.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

198.    Plaintiffs and members of the Class conferred a tangible economic benefit on Defendant in the form of monetary payments for the Gummies, which were purchased based on Defendant's misrepresentations and omissions regarding the Gummies' nutritional value and health benefits.

199.    Defendant knowingly accepted and retained these financial benefits under circumstances that make such retention unjust. Defendant marketed and sold the Gummies as providing "comprehensive nutrition," "all-in-one health," and "everything you need," claims that were false, misleading, and not substantiated by the actual composition or efficacy of the Gummies.

200.    Plaintiffs and members of the Class did not receive the full value of what they paid for. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Gummies or would have paid significantly less.

201.    It would be inequitable for Defendant to retain the profits from the sale of these deceptively marketed Gummies, as the enrichment was obtained through false and misleading advertising, omissions of material fact, and a campaign designed to create the false impression that the Gummies offered a nutritionally sufficient solution.

202.    Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    awarding Plaintiffs and the Classes exemplary and punitive damages;

E.    awarding Plaintiffs and the Classes civil penalties;

F.    granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.    awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.    awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.    awarding pre-judgment and post-judgment interest; and

K.    granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: June 13, 2025

Respectfully submitted,

*/s/ Raphael Janove*
Raphael Janove
**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
Tel: (646) 347-3940
Email: raphael@janove.law

**ZIMMERMAN REED LLP**
Caleb L. Marker (*pro hac vice*
forthcoming)
Ryan J. Ellersick (*pro hac vice*
forthcoming)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Email: caleb.marker@zimmreed.com
Email: ryan.ellersick@zimmreed.com