## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA CAVALLARO-KEARINS and JENIFER MESTAZ-HEISER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>GRUNS NUTRITION, INC.,<br><br>        Defendant. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No. 25-cv-4998-LJL |

Plaintiffs Patricia Cavallaro-Kearins and Jenifer Mestaz-Heiser, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Gruns Nutrition, Inc. ("Grüns" or "Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

## TABLE OF CONTENTS

NATURE OF THE ACTION ..................................................................... 1

THE PARTIES ....................................................................................... 2

JURISDICTION AND VENUE................................................................ 3

FACTUAL ALLEGATIONS ................................................................... 4

    A.    Defendant Markets the Gummies as Providing Comprehensive and Complete Nutrition or Health ................................................ 7

        1.    Advertising Grüns Adults ................................................ 7

        2.    Advertising Grüns Kids ................................................ 18

        3.    Advertising the Gummies as a Cure-All ...................... 28

        4.    Marketing the Gummies Through Email...................... 35

        5.    Marketing the Gummies on the Website ...................... 38

        6.    Marketing the Gummies on Other Platforms.............. 42

        7.    Marketing the Gummies on Product Packaging.......... 44

    B.    Defendant's Promises of "Comprehensive" and "Complete" Nutrition are Misleading and Deceptive ................................ 45

        1.    Misleading Claims of "Comprehensive" and "Complete" Nutrition ................................................ 46

        2.    Misleading Claims Targeting GLP-1 Users................ 53

        3.    Misleading Claims Targeting Children and Parents ................. 56

        4.    Commanding a Price Premium Based on These Misrepresentations........................................................ 60

    C.    Plaintiff Patricia Cavallaro-Kearins's Experience with Grüns ............ 62

    D.    Plaintiff Jenifer Mestaz-Heiser's Experience with Grüns ................... 72

CLASS ACTION ALLEGATIONS ........................................................ 76

FIRST CAUSE OF ACTION ................................................................. 81

SECOND CAUSE OF ACTION ............................................................ 84

THIRD CAUSE OF ACTION ................................................................ 86

FOURTH CAUSE OF ACTION ................................................................................. 89

FIFTH CAUSE OF ACTION.................................................................................... 92

SIXTH CAUSE OF ACTION.................................................................................... 94

SEVENTH CAUSE OF ACTION .............................................................................. 96

PRAYER FOR RELIEF .......................................................................................... 97

## NATURE OF THE ACTION

1.    Defendant manufactures, markets, and sells Superfoods Greens Gummies for Adults ("Grüns Adults") and a parallel product for children called Grüns Cubs or Kids ("Grüns Kids") (together, "the Gummies").

 

2.    The Gummies are expensive. A one-time purchase of Grüns Adults (Low Sugar) has retailed for $79.99 or higher, and Grüns Adults (Sugar-Free) has been priced at $87.99.

3.    Grüns Kids (both Low Sugar and Sugar-Free) are currently only available through an "AutoShip and Save" subscription model and have been available for purchase at up to $50.24 for a four-week pouch.

4.    Through aggressive marketing, Defendant presents the Gummies as a "comprehensive" and "complete" solution for daily nutrition, claiming they provide

"100% of kids' daily nutrition," "all-in-one" support for GLP-1 users, and a replacement for essential nutrients.

5.      These claims are false and misleading. The Gummies lack key macronutrients like protein and fat, contain inadequate amounts of critical nutrients like fiber and iron, and none of others, like calcium and omega-3 fatty acids, and cannot plausibly replace the nutritional complexity of fruits and vegetables and all other targeted supplementation.

6.      Defendant's false and misleading statements caused Plaintiffs and members of the proposed classes to pay a price premium for the Gummies. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Gummies or would have paid significantly less.

7.      Plaintiffs seek monetary and injunctive relief against Defendant for violating New York General Business Law ("GBL") §§ 349–50; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and common law prohibitions on unjust enrichment and fraud.

### THE PARTIES

8.      Plaintiff Patricia Cavallaro-Kearins is a New York resident. Plaintiff Cavallaro-Kearins initially purchased Grüns Kids (Low Sugar) and Grüns Adults (Sugar Free) from Grüns's website, gruns.co, in December 2024. Plaintiff made additional purchases from Amazon.com. Plaintiff relied on Defendant's

representations regarding the Gummies' nutritional benefits and would not have purchased them, or would have paid less, had she known the truth.

9.      Plaintiff Jenifer Mestaz-Heiser is a California resident. Plaintiff Mestaz-Heiser purchased Grüns Adults from Grüns's website in March 2025. Plaintiff relied on Defendant's representations regarding the Gummies' nutritional benefits and would not have purchased them, or would have paid less, had she known the truth.

10.     Defendant Gruns Nutrition, Inc. is a Delaware corporation headquartered at 9450 SW Gemini Drive, Beaverton, Oregon 97008.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

12.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

13.     This Court has personal jurisdiction over Defendant because it committed the tortious acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

15. This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

16. Defendant markets and sells the Gummies through its own website and through third-party retailers including Target, Amazon, Sprouts, and TikTok Shop.

17. Defendant's marketing constructs the unified and deceptive narrative that the Gummies provide "comprehensive" and "complete" nutrition sufficient to meet daily health needs, obviating the need for all other supplements and, in some instances, entire food groups.

18. Defendant complements these representations by marketing Grüns Adults as a substitute for the nutritional impact of diet curbed by GLP-1 agonists, and Grüns Kids as full-scale substitutes for produce. These claims blur the line between a dietary supplement and a nutritionally complete product, falsely conveying that the Gummies can replicate the broad nutritional coverage otherwise obtained through supplementation and the consumption of fruits and vegetables.

19. Defendant's advertising is prolific and reckless. For example, on May 29, 2025 alone, Defendant launched over 200 separate advertisements across Meta platforms.

20. This volume reflects an aggressive campaign of extensive but hypertargeted marketing, flooding the market with hundreds of ads, each designed to speak to specific consumer anxieties. The campaign prioritizes saturation over truth, with messaging frequently contradicts itself. On the same day, it ran one ad

claiming that "95% of kids don't get enough fiber," while another stated that "78% of the children do not meet the recommended intake for fiber."



21.     Defendant's marketing blitz is so aggressive and unchecked that it contradicts itself, even about basic facts, just to push its products.

22.     Defendant's own executives confirm the deliberate, targeted, and expansive nature of this deception. Grüns Chief Marketing Officer, Connor Dault, stated in a recent interview:

> We do have those very specific kind of angles . . . what we want to be able to do is find all of the people that might perceive value and benefit from taking Grüns and speak really intentionally to those people . . . . There's 1200 or so ads live in [the ad library] and the velocity of output there is insane . . . . What we try to do now is stack bigger bets

---

[1] https://www.facebook.com/ads/library/?id=3619067991560120 (last accessed June 12, 2025)

[2] https://www.facebook.com/ads/library/?id=1330634621917776 (last accessed June 12, 2025)

and . . . make an informed, kind of collective team bet that
speaking to this is going to have really big impact[.][3]

23.    Defendant deliberately saturates the marketplace with this extensive
but hypertargeted advertising, identifies which claims are most manipulative, and
doubles down on them to maximize sales. It specifically targets vulnerable groups—
parents, GLP-1 users, and consumers seeking concrete health benefits—with
representations it knew would resonate but could not deliver.

24.    Defendant charges a significant price premium for the Gummies. On
Defendant's website, Adult Gummies (Low Sugar) has retailed for $79.99 or higher,
and Adult Gummies (Sugar-Free) has been priced at $87.99.

25.    Grüns Kids are only available through an "AutoShip and Save"
subscription model and have been available for purchase at up to $50.24 for a four-
week pouch (both Low Sugar and Sugar-Free).

26.    This premium is not driven by higher manufacturing costs or proven
health benefits. Rather, it stems from Defendant's marketing strategy, which
promotes the Gummies as replacements for multivitamins, balanced diets, and
complex health routines. Through repeated claims of "comprehensive" and "complete"
nutrition, "all-in-one health," and "everything you need," Defendant manufactures a
net impression that is both false and misleading. No single gummy product,
regardless of branding, can satisfy the full spectrum of nutritional needs that must

---

[3] https://open.spotify.com/episode/09pIcBMpXHKTXAGkInSkE6 (last accessed
September 12, 2025)

otherwise be met through supplementation or the consumption of fruits and vegetables.

27.    By deceptively and misleadingly representing the "comprehensive" and "complete" nature of the Gummies, Defendant induces consumers to pay for effects the products cannot deliver. Consumers reasonably believe they were purchasing a truly "comprehensive" and "complete" product for the sake of nutrition and health and have been misled into overpaying for a product based on false or unsubstantiated claims.

A.    **Defendant Markets the Gummies as Providing Comprehensive and Complete Nutrition or Health**

28.    Defendant has repeatedly marketed the Gummies as providing comprehensive or complete nutrition. Across its website, advertising, and social media, Defendant positions the Gummies as a total solution to nutritional needs.

1.    **Advertising Grüns Adults**

29.    Defendant aggressively markets Grüns Adults as a standalone, comprehensive nutrition solution. In video ads, product graphics, and captions, Defendant asserts that Grüns Adults eliminate the need for all other supplements or the consumption of fruits and vegetables.

30.    Video ads describe Grüns Adults as:

- "Basically everything you need in a fun comprehensive gummy,"[4] and

---

[4] https://www.facebook.com/ads/library/?id=599718822567859 (last accessed June 12, 2025)

- A way to "jumpstart your journey to comprehensive health with Grüns."[5]

 

31.    In graphics, Defendant advertises, "Grüns Comprehensive Nutrition Gummies,"[6] and "One packet, all the nutrients:"[7]

---

[5] https://www.facebook.com/ads/library/?id=3997479610464537 (last accessed June 12, 2025)

[6] https://www.facebook.com/ads/library/?id=1964640477674353 (last accessed June 12, 2025)

[7] https://www.facebook.com/ads/library/?id=1375142393757819 (last accessed June 12, 2025)

 

32.    In another graphic, Defendant specifies that Grüns Adults delivers "fully comprehensive" nutrition.[8]



---

[8] https://www.facebook.com/ads/library/?id=534985182604411 (last accessed September 12, 2025)

33.     Defendant explicitly markets the Gummies as an "[a]ll-in-one supplement," in direct contrast to other products that purportedly "[n]eed other supplements to complement."[9] Defendant also promises to provide "All Your Supplements, In One Pack of Gummies."[10]

 

34.     In captions, Defendant uses total and definitive language, declaring:

- "Grüns Superfood Gummies are your all-in-one health hack!"[11]

- "Grüns Daily is your all-in-one supplement solution[.]"[12]

---

[9] https://www.facebook.com/ads/library/?id=1750064268940449 (last accessed June 12, 2025)

[10] https://www.facebook.com/ads/library/?id=679344107825776 (last accessed September 12, 2025)

[11] https://www.facebook.com/ads/library/?id=990548536623180 (last accessed June 12, 2025)

[12] https://www.facebook.com/ads/library/?id=695048983273093 (last accessed June 12, 2025)

- "Enjoy all the nutrients in 8 tasty gummy bears[.]"[13]

- "Grüns Superfood Gummies are your all-in-one solution for daily nutrition."[14]

35.    Grüns often uses similar language in other pieces of its social media marketing, tagging various advertisements with "comprehensive":



[13] https://www.facebook.com/ads/library/?id=3997479610464537 (last accessed June 12, 2025)

[14] https://www.facebook.com/ads/library/?id=1400196511126490 (last accessed June 12, 2025)

[15] https://www.facebook.com/ads/library/?id=683984764260137 (last accessed June 12, 2025)



36.    The message that Grüns replaces the need for all supplements and certain food-based nutrition is extended to individuals taking GLP-1 receptor agonist medications like Ozempic and Wegovy.

37.    Defendant's marketing repeatedly targets this population with specific claims that the Gummies compensate for dietary deficiencies caused by reduced appetite. For instance, Grüns markets the product as "Comprehensive Gummies for Ozempic Users." [17] In another ad, the graphic describes Grüns as "The most convenient way to get all my nutrients on Ozempic," stating:

> Are you on a weight loss journey? These 8 gummies are packed with 100% of your essential nutrients and prebiotics in a convenient, on-the-go pouch. Grüns is here

---

[16] https://www.facebook.com/ads/library/?id=1004988344954469 (last accessed June 12, 2025)

[17] https://www.facebook.com/ads/library/?id=1066177061955212 (last accessed June 12, 2025)

to ensure you are getting all of your daily nutrients while
you are eating less.[18]



38.     Other social media captions and graphics echo the same promise: "get

ALL [] nutrients on Ozempic."

---

[18] https://www.facebook.com/ads/library/?id=1220311976156497 (last accessed June
12, 2025)






39.     These GLP-1-focused messages build on the "comprehensive" branding,

reinforcing the core claim that Grüns can substitute for food-derived nutrition.

---

19 https://www.facebook.com/ads/library/?id=564049856465079 (last accessed June 12, 2025)

20 https://www.facebook.com/ads/library/?id=694624616546187 (last accessed June 12, 2025)

21 https://www.facebook.com/ads/library/?id=1377551056879971 (last accessed June 12, 2025)

40.    A key focus across both general comprehensive and GLP-1-targeted ads is fiber. In all three above ads, Defendant stresses the fiber content. In others, Defendant explicitly promotes its fiber content as a substitute for fruits and vegetables, often using punchy comparisons.

41.    For example, one ad states: "The Fiber GLP-1 Users Swear By . . . More fiber than 2 cups of broccoli per pack . . . Goodbye bloat[.]"[22]



42.    Defendant promises "Fiber without the leafy overload," and claims, "You'd need a whole salad bar to match the fiber in just one pack of Grüns."[23]

---

[22] https://www.facebook.com/ads/library/?id=1275943366906896 (last accessed September 12, 2025)

[23] https://www.facebook.com/ads/library/?id=1012562877529336 (last accessed June 12, 2025)



43.    Defendant often compares the fiber in the Gummies to broccoli, telling

consumers that they'll "get 6g of fiber either way"[24] and that the Gummies provide

"Fiber Made Easy[.]"[25]

 

---

[24] https://www.facebook.com/ads/library/?id=750019884300700 (last accessed
September 12, 2025)

[25] https://www.facebook.com/ads/library/?id=1283618646759987 (last accessed
September 12, 2025)

44.    Another graphic plainly states, "1 daily pack = 9 cups of raw spinach" and "Same fiber. Much easier."[26]



45.    Defendant specifically ties its fiber content to stopping symptoms like bloating and indigestion, common to GLP-1 users. In one ad, Defendant asks, "Bloat? Not Today. Daily fiber and greens your gut will thank you for."[27] In another, Defendant promises, "No more bloat. Just better digestion. 6g of fiber[.]"[28]

[26] https://www.facebook.com/ads/library/?id=1480957899815961 (last accessed September 12, 2025)

[27] https://www.facebook.com/ads/library/?id=1267125038266690 (last accessed September 12, 2025)

[28] https://www.facebook.com/ads/library/?id=1494035244926243 (last accessed September 12, 2025)

 

46.     Across the board, Defendant positions itself as a supplement that replaces all other nutritional supplements and, in some instances, entire food groups such as fruits and vegetables.

## 2.     Advertising Grüns Kids

47.     Defendant advertises Grüns Kids as a complete and comprehensive nutritional solution. Promotional graphics describe the product as providing "Complete Nutrition for Kids,"[29] a "Daily Comprehensive" supplement,[30] and "The Easy Way to Cover Kids' Nutrients:"[31]

---

[29] https://www.facebook.com/ads/library/?id=1434981407538015 (last accessed June 6, 2025); https://www.facebook.com/ads/library/?id=1916615092446628 (last accessed June 12, 2025)

[30] https://www.facebook.com/ads/library/?id=697101979741540 (last accessed June 12, 2025)

[31] https://www.facebook.com/ads/library/?id=2074668173028248 (last accessed June 12, 2025)







48.    Defendant promises: "6 Gummies. All the Nutrition."[32]

---

[32] https://www.facebook.com/ads/library/?id=1202160377846439 (last accessed September 12, 2025)



49.    Defendant reinforces this message across multiple ads:

- "100% of Kids' Daily Nutrition! . . . Easily meet your daily nutrient needs with one grab-and-go snack pack of gummies."[33]

- "All-in-One Nutrition."

---

[33] https://www.facebook.com/ads/library/?id=1381246499745415 (last accessed June 12, 2025)






---

[34] https://www.facebook.com/ads/library/?id=1334734747613912 (last accessed June 12, 2025)

[35] https://www.facebook.com/ads/library/?id=1070646531847982 (last accessed June 12, 2025)

[36] https://www.facebook.com/ads/library/?id=4020955848118526 (last accessed June 12, 2025)

50.    Video content echoes these representations. In one clip, Defendant describes the Gummies as delivering "a convenient, comprehensive formula."[37] In another, a child actor states, "They're actually the best way to fill in important nutritional gaps in my diet," followed by the narrator: "Choose family-friendly comprehensive nutrition."[38]

51.    Defendant's social media advertisements position Grüns Kids as so nutritionally complete that it can act as a substitute, not just a complement, for fruits and vegetables. The campaign repeatedly asserts that six gummies provide "complete nutrition." This claim of equivalence is the foundation of Grüns' value proposition: better nutrition, no vegetables, no arguments.



[37] https://www.facebook.com/ads/library/?id=1766397620751713 (last accessed June 12, 2025)

[38] https://www.facebook.com/ads/library/?id=1803966656817789 (last accessed June 12, 2025)

[39] https://www.facebook.com/ads/library/?id=707908994973207 (last accessed June 12, 2025)

52.     Defendant's advertising explicitly equates the gummies with produce.

One graphic declares: "THIS HAS A FULL SERVING OF VEGGIES."[40]



53.     A similar video shows a mom, holding a bowl of vegetables, stating to the camera: "This is how I finally got my kids to eat more than 10 veggies a day without any battles. These green gummy bears have been the best way to get my kids to eat veggies."

---

[40] https://www.facebook.com/ads/library/?id=24057805273823160 (last accessed June 12, 2025)



54.    The substitution message is tailored to a familiar concern: children who refuse vegetables. One caption states, "Grüns Cubs provide essential vitamins and minerals in a delicious gummy form . . . without the fight over veggies."[41] A testimonial reads, "My kid won't eat veggies AT ALL. Will these actually help with nutrition gaps?" to which the brand responds: "100%. They sneak the veggies kids won't eat in a delicious way."[42]

---

[41] https://www.facebook.com/ads/library/?id=1681880509362498 (last accessed June 12, 2025)

[42] https://www.facebook.com/ads/library/?id=708068214964316 (last accessed June 12, 2025)



55.    To further entrench this idea, Defendant draws direct cost comparisons between the Gummies and real produce. One graphic presents a side-by-side price comparison between a month of Grüns Kids and a month of vegetables.[43]

---

[43] https://www.facebook.com/ads/library/?id=29634352956179174 (last accessed June 12, 2025)



56.    Defendant's videos feature child narrators claiming that Grüns is the "very best way to get all the vitamins, minerals, fruits, and veggies growing kids like me need."[44]

57.    Defendant explicitly advertises Grüns Cubs to parents of children with sensory processing difficulties:

---

[44] https://www.facebook.com/ads/library/?id=1235862061270126 (last accessed June 12, 2025)



58.    Nowhere in the campaign does Grüns encourage consumption of fruits

and vegetables. Instead, the messaging consistently pivots toward ease, avoidance,

and substitution:

- "The Easiest Way for Kids to Get Their Greens."[46]

- "Your Kid Refuses Veggies? Start Here."[47]

- "Tired of unhealthy snacks for your kids? . . . . Say goodbye to fights
  over food, hello to happy tummies!"[48]

---

[45] https://www.facebook.com/ads/library/?id=1494281481575764 (last accessed June
12, 2025)

[46] https://www.facebook.com/ads/library/?id=1098394848799637 (last accessed June
12, 2025)

[47] https://www.facebook.com/ads/library/?id=2198205547266693 (last accessed June
12, 2025)

[48] https://www.facebook.com/ads/library/?id=1381246499745415 (last accessed June
12, 2025)

 

59.    Taken together, Defendant's messaging of Grüns Kids tells parents that fruits and vegetables are no longer necessary. Defendant promises "complete" nutritional coverage from six gummies and offers parents a way out of the dinner table standoff. That is the offer, and that is the claim.

### 3.    Advertising the Gummies as a Cure-All

60.    Defendant's promotion of the Gummies as offering "comprehensive" and "complete" nutrition also extends to health outcomes. Defendant markets the Gummies as a one-stop solution for a wide range of unrelated health concerns, positioning a single daily dose as capable of improving everything from digestion to testosterone levels. Defendant advertises the Gummies as addressing gut health, energy, cognition, immunity, mood, hair growth, skin clarity, and testosterone and men's health.

61.    To support this positioning, Defendant promotes the supposed beneficial effects of the Gummies across multiple domains of health, making sweeping claims

tailored to consumers with a variety of issues, including gut and digestive health, energy and focus, cognitive function and mood, immune support and cold and flu prevention, hair, skin, and nails, and testosterone and men's health, including the following:

62.    **Representations regarding gut and digestive health**:

- "Support gut health and stay regular"[49]

- "Beat the bloat" and "Say goodbye to bloat"[50]

- "Better digestion & no bloating"[51]

- "Way better poops"[52]

- "No more bloating"[53]

- "[F]ewer tummy troubles"[54]

- "Gut Health That Fits in a Lunchbox"[55]

---

[49] https://www.facebook.com/ads/library/?id=1705662416721560 (last accessed June 12, 2025)

[50] https://www.facebook.com/ads/library/?id=721632420424331 (last accessed June 12, 2025)

[51] https://www.facebook.com/ads/library/?id=1344295530004355 (last accessed June 12, 2025)

[52] https://www.facebook.com/ads/library/?id=28871389362476246 (last accessed June 12, 2025)

[53] https://www.facebook.com/ads/library/?id=527769356745598 (last accessed June 12, 2025)

[54] https://www.facebook.com/ads/library/?id=1024765459120601 (last accessed June 12, 2025)

[55] https://www.facebook.com/ads/library/?id=1267691905359277 (last accessed June 12, 2025)

63.    **Representations regarding energy, focus, and cognitive function**:

- "Crush your day without the 2pm crash"[56]

- "#1 energy hack"[57]

- "[N]o energy crashes"[58]

- "Keep your energy high"[59]

- "Boost of energy"[60]

- "Radiant and energetic"[61]

- "Sharpened focus"[62]

- "[E]levated mood"[63]

---

[56] https://www.facebook.com/ads/library/?id=1287239012342001 (last accessed June 12, 2025)

[57] https://www.facebook.com/ads/library/?id=3552606408375449 (last accessed June 12, 2025)

[58] https://www.facebook.com/ads/library/?id=2021444941594494 (last accessed June 12, 2025)

[59] https://www.facebook.com/ads/library/?id=961034979572843 (last accessed June 12, 2025)

[60] https://www.facebook.com/ads/library/?id=1039597584715359 (last accessed June 12, 2025)

[61] https://www.facebook.com/ads/library/?id=3825046627808067 (last accessed June 12, 2025)

[62] https://www.facebook.com/ads/library/?id=1453900052415155 (last accessed June 12, 2025)

[63] *Id.*

- "These gummies support cognitive function, enhance focus, and improve mental clarity"[64]
- "Cognition That Fits in a Lunchbox"[65]

64.    **Representations regarding immune support and cold and flu prevention**:

- "A Tasty Way to Help Fight Off Germs"[66]
- "STOP SICK DAYS"[67]
- "Holiday fun without the sniffles"[68]
- "Ingredients in Grüns help reduce colds by 70%"[69]
- "Immunity That Fits in a Lunchbox"[70]
- "[F]ewer sick days"[71]

---

[64] https://www.facebook.com/ads/library/?id=1040581778023580 (last accessed June 12, 2025)

[65] https://www.facebook.com/ads/library/?id=1361273708347725 (last accessed June 12, 2025)

[66] https://www.facebook.com/ads/library/?id=9959131294176276 (last accessed June 12, 2025)

[67] https://www.facebook.com/ads/library/?id=1702091587367522 (last accessed June 12, 2025)

[68] https://www.facebook.com/ads/library/?id=1167260974690814 (last accessed June 12, 2025)

[69] https://www.facebook.com/ads/library/?id=9328074477246943 (last accessed June 12, 2025)

[70] https://www.facebook.com/ads/library/?id=1178969560199919 (last accessed June 12, 2025)

[71] https://www.facebook.com/ads/library/?id=1889524888508681 (last accessed June 12, 2025)

65.    **Representations regarding hair, skin, and nails**:

- "Struggling with hair loss? Grüns Superfood Gummies are designed to help boost hair growth"[72]

- "Keep the hair, lose the stress"[73]

- "Stronger hair in just 30 days"[74]

- "Skin is nicer"[75]

- "Nails grow faster"[76]

- "Boost hair health naturally"[77]

66.    **Representations regarding testosterone and men's health**:

- "[T]hese gummies give your body what it needs to support healthy testosterone levels."[78]

- "Testosterone-boosting ingredients in 8 delicious gummies"[79]

---

[72] https://www.facebook.com/ads/library/?id=1481453853234214 (last accessed June 12, 2025)

[73] *Id.*

[74] https://www.facebook.com/ads/library/?id=1040581778023580 (last accessed June 12, 2025)

[75] https://www.facebook.com/ads/library/?id=1039597584715359 (last accessed June 12, 2025)

[76] *Id.*

[77] https://www.facebook.com/ads/library/?id=634357959481677 (last accessed June 12, 2025)

[78] https://www.facebook.com/ads/library/?id=976734874218227 (last accessed June 12, 2025)

[79] https://www.facebook.com/ads/library/?id=663381679569019 (last accessed June 12, 2025)

- "[O]ur formula is designed to naturally support healthy testosterone levels, improve strength, and enhance performance."[80]

- "Boost T-levels, naturally"[81]

- "Zinc, vitamin D, and B6 help boost T-levels."[82]

67.    Defendant also promotes the supposed impact of the Gummies on customers' protein levels, calling them "The Protein Multiplier" and "Your Protein's New Best Friend."

 

68.    Defendant further represents that consuming the Gummies will enable customers to "Build Stronger Muscle Fibers," "Stop Wasting Money on Protein," and

---

[80] *Id.*

[81] https://www.facebook.com/ads/library/?id=683768307497684 (last accessed June 12, 2025)

[82] https://www.facebook.com/ads/library/?id=1239654724466750 (last accessed September 12, 2025)

[83] https://www.facebook.com/ads/library/?id=1511718736635804 (last accessed September 12, 2025)

[84] https://www.facebook.com/ads/library/?id=781572914464693 (last accessed September 12, 2025)

achieve muscular "gains" through greens alone—even assuring consumers that the
Gummies will deliver results even where conventional nutrition has failed, such as
when an individual consumes "150g of protein" daily yet experiences no "gains."

 

 

---

[85] https://www.facebook.com/ads/library/?id=1907565166644389 (last accessed
September 12, 2025)

[86] https://www.facebook.com/ads/library/?id=1840241730171644 (last accessed
September 12, 2025)

[87] https://www.facebook.com/ads/library/?id=1075362061225518 (last accessed
September 12, 2025)

[88] https://www.facebook.com/ads/library/?id=1166421312210488 (last accessed
September 12, 2025)

69. This sweeping set of representations across fundamentally unrelated systems of the body mimics the pattern of classic "cure-all" advertising by offering consumers a promise of comprehensive or complete wellness. By layering together so many benefits, Defendant constructs the illusion of efficacy by volume, relying on the cumulative weight of dozens of specific claims to give the impression that the product works broadly and reliably.

### 4. Marketing the Gummies Through Email

70. Defendant repeatedly reinforces its deceptive marketing through direct email communications sent from its customer service address, care@gruns.co. These emails prominently feature uniform claims about Grüns providing comprehensive nutrition, complete supplementation, and substitutes for certain whole foods.

71. **Representations regarding replacement of supplements and fruits and vegetables**:

- "You could eat a bowl of kale… or just chew 8 gummies. (We vote gummies)." (June 12, 2025)



- "Did You Know? Only one fifth of children in the world consume the recommended daily amount of fruits and veggies? . . . That's why it's crucial to provide kids with the greens they need. Fortunately, there's a tasty way to ensure they get essential nutrients for healthy growth." (November 9, 2024)

- "Bye, Supplements." (June 8, 2025)

- "Compare This…" "Buying 5 different supplements separately" "To This…" "Just buy Grüns" (June 8, 2025)

- "Grüns replaces all supplements at a fraction of the cost" (June 6, 2025)

72.    **Representations regarding comprehensive and complete nutrition**:

- "All Your Health Essentials" "PACKED IN 8 TASTY GUMMIES" (June 11, 2025)

- "MOST COMPREHENSIVE NUTRIENT BLEND" (June 10, 2025)

- "CONSIDER YOUR NUTRITIONAL BASES COVERED" (June 9, 2025)

- "COMPREHENSIVE NUTRITION IN TASTY GUMMIES" (June 8, 2025)

- "PACKABLE, SNACKABLE, COMPREHENSIVE NUTRITION" (June 7, 2025)

- "Don't Miss Your Chance On Comprehensive Nutrition That Your Body Needs" (June 7, 2025)

- "GIVE YOUR LITTLE ONES THE SAME COMPREHENSIVE NUTRITION YOU LOVE" (June 6, 2025)

- "What You Need" [accompanied by a Grüns Adults pouch and repeated "COMPREHENSIVE NUTRITION" graphic] (June 6, 2025)

- "Grüns is packed with complete essential nutrients." (June 6, 2025)

- "Just one daily pack of Grüns and you're giving your body complete nutrition." (May 15, 2025)

- "One Daily Pack Is All You Need" (May 15, 2025)

- "Complete Nutrition in 6 Tasty Gummies!" (November 10, 2024)

- "Grüns Cubs provide a complete blend of vitamins, minerals, and nutrients[.]" (November 9, 2024)

73.    Defendant's email marketing makes specific, outcome-based promises about the effects of its Gummies. For example, in an email sent on June 12, 2025, Defendant claims, "Say Bye to Bloat, Hello to Fiber," and later asks, "READY TO BE BLOAT FREE?" In a different email sent that same day, Defendant claims, "Yes, It Actually Works," and "Fix your gut with 8 green gummies." Another email sent on June 8, 2025, asserts that the Gummies "[s]upport gut health & immunity" and "[h]elp give you strength and support[] weight loss and metabolism."

74.    Taken together, these emails reflect a consistent messaging strategy aimed at positioning Grüns as a complete and convenient replacement for both

supplements and fruits and vegetables, while emphasizing its purported health benefits.

### 5.    Marketing the Gummies on the Website

75.    Defendant's insistence on providing "comprehensive" nutrition continues on its website, gruns.co, where it doubles down on its promise of total nutritional sufficiency. According to the website, the Gummies are:

- A "revolutionary comprehensive nutrition gummy"[89]

- The "world's only comprehensive nutrition gummy"[90]

- "[C]omprehensive nutrition, made convenient and delicious."[91]

76.    The site claims that Defendant "combines 60 whole-food bioavailable ingredients, vitamins and minerals, super mushrooms, and more to create the perfect blend for optimal health."[92] The repetition of "comprehensive" is deliberate and constant:

- "Our **comprehensive gummies** integrate a variety of nutrients in complementary pairings to work in harmony, delivering maximum benefits and better absorption."[93] (emphasis added.)

- "Grüns gummies work together to provide **comprehensive nutrition** for your body and mind. Our plant-based, vegan, gluten-free, dairy-

---

[89] https://gruns.co/pages/how-gruns-works (last accessed June 12, 2025)

[90] https://gruns.co/pages/our-story (last accessed June 12, 2025)

[91] *Id.*

[92] https://gruns.co/pages/how-gruns-works (last accessed June 12, 2025)

[93] *Id.*

free, and nut-free formula ensures that everyone can enjoy the benefits of **comprehensive nutrition** in a convenient and delicious form."[94] (emphasis added.)

- "Embrace the delightful flavor and myriad health advantages of our **comprehensive nutrition gummies** at any moment throughout the day."[95] (emphasis added.)

- "Grüns makes **comprehensive nutrition** easy."[96] (emphasis added.)

- "Witness the gradual yet powerful impact of **comprehensive nutrition**[.]"[97] (emphasis added.)

- "We're dedicated to bringing **comprehensive and real nutrition** to you through our gummies, formulated from 60 nutrient-dense and whole-food ingredients."[98] (emphasis added.)

77.    Relatedly, Grüns also claims to address Americans' widespread nutritional deficiencies:

- "Grüns is here to help 92% of people with nutrient deficiencies."[99]

- "Grüns are a total upgrade to your traditional multivitamin. Each daily pack of gummies combines the benefits of eight different health

---

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.*

[98] https://gruns.co/pages/our-story (last accessed June 12, 2025)

[99] https://gruns.co/pages/faqs (last accessed June 12, 2025)

products in one, so you're covered on everything from vitamins to minerals, prebiotics, mushrooms, adaptogens, superfoods, greens, and phytonutrients. Just eat some cute gummy bears, and you're good to go!"[100]

78.    Defendant continues to make these representations on the specific product pages of the Grüns Adults' and Kids' sections of the website. Defendant displays a go-to-product-page button that states "Try comprehensive gummies" on the Adults' product page and "Try cubs comprehensive gummies" on the Kids' product page:



---

[100] *Id.*

**The Healthy Habit Kids Will Want to Keep**

Give your kids what they need to reach their full potential with tasty daily gummies. Created by parents, Grüns Kids are the best way to fill nutrient gaps and promote healthy growth.

**Try cubs comprehensive gummies**

79.    In both FAQs, Defendant answers, "Why Grüns?" with "**Comprehensive:** Nutrition that works. Grüns replaces handfuls of health products at a fraction of the cost." And lists of characteristics of both Gummies include "comprehensive."



**Get Your Grüns**

Vegan | Comprehensive | Delicious | Fast Acting

★★★★★ 4.8 stars from 35,000 reviews | **250,000+** members



**Get Grüns Cubs**

A Sneaky Delicious Surprise | Vegan | Comprehensive

★★★★★ 4.8 stars from 20,000 reviews | **250,000+** members

80.    On its website, Defendant also makes health claims tied to specific ingredients and nutrients, including fiber. For example, Defendant states that the Gummies "support[] digestive health by providing a blend of prebiotic fibers that

nourish healthy gut bacteria, improve regularity, and enhance overall gastrointestinal function."[101]

81.    In an article titled, "9 Reasons Why Grüns Is the Daily Fiber Upgrade Your Body's Been Missing," Defendant highlights the supposed benefits of the Gummies' fiber content, arguing that the Gummies provide better fiber content than broccoli:

> Hitting your fiber goals shouldn't mean cramming down 5-7 cups of raw veggies every day. Grüns delivers 6g of prebiotic fiber that supports more than just digestion, from balancing GLP-1 side effects to clearer skin, healthy aging and so much more.
> . . .
> Each serving of Grüns provides 6g of prebiotic fiber, covering 20% of the daily recommended intake*. That's more than two cups of broccoli[.][102]

82.    Defendant further claims that the Gummies offer an extraordinarily broad range of benefits:

> The benefits of Grüns make up a long list. Try saying all of this with one breath of air: gut health, immunity, brain health, cognitive clarity, energy, thicker hair and nails, healthier skin, anti-aging, potential stress relief, recovery, strength building, detoxification, better sleep, prenatal health, and overall health.[103]

### 6.    Marketing the Gummies on Other Platforms

83.    Defendant sells the Gummies on third-party platforms, including Amazon and Target.

---

[101] https://gruns.co/pages/science (last accessed June 12, 2025)

[102] https://gruns.co/pages/fiber (last accessed September 12, 2025)

[103] https://gruns.co/ (last accessed June 12, 2025)

84.    On Amazon, where more than 50,000 customers purchase the Gummies each month, Defendant markets the Gummies through subscriptions and bundles. One such bundle is branded as the "Gruns Complete Nutrition Sugar Free Variety Bundle."[104]

85.    Across Amazon product pages, Defendant repeats its central message: a commitment "to bringing comprehensive and complete nutrition to you through our gummies[.]"[105] Defendant further positions the Gummies as a "GREAT SOURCE OF FIBER[.]"[106] Product imagery reinforces these claims by surrounding the Gummies with fruits and vegetables:

 

[104] https://www.amazon.com/Complete-Nutrition-Vitamins-Superfood-Supplements/dp/B0F9H7SS9Q/ (last accessed September 12, 2025)

[105] https://www.amazon.com/Gruns-Daily-Super-Greens-Gummies-Organic-Spirulina-Chlorella/dp/B0CNQDYFH6/ (last accessed September 12, 2025)

[106] https://www.amazon.com/Multivitamin-Superfood-Prebiotics-Adaptogens-Supplement/dp/B0FCPD8F7J/ (last accessed September 12, 2025)

[107] https://www.amazon.com/Gruns-Vitamins-Super-Greens-Gummies/dp/B0DCQ4R3WX? (last accessed September 12, 2025)

[108] https://www.amazon.com/Gruns-Daily-Super-Greens-Gummies-Organic-Spirulina-Chlorella/dp/B0CNQDYFH6/ (last accessed September 12, 2025)

86.    On Target's website, where Defendant also retails the Gummies, the same themes appear. Defendant advertises the Gummies as providing "comprehensive and complete nutrition," claiming they "fill[] the gaps" by "combin[ing] 60 powerful ingredients like whole fruits, veggies, super mushrooms, prebiotics, and adaptogens to deliver effective nutrition in one convenient gummy."[109]

### 7.    Marketing the Gummies on Product Packaging

87.    Defendant's product packaging cements the claim. On the front of Grüns Adult pouches, in bright yellow font against a green background, Defendant declares: "Comprehensive Nutrition." The sugar-free version carries the same label.

 

88.    Both version of Grüns Kids packaging reiterates: "Comprehensive Nutrition for Kids." Defendant also tacks on "All-In-One."

---

[109] https://www.target.com/p/gruns-adult-low-sugar-superfoods-greens-gummies-96ct-12-servings/-/A-93215053#lnk=sametab (last accessed September 12, 2025)



89.     From the front of the pouch to the FAQs on its website, Defendant

drives home the same message: Grüns is all you need. Not some of what you need.

Not a helpful addition. All of it.

**B.    Defendant's Promises of "Comprehensive" and "Complete" Nutrition are Misleading and Deceptive**

90.     Defendant markets its products as delivering "comprehensive" and

"complete" nutrition to adults and children. Defendant repeatedly promises

consumers that six or eight gummies a day can meet complex nutritional needs.

91.     These claims collapse under even minimal scrutiny. Grüns' gummies

omit entire classes of essential nutrients and provide inadequate amounts of others.

By claiming to offer "all-in-one" solutions, "100% daily nutrition," or "everything you

need," Defendant presents its "comprehensive" and "complete" products as

nutritionally sufficient across the board when they are not.

92.     In short, Defendant promises total nutrition. It delivers a fraction.

### 1.  Misleading Claims of "Comprehensive" and "Complete" Nutrition

93.    Across its website, packaging, social media, email marketing, and third-party retail platforms, Defendant markets a handful of gummies as delivering "comprehensive" and "complete" nutrition, claiming users can "get all [their] nutrients" from six or eight gummies and that "Grüns replaces all supplements at a fraction of the cost."

94.    Grüns Adults is labeled "All-in-One Nutrition," promoted as filling "nutritional gaps," and advertised as delivering "100% of your essential nutrients."

95.    Grüns Kids promises "100% of Kids' Daily Nutrition."

96.    By claiming that the Gummies provide "comprehensive" and "complete" nutrition, Defendant conveys the message that they "cover[] completely or broadly"[110] consumers' essential nutrient needs and "hav[e] all necessary parts, elements, or steps"[111] required for adequate nutrition.

97.    This is misleading. According to the Cleveland Clinic, the human body requires six essential nutrients: fats, carbohydrates, protein, vitamins, minerals, and water.[112] Defendant's Gummies, however, lack protein and fats entirely, including essential omega-3 fatty acids, and only deliver minimal amounts of key minerals like iron and none of others, like calcium.

---

[110] https://www.merriam-webster.com/dictionary/comprehensive (last accessed June 12, 2025)

[111] https://www.merriam-webster.com/dictionary/complete (last accessed September 12, 2025)

[112] https://health.clevelandclinic.org/essential-nutrients (last accessed June 12, 2025)

98.    Omega-3 fatty acids, such as eicosapentaenoic acid ("EPA") and docosahexaenoic acid ("DHA"), are crucial in a healthy human diet. Indeed, "most health organizations agree that 250–500 mg of combined EPA and DHA is enough for adults to maintain their overall health."[113] Yet the Gummies lack omega-3 fatty acids, or any fats at all.

99.    Experts argue that multivitamins should contain calcium and iron.[114] While the National Academy of Medicine recommends that individuals consume 1 to 1.2 grams of calcium per day, depending on age and gender, the Gummies provide none. A "substantial proportion of people in the United States" do not consume recommended amounts of calcium.[115] Further, almost 1/3 of American adults are iron deficient.[116] Yet Grüns Adults contain 4.5 milligrams of iron, or 25% of the daily value.

100.    Defendant's fiber claims are similarly misleading. One serving of Grüns Adults contains approximately six grams of soluble fiber, yet the daily value for

[113] https://www.healthline.com/nutrition/how-much-omega-3#general-guidelines (last accessed June 12, 2025)

[114] https://www.healthline.com/health/food-nutrition/best-vitamins-to-take-daily#5-Iron (last accessed June 12, 2025)

[115] https://ods.od.nih.gov/factsheets/Calcium-HealthProfessional/ (last accessed June 12, 2025)

[116] https://www.healthline.com/health-news/iron-deficiency-healthy-tips-to-get-more-iron (last accessed June 12, 2025)

dietary is fiber 28 grams per day. [117] A consumer relying solely on Grüns, as Defendant suggests, would fall drastically short.

101.    The type of fiber in the Gummies is also inadequate to deliver the digestive benefits Defendant claims. One serving of Grüns Adults contains six grams of dietary fiber, which Defendant identifies as "6g of soluble fiber."[118] Soluble and insoluble fiber serve different functions in the body, and one cannot substitute for the other. Insoluble fiber "help[s] food and waste pass through the gut more easily,"[119] and without it, "the bowel does not get enough exercise, leading to fewer bowel movements and eventual constipation."[120]

102.    Medical consensus stresses the importance of consuming a wide variety of fruits, vegetables, and grains to obtain both soluble and insoluble fiber and their complementary benefits.[121]

103.    Defendant nevertheless compares the fiber in its Gummies to that of whole vegetables like broccoli and spinach, despite the fact that the composition and

---

[117] https://www.accessdata.fda.gov/scripts/interactivenutritionfactslabel/assets/InteractiveNFL_DietaryFiber_October2021.pdf (last accessed June 12, 2025)

[118] https://www.amazon.com/Multivitamin-Superfood-Prebiotics-Adaptogens-Supplement/dp/B0FCPD8F7J?th=1 (last accessed September 12, 2025)

[119] https://www.nih.gov/news-events/nih-research-matters/health-benefits-dietary-fibers-vary (last accessed September 12, 2025)

[120] https://bastyr.edu/about/news/do-we-really-need-insoluble-fiber (last accessed September 12, 2025)

[121] https://www.healthline.com/health/soluble-vs-insoluble-fiber#sources-of-fiber (last accessed September 12, 2025)

function of the fiber in the Gummies are fundamentally different. Broccoli's fiber is approximately 52% insoluble; spinach's fiber is approximately 75% insoluble.[122]

104.    Worse still, science has shown that the sources soluble of fiber in the Gummies aggravate rather than relieve the very conditions Defendant claims to solve. Tapioca fiber—the first-listed ingredient in Defendant's "Core Nutrients Blend"—is associated with bloating and gas when taken by mouth.[123] Inulin—the second-listed ingredient—has been documented to "increase GI symptoms mildly," most frequently "flatulence followed by bloating." [124] Yet Defendant assures consumers that its fiber will do the opposite, promising "no more bloat."

105.    Defendant's fiber representations therefore fail on both fronts. The Gummies provide too little fiber to meet daily needs, and the wrong kind of fiber to deliver the digestive benefits Defendant promises. The comparison to broccoli and spinach is false in both quantity and quality. Consumers are deceived into believing they can replace fruits and vegetables with Gummies, when in fact the Gummies cannot replicate—and in some respects contradict—the benefits of real produce.

106.    Independent nutritionists underscore the same point. The New York Nutrition Group describes Grüns as having "Lower Nutrient Concentration" and

---

[122] https://www.northottawawellnessfoundation.org/wp-content/uploads/2017/11/NOWF-Fiber-Content-of-Foods.pdf (last accessed September 12, 2025); https://www.otsuka.co.jp/en/health-and-illness/fiber/intake/foods-amount/ (last accessed September 12, 2025)

[123] https://www.webmd.com/vitamins/ai/ingredientmono-1607/tapioca#sideeffects (last accessed September 12, 2025)

[124] https://pubmed.ncbi.nlm.nih.gov/20497775/ (last accessed September 12, 2025)

writes: "While gummies can help supplement your diet, they should not be relied upon as a primary source of nutrition. Whole foods provide a broader range of nutrients and health benefits that gummies cannot fully replicate."[125]

107.    Defendant's testosterone claims—that its Gummies naturally boost testosterone levels with zinc, vitamin B6, and vitamin D—are likewise misleading. A 2019 analysis evaluating so-called "T booster" supplements found the available literature "supporting the claims made by the supplements was often sparse or non-existent" and noted that the evidence on vitamin D and zinc is conflicting, while evidence shows that vitamin B6 supplementation may actually decrease testosterone levels.[126]

108.    Other studies confirm that supplementation with zinc, magnesium, and vitamin B6 (ZMA) does not increase testosterone in men with adequate diets.[127] As one concluded: "The findings suggest that extra doses of the micronutrients present in the ZMA do not bring any additional benefits, either in the body composition or in the hormonal levels in subjects under adequate diet."[128]

---

[125] https://www.nynutritiongroup.com/nutrition-blog/2025/4/1/dietitians-review-of-the-new-supergummy-grns (last accessed June 12, 2025)

[126] https://pmc.ncbi.nlm.nih.gov/articles/PMC6920068/ (last accessed September 12, 2025)

[127] https://www.nature.com/articles/1602899 (last accessed September 12, 2025)

[128] https://www.endocrine-abstracts.org/ea/0056/ea0056p665 (last accessed September 12, 2025)

109.    The evidence on zinc remains unsettled. One study observed that the "scientific evidence on the relationship between serum zinc and testosterone remains to be understood and summarized."[129]

110.    Studies of vitamin D have likewise found no benefit. One study reported: "Vitamin D treatment had no effect on [total testosterone] levels in middle-aged healthy men with normal baseline [total testosterone]." [130] Another concluded: "[T]here is no apparent evidence to support the use of vitamin D supplementation to increase testosterone levels[.]"[131]

111.    Defendant's testosterone-boosting claims are therefore false or misleading. Zinc, vitamin D, and vitamin B6 cannot reliably and meaningfully boost testosterone in healthy individuals and, in the case of B6, may reduce levels.

112.    Defendant's claims about protein are similarly misleading.

113.    The Gummies contain zero grams of protein. A product with zero protein cannot plausibly multiply, enhance, or substitute for protein intake.

114.    Yet Defendant markets the Gummies as a "Protein Multiplier" and urges consumers to "Stop wasting money on protein."

115.    Defendant points to the presence of zinc, B vitamins, and fiber, nutrients that play background roles in metabolic processes touching protein use. But merely

---

[129] https://www.sciencedirect.com/science/article/abs/pii/S0946672X22002048 (last accessed September 12, 2025)

[130] https://academic.oup.com/jcem/article/102/11/4292/4096785 (last accessed September 12, 2025)

[131] https://www.sciencedirect.com/science/article/abs/pii/S0149291820301831 (last accessed September 12, 2025)

being part of a pathway is not the same as meaningfully improving protein utilization in healthy individuals. For example, zinc supplementation has been found to have no significant effect on protein synthesis.[132]

116.    Claims like "Build Stronger Muscle Fibers" suggest that the Gummies rival or surpass the role of dietary protein itself. That is misleading. Muscle protein synthesis depends on amino acids from complete proteins, not trace micronutrients.

117.    In reality, consumers often take a variety of supplements to meet targeted, well-documented needs. The University of Colorado lists 14 common examples: ashwagandha, calcium, collagen, fish oil, green powders, iron, magnesium, multivitamins, prebiotics, probiotics, protein powder, psyllium, vitamin B12, and vitamin D.[133]

118.    The Gummies cannot replace most of them. At a minimum, the Gummies cannot replace ashwagandha, calcium, collagen, fish oil, magnesium, probiotics, protein powder, or psyllium, because the Gummies do not contain ashwagandha, calcium, collagen, omega-3 fatty acids, magnesium, probiotics, protein, or psyllium.

119.    Nor do the Gummies meet the expectations of a basic multivitamin. "Experts agree that the average American adult often doesn't get enough of the same five nutrients. These are: Calcium, Magnesium, Vitamin D, Potassium, Fiber . . .

---

[132] https://pubmed.ncbi.nlm.nih.gov/18077134/ (last accessed September 12, 2025)

[133] https://www.uchealth.org/today/dietary-supplements-are-they-beneficial-or-a-waste-of-money/ (last accessed September 12, 2025)

Look for a multivitamin that has most of these[.]"[134] The Gummies contain neither calcium nor magnesium.

120.    Other supplements target specific needs, e.g., creatine for muscle-building, chondroitin for joint health, and melatonin for sleep. Grüns contains none of these ingredients and cannot plausibly replace any of these widely used, condition-specific supplements.

121.    Despite these gaps, Defendant repeatedly tells consumers they or their children can "get all [their] nutrients" from six or eight gummies and that the Gummies "replace all supplements." A reasonable consumer would understand these claims to mean that the product actually delivers the ingredients and health benefits of the supplements it purports to replace. That is not true.

### 2.    Misleading Claims Targeting GLP-1 Users

122.    Defendant's "comprehensive" and "complete" claims regarding Grüns Adults specifically target individuals taking GLP-1 receptor agonist medications like Ozempic and Wegovy. The product is marketed as capable of filling nutritional gaps created by reduced appetite and food intake and providing "all" nutrients for individuals taking GLP-1 medications.

123.    This is misleading. GLP-1 users face well-documented nutritional risks, including deficiencies in protein, fat, fiber, iron, and other critical nutrients. These deficits have clinical consequences, including muscle wasting, fatigue, impaired

---

[134] https://www.webmd.com/diet/how-to-choose-a-multivitamin (last accessed September 12, 2025)

immunity, and metabolic disruption. Addressing those risks requires careful, targeted supplementation. Grüns Adults does not come close.

124.    Experts recommend that individuals on antiobesity medications ("AOMs") like GLP-1 medications consume 60 to 75 grams of protein daily to avoid muscle loss.[135] Grüns Adults contains none.

125.    Fat intake should land between 27 and 58 grams per day, depending on caloric intake.[136] Grüns Adults again contains none.

126.    Individuals on AOMs are advised to consume 130 grams of carbohydrates per day. Grüns Adults provides 15 grams, or 11.5% of the recommended amount.

127.    Fiber requirements range from 21 to 38 grams per day,[137] yet Grüns Adults offers just 6 grams, or 28.6% the lower bound for women and 20% the lower bound for men.

128.    One serving of Grüns Adults contains six grams of dietary fiber, which Defendant identifies as "6g of soluble fiber."[138] Medical guidance, however, makes clear that insoluble fiber is critical for GLP-1 users, particularly in relieving constipation, a common side effect. As one source, discussing the GLP-1 users' side effects, explains: "[f]or constipation, increase both soluble fiber (oats, apples) and

---

[135] https://onlinelibrary.wiley.com/doi/10.1002/oby.24067?af=R#oby24067-bib-0055 (last accessed June 12, 2025)

[136] *Id.*

[137] *Id.*

[138] https://www.amazon.com/Multivitamin-Superfood-Prebiotics-Adaptogens-Supplement/dp/B0FCPD8F7J?th=1 (last accessed September 12, 2025)

insoluble fiber (vegetable skins, nuts) with plenty of water."[139] Defendant promises that its Gummies provide the fiber needed to address GLP-1 side effects, yet they do not supply the type or balance of fiber necessary to deliver those benefits.

129.    Research has also shown that GLP-1 medications may impair the body's ability to absorb iron and that "[p]atients undergoing semaglutide treatment may require closer monitoring of iron status."[140] Yet, Grüns Adults only contains 4.5mg, or **25%** of the daily value for iron.

130.    Experts caution that "[t]reatment of micronutrient deficiencies may require targeted micronutrient supplementation rather than reliance on food sources."[141] Grüns uses this legitimate medical concern as a marketing foothold but offers a product that is categorically unfit to meet it. The formulation is not tailored to the specific needs of GLP-1 users and lacks the dosage strength, clinical targeting, or comprehensiveness required to meaningfully address the deficiencies it invokes.

131.    In short, Grüns identifies the right problem but markets the wrong solution, offering a generic, underpowered gummy in place of the individualized, clinically guided supplementation experts actually recommend.

132.    This misrepresentation is compounded by the product's broader nutritional deficiencies. A supplement with no protein, no fat, low fiber, low

---

footnotes
[139] https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2836527 (last accessed September 12, 2025)

[140] https://dom-pubs.onlinelibrary.wiley.com/doi/10.1111/dom.16368?af=R (last accessed June 12, 2025)

[141] https://onlinelibrary.wiley.com/doi/10.1002/oby.24067?af=R#oby24067-bib-0055 (last accessed June 12, 2025)

carbohydrates, and low iron cannot reasonably be marketed as a "comprehensive" and "complete" replacement for "all nutrients." Defendant grossly overstates what the product provides.

### 3.    Misleading Claims Targeting Children and Parents

133.    Defendant markets Grüns Kids as a "comprehensive" and "complete" nutritional "candy" for children, explicitly targeting parents whose children resist eating fruits and vegetables.

134.    Through slogans like "Your Kid Refuses Veggies? Start Here," cost comparisons between the gummies and real produce, and repeated promises like "100% of Kids' Daily Nutrition" and "All-in-One Nutrition," Defendant asserts, explicitly and implicitly, that Grüns Kids can replace fruits and vegetables.

135.    But this premise is medically baseless. Most children don't need supplements at all. As the Mayo Clinic explains, "Most healthy children don't need multivitamins if they are growing at the typical rate and eating a variety of foods."[142] Dr. Rachel Dawkins, Director of the Pediatric and Adolescent Medicine Clinic at Johns Hopkins All Children Hospital, clarifies further, "Even picky eaters get all of the nutrients they need from food."[143] Defendant manufactures a problem (general children's nutritional deficiency) that, for most families, doesn't exist.

---

[142] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/multivitamins/faq-20058310 (last accessed June 12, 2025)

[143] https://www.hopkinsmedicine.org/health/wellness-and-prevention/do-kids-need-vitamin-supplements (last accessed June 12, 2025)

136. And even for those with legitimate concerns, Grüns Kids is no solution. Dr. Jennifer Sample explains, "Multivitamins aren't a substitute for fruits and vegetables because fruits and vegetables provide more than vitamins and minerals. They offer fiber, protein, and other micronutrients not found in a multivitamin."[144]

137. Dr. Dawkins adds, "Just don't let [vitamins] take the place of a healthy diet, which children need for good growth."[145]

138. Whole produce delivers more than isolated nutrients. It provides a unique and irreplaceable package of macronutrients (carbohydrates, protein, fat), antioxidants, phytonutrients, and textural variety that support digestive and sensory development. Grüns Kids, by contrast, does not have **any** protein nor **any** fat, yet markets itself as equivalent to fruits and vegetables.

139. Calcium, another crucial nutrient, is noticeably absent. According to a study published by the American Association of Pediatricians, "[e]nsuring adequate intake of calcium" is an "important nutritional goal[] for children."[146] The National Institute of Health recommends that children ages 2 to 13 consume between 700 to 1300 milligrams of calcium per day, depending on age.[147] Grüns Kids provides none.

---

[144] https://www.goodrx.com/well-being/diet-nutrition/kids-picky-eaters-fruits-and-veggies?srsltid=AfmBOopDHsGBUHBqVd3WEOqFsWNEsjmACrLSuiHVdF44MDQuDQ1Mo_7D (last accessed June 12, 2025)

[145] https://www.hopkinsmedicine.org/health/wellness-and-prevention/do-kids-need-vitamin-supplements (last accessed June 12, 2025)

[146] https://publications.aap.org/pediatrics/article-abstract/127/3/566/65017/Dietary-Guidelines-for-Calcium-and-Vitamin-D-A-New?redirectedFrom=fulltext (last accessed June 12, 2025)

[147] https://ods.od.nih.gov/factsheets/Calcium-Consumer/ (last accessed June 12, 2025)

140.    Even among the nutrients it does include, the levels are inadequate.

141.    According to Defendant's marketing materials, fiber deficiency impacts "up to 78% of the children." The Children's Hospital recommends that children ages 2 to 13 consume 19 to 31 grams of fiber, depending on age and gender. [148]

142.    But Grüns Kids contains just 4 grams of fiber, or 21% of the lowest daily recommendation. The Children's Hospital warns that fiber shortfalls are linked to type 2 diabetes, obesity, and constipation.

143.    Moreover, although Grüns Kids is marketed as a replacement for fruits and vegetables, its fiber content fails to replicate the natural balance of soluble and insoluble fiber found in whole produce. Insoluble fiber is essential to children's health. It "plays a pivotal role in our kid's digestive health," "support[s] gut health and regularity," and "can also contribute to overall wellness and helps kids build a better foundation for healthier diet habits."[149]

144.    Iron is similarly underdosed. Children ages 2 to 13 require 7 to 10 milligrams daily, depending on age.[150] Grüns Kids provides just 2.23 milligrams, or 32% of the recommended amount. Iron deficiency is a "common problem in children," and without treatment, "it can affect a child's growth and development."[151]

---

[148] https://www.childrenshospital.org/sites/default/files/media_migration/c0e77168-ea9a-4d5f-8838-0523bc31bf4e.pdf (last accessed June 12, 2025)

[149] https://www.beginhealth.com/blogs/learn/what-is-insoluble-fiber-for-kids-benefits-and-importance-explained? (last accessed September 12, 2025)

[150] https://www.mayoclinic.org/healthy-lifestyle/childrens-health/in-depth/iron-deficiency/art-20045634 (last accessed June 12, 2025)

[151] *Id.*

145.    While claiming to offer a complete and comprehensive solution, Defendant provides inadequate support for issues that are common, like fiber, iron, and calcium deficiency. Defendant's claim that Grüns Kids is the "very best way to get all the vitamins, minerals, fruits, and veggies growing kids . . . need," directly contradicts guidance from the Mayo Clinic, which states, "Foods are the best source of nutrients: fat, protein, carbohydrates, vitamins and minerals."[152]

146.    The formulation is also indiscriminate. Grüns Kids claims to serve children ages 2 to 13, a range that spans 4 different age groups[153] with vastly different nutritional profiles. As Johns Hopkins Medicine cautions, "Just make sure to choose a vitamin that is formulated to your child's age group."[154] Defendant does not.

147.    And while the product's nutritional claims are thin, the emotional appeals are thick. Grüns trades on the stress and guilt of parenting, invoking "mealtime battles" and promising peace through gummies. Defendant tells parents to skip the fight and give their child candy instead.

148.    For children with sensory processing challenges or feeding issues, that message is especially misleading. Pediatric nutrition is not just about hitting nutrient targets. It's about repeated, structured exposure to textures, temperatures, and food experiences during critical developmental windows.

---

[152] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/expert-answers/multivitamins/faq-20058310 (last accessed June 12, 2025)

[153] https://www.healthychildren.org/English/ages-stages/Pages/default.aspx (last accessed June 12, 2025)

[154] https://www.hopkinsmedicine.org/health/wellness-and-prevention/do-kids-need-vitamin-supplements (last accessed June 12, 2025)

149.    Researchers have found that "[f]ood texture acceptance is learned from an early age" and hinges on oral motor development and exposure to a variety of textures.[155] Even simple practices like tasting one vegetable or fruit per day for 8 to 10 days can increase acceptance.[156] As experts note, "[t]he establishment of eating practices that contribute to lifelong nutritional habits and overall health begins in toddlerhood."[157]

150.    Defendant's marketing undermines this developmental process. Rather than encouraging sensory engagement, it promotes avoidance, offering a gummy in place of fruits and vegetables and calling it "complete nutrition."

151.    At bottom, Grüns sells the simplification that "complete" nutrition can come from a handful of gummies and that parents can skip vegetables, dodge stress, and still feel virtuous. The product omits essential nutrients, misrepresents its formulation, and exploits parental fears. It offers a partial solution, packaged as a total one, and in doing so, fails the children it claims to nourish.

### 4.    Commanding a Price Premium Based on These Misrepresentations

152.    Across ads, packaging, and its website, Defendant consistently represents Grüns Gummies as "comprehensive" and "complete" and a substitute for

---

[155] https://www.tandfonline.com/doi/full/10.1080/10408398.2022.2136619#d1e1037 (last accessed June 12, 2025)

[156] https://pubmed.ncbi.nlm.nih.gov/30982874/ (last accessed June 12, 2025)

[157] https://www.aafp.org/pubs/afp/issues/2018/0815/p227.html (last accessed June 12, 2025)

other supplements, nutrients, and certain whole foods. Nowhere does Defendant clarify that the product lacks key nutritional components.

153.    Defendant's marketing is tailored to exploit common consumer anxieties, e.g., children refusing vegetables or adults losing appetite on medications like Ozempic and Wegovy.

154.    Defendant uses the words "comprehensive" and "complete" as concrete nutritional claims, e.g., "100% of kids' daily nutrition" or "100% of your essential nutrients." These are specific and factual representations. The terms "comprehensive" and "complete" are not abstract value judgments but measurable assertions in the context of supplements.

155.    Defendant's misleading claims about "complete" and "comprehensive" nutrition drive sales and allow Defendant to command a substantial price premium. Consumers are willing to pay more for products that promise total nutritional coverage, especially those that claim to eliminate the need for supplements or entire food groups such as fruits and vegetables.

156.    Defendant charges a significant price premium for the Gummies. A one-time purchase of Grüns Adults costs up to $87.99. For Grüns Kids, consumers must sign up for a cancellable subscription that charges up to $50.24 every four weeks.

157.    These inflated prices are not attributable to higher manufacturing costs or demonstrably superior efficacy. Rather they stem from Defendant's marketing strategy. By marketing the Gummies as a source of "comprehensive" and "complete"

nutrition, and claiming that the Gummies provide "everything you need," Defendant induces consumers to pay for effects the product cannot deliver.

158.    Consumer did not receive the benefit of their bargain. They paid a price premium for a product falsely marketed as delivering "comprehensive" health and nutrition. Defendant's Gummies were not capable of delivering on the promises Defendant made in its widespread marketing materials.

159.    Consumers reasonably believed they were purchasing a solution to medical or personal concerns. Consumers were misled into overpaying for a product based on false or unsubstantiated claims.

**C.    Plaintiff Patricia Cavallaro-Kearins's Experience with Grüns**

160.    Plaintiff Patricia Cavallaro-Kearins first purchased Grüns Adults and Grüns Kids on December 21, 2024, and subsequently subscribed to regular purchases of Grüns Kids on January 18, 2025, with her last purchase on May 5, 2025.

161.    Defendant's advertising drove Plaintiff to purchase both Grüns Adults for herself and Grüns Kids for her daughter through Defendant's website, accessed directly from a Facebook advertisement placed by Grüns. Plaintiff later subscribed to Grüns Kids through Amazon.

162.    Plaintiff purchased Grüns Adults because Defendant represented the Gummies as a comprehensive solution to a range of health concerns. Defendant claimed the Gummies provided complete nutrition, filled dietary gaps, and operated as an all-in-one replacement for other supplements. Defendant further promised that the Gummies would improve gut health, reduce bloating, aid weight loss, boost energy and focus, support the immune system, and enhance hair, skin, and nails.

163.    Plaintiff reasonably understood "comprehensive" and "complete" to mean that Grüns Adults supplied all essential nutrients. She relied on these assurances and purchased the product believing it would deliver total nutrition and the advertised benefits.

164.    Plaintiff also viewed and relied upon Defendant's advertisements expressly targeting GLP-1 users. The promise of "comprehensive" and "complete" nutrition was especially material to Plaintiff Cavallaro-Kearins because she was taking a GLP-1 receptor agonist medication and was drawn to Defendant's representations that the Gummies addressed the nutritional needs and side effects of GLP-1 users.

165.    Plaintiff purchased Grüns Kids for her daughter because Defendant positioned the Gummies as a direct substitute for fruits and vegetables. Plaintiff's daughter does not eat sufficient produce, and Defendant's representations that six Gummies provided 100% of kids' daily nutrition appeared to offer a simple, total solution. Defendant's imagery reinforced this message, depicting the Gummies surrounded by the very fruits and vegetables her daughter refused to eat.

166.    Plaintiff also believed the Gummies would provide support for her daughter's motility issues, a further inducement to purchase.

167.    Plaintiff relied on these claims and believed Grüns Kids would provide the comprehensive nutrition her daughter otherwise lacked.

168.    Plaintiff's decision was compounded by her daughter's persistent requests, themselves the result of Defendant's advertising campaigns. Defendant

aggressively marketed the Gummies to her daughter through in-app video ads embedded in free games on her iPad. The effect was profound: her daughter became fixated on Grüns.

169.    Plaintiff viewed and relied upon Defendant's online advertisements, which repeatedly made sweeping misrepresentations, including but not limited to claims that the Gummies:

- Were complete or offered complete nutrition.

- Were comprehensive.

- Were comparable to actual fruits and vegetables.

- Replaced actual fruits and vegetables.

- Filled nutritional gaps in your diet.

- Contained everything you need.

- Contained all the nutrients.

- Were an all-in-one solution.

- Replaced all other supplements.

- Provided 100% of kids' daily nutrition.

- Provided solutions for gut and digestive health—specifically reducing bloating and enabling weight loss—improving energy, focus, cognitive function, supporting the immune system, and enhancing hair, skin, and nails.

- Provided adequate fiber.

170.    Based on these representations, Plaintiff believed the Gummies provided truly comprehensive nutrition, including all essential nutrients.

171.    Plaintiff also reviewed Defendant's website, which reinforced the same false theme through sweeping and unequivocal claims, including:

- "What if your kids had 100% of their daily nutrients?"



- "Just comprehensive and complete nutrition"

- "The easiest way for kids to get all their nutrients!"



- "We're dedicated to bringing comprehensive and real nutrition to you through our gummies."



- "Our gummies are brimming with 60 premium ingredients, each meticulously selected to replenish nutrients for daily performance and nourish your body's complex systems for complete well-being[.]"

## Your Daily Ritual

**A Deliciously Effortless Daily Ritual**

Grüns is thoughtfully formulated to be an enjoyable and seamless addition to your everyday life. Our gummies are brimming with 60 premium ingredients, each meticulously selected to replenish nutrients for daily performance and nourish your body's complex systems for complete well-being – all in a convenient snack pack of 8 gummies, enjoyed once a day, anywhere life takes you.



**One Snack Pack**

Experience the epitome of a simplified supplement routine. Grüns unites vitamins, minerals, prebiotics, whole-food ingredients, and more in a single snack pack of 8 tasty gummies. No more cobbling together handfuls of supplements.



**Anytime Daily**

Enjoy Grüns whenever it suits you. Embrace the delightful flavor and myriad health advantages of our comprehensive nutrition gummies at any moment throughout the day. We know life can be unpredictable. Grüns is here to support you.



**Anywhere**

Achieving lasting results requires dedication and consistency. Grüns' nutrient-packed formula makes it the perfect daily companion for a nourishing lifestyle, no matter where you happen to be. Grüns makes comprehensive nutrition easy.

- "Grüns Holistic Harmony. Grüns is a revolutionary comprehensive nutrition gummy that combines 60 whole-food bioavailable ingredients, vitamins and minerals, super mushrooms, and more to create the perfect blend for optimal health."

## The Science: Grüns Holistic Harmony

**Unlock Vibrant Health**

Grüns is a revolutionary comprehensive nutrition gummy that combines 60 whole-food bioavailable ingredients, vitamins and minerals, super mushrooms, and more to create the perfect blend for optimal health.

Revitalize Your Body

**Revitalizes Your Body**

Grüns bridges the gap in your daily nutrition with a carefully crafted formula that supports cellular health and optimal function. Our gummies are packed with superfoods, antioxidants, and adaptogen extracts to help balance your body and enhance the absorption of essential nutrients.

Boost Gut Health

**Boosts Gut Health**

A healthy gut is the foundation for overall wellness. Grüns' unique combination of prebiotics, whole-food vegetables, and fruits in a delicious gummy form helps optimize digestion and promote a thriving gut environment.
2.5%



**Synergistic Nutrition**

Grüns enhances the effectiveness of each ingredient by combining them with their natural partners. Our comprehensive gummies integrate a variety of nutrients in complementary pairings to work in harmony, delivering maximum benefits and better absorption.



**Holistic Balance**

Grüns gummies work together to provide comprehensive nutrition for your body and mind. Our plant-based, vegan, gluten-free, dairy-free, and nut-free formula ensures that everyone can enjoy the benefits of comprehensive nutrition in a convenient and delicious form.

- "Why Grüns? It's simple! **Comprehensive:** nutrition that works."



- "The benefits of Grüns make up a long list. Try saying all of this with one breath of air: gut health, immunity, brain health, cognitive focus, energy, thicker hair and nails, healthier skin, anti-aging, stress relief, recovery, strength building, detoxification, better sleep, prenatal health, and overall health."



- "Get Grüns Kids . . . Comprehensive"



- "Get Your Grüns Daily…Comprehensive"



172.    Images used in Defendant's marketing emphasized comprehensiveness, surrounding the Gummies with fruits and vegetables—precisely the foods Plaintiff's daughter refused to eat:



173.    Plaintiff relied on Defendant's packaging, which promised "comprehensive nutrition."

174.    Plaintiff did not purchase Grüns Adults again, after it didn't produce any benefits.

175.    However, her daughter remained captivated by the product's branding and ritual. Plaintiff continued to purchase Grüns Kids, including through Amazon, and subscribed from January through June 2025.

176.    Her continued purchases were driven by Defendant's relentless email marketing, which repeated the same false promises:

- Defendant's Gummies were comprehensive.

- Defendant's Gummies contained complete essential nutrients.

- Defendant's Gummies compared to and could replace fruits and vegetables.

- Defendant's Gummies filled nutritional gaps in your diet.

- Defendant's Gummies contained everything you need.

- Defendant's Gummies contained all the nutrients.

- Defendant's Gummies replaced all other supplements.

177.    Plaintiff further relied upon Defendant's Amazon page, which reinforced these misrepresentations by proclaiming:

> At Gruns, we believe that foundational nutrition should be simple and convenient for everyone. We're dedicated to bringing comprehensive and complete nutrition to you through our gummies, formulated from 60 nutrient-dense and whole-food ingredients.

178.    Plaintiff ultimately discontinued purchasing once it became clear that the products were both costly and ineffective. She observed no improvement in her daughter's motility issues.

179.    Plaintiff paid a significant price premium in reliance on Defendant's representations and would have continued to do so had those representations been accurate.

180.    Instead, she was left with the unmistakable conclusion that the Gummies were not what Defendant promised: they were neither comprehensive nor complete, and they could not serve as a genuine substitute for the nutrition Defendant claimed they provided.

181.    Plaintiff's experience is not unique.

182.    Defendant has prominently marketed the Gummies as "comprehensive" and "complete" across its online advertisements, website, emails, product pages on third-party platforms, and packaging. Consumers, including Plaintiff, reasonably relied on those statements.

183.    Defendant deliberately targets parents like Plaintiff, whose children resist eating fruits and vegetables and who are therefore especially concerned with gaps in their children's nutrition. Defendant exploits that concern by representing that the Gummies can replace fruits and vegetables entirely and provide a simple, comprehensive solution to the nutritional deficiencies of children's diets.

184.    Moreover, Defendant deliberately targets consumers using GLP-1 medications, a population especially concerned with nutrient absorption and digestive health. Defendant exploits that concern by representing that the Gummies replace nutrients lost while on GLP-1 medication and provide a solution to the wide variety of issues associated with its use.

185.    These representations are false. The Gummies do not supply comprehensive nutrition. Plaintiff's reliance on Defendant's claims caused her to pay a significant price premium for products that could not deliver what was promised.

**D.    Plaintiff Jenifer Mestaz-Heiser's Experience with Grüns**

186.    Plaintiff Jenifer Mestaz-Heiser purchased Grüns Adults on March 17, 2025, and purchased the product again in April and May 2025.

187.    Plaintiff purchased the Gummies after being served Defendant's advertisements on Instagram. Those advertisements directed her to Defendant's website, where she viewed and relied upon additional statements regarding the Gummies.

188.    Defendant represented that the Gummies were "complete." Defendant claimed they provided comprehensive nutrition, filled dietary gaps, and operated as an all-in-one replacement for other supplements.

189.    Plaintiff reasonably understood "complete" to mean that Grüns Adults supplied all essential nutrients. She relied on those assurances, purchased the product, and believed it would deliver total nutrition and the advertised benefits.

190.    Plaintiff viewed and relied upon Defendant's advertisements, which made sweeping misrepresentations, including that the Gummies:

- Were complete or offered complete nutrition.

- Were comprehensive.

- Filled nutritional gaps in your diet.

- Contained everything you need.

- Contained all the nutrients.

- Were an all-in-one solution.

- Replaced all other supplements.

- Provided 100% of kids' daily nutrition.

- Solved gut and digestive issues, while improving energy, focus, cognitive function, and enhancing hair, skin, and nails.

- Provided adequate fiber.

191.    Plaintiff, a health-conscious consumer, reviewed Defendant's website in detail. She relied on its sweeping claims, including:

- "Just comprehensive and complete nutrition"



**Us vs. Them**

Not overhyped or overpriced. Just comprehensive and complete nutrition made enjoyable and for everyone.

| | grüns | generic multivitamin | overpriced green powder |
|---|---|---|---|
| Taste | ★★★★★ | ☆☆ | ☆ |
| Vitamins & Minerals | 20+ | <12 | 20+ |
| Cost Per Serving<br>With Email/SMS Popup Offer | $1.36 | 🙂 | $3.60 |
| Portable | Ü | ✕ | ✕ |
| No Clean Up | Ü | ✓ | ✕ |
| Veggies, Fruits, Gut Health, Antioxidants, Mushrooms, Adaptogens | Ü | ✕ | ✓ |

- "You have nutrition gaps. Grüns fills them….Try comprehensive gummies."

- 73 -



- "Get Your Grüns Daily…Comprehensive"



- "Our gummies are brimming with 60 premium ingredients, each meticulously selected to replenish nutrients for daily performance and nourish your body's complex systems for complete well-being[.]"



192.    Plaintiff relied on Defendant's marketing that depicted the Gummies surrounded by fruits and vegetables, paired with promises that "Grüns gummies can solve" "gut issues like bloat, indigestion, and abdominal pains" and deficiencies in "critical nutrition for our body, mind, and immunity."



193.    Plaintiff also relied on Defendant's packaging, which promised "comprehensive nutrition."

194. Based on these representations, Plaintiff believed the Gummies supplied truly comprehensive nutrition, including all essential nutrients.

195. Plaintiff did not receive the promised benefits. As a result, Plaintiff did not purchase the Gummies again.

196. Plaintiff's experience is not unique.

197. Defendant has prominently marketed the Gummies as "comprehensive" and "complete" across online advertisements, its website, and its packaging. Consumers, including Plaintiff, reasonably relied on those statements.

198. These representations are false. The Gummies do not supply comprehensive nutrition. Plaintiff's reliance on Defendant's claims caused her to pay a significant price premium for a product that could not deliver what was promised.

## CLASS ACTION ALLEGATIONS

199. Plaintiff Cavallaro-Kearins and Plaintiff Mestaz-Heiser bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

200. Plaintiff Cavallaro-Kearins also brings this action on behalf of herself and on behalf of the following proposed New York Subclass, initially defined as follows:

> All individuals in New York who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

201. Plaintiff Mestaz-Heiser also brings this action on behalf of herself and on behalf of the following proposed California Subclass, initially defined as follows:

> All individuals in California who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

202. Excluded from the proposed Classes are Defendant and its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest.

203. Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

204. The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

205. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

206. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

207.    Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

208.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

209.    **Ascertainability.** The Class is ascertainable because its members can be readily identified using business records, and other information kept by Defendant in the usual course of business and within its control. Plaintiffs anticipate providing appropriate notice to the Class to be approved by the Court after class certification, or pursuant to court order.

210.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Defendant's marketing claims about Gummies are misleading to a reasonable consumer;

(b) Whether Defendant engaged in the conduct alleged in this Complaint;

(c) Whether Defendant violated the applicable statutes alleged herein;

(d) Whether Plaintiffs and the class members are injured and harmed directly by Defendant's conduct;

(e) Whether Plaintiffs and the class members are entitled to damages due to Defendant's conduct as alleged in this Complaint, and if so, in what amounts;

(f) Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

(g) Whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(h) Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(i) Whether Plaintiffs and the Classes are entitled to civil penalties; and

(j) Whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

211. **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)). The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic

to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

212.  **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

213.  **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation, the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

214. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 349
### (On Behalf of Plaintiff Cavallaro-Kearins and the New York Subclass)

215. Plaintiff incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

216.    NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

217.    NY GBL § 349 applies to Plaintiff Cavallaro-Kearins and the New York Subclass because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

218.    Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

219.    The practices employed by Defendant, by which it advertises and promotes the Gummies, are materially misleading and deceptive within the meaning of NY GBL § 349. Defendant markets the Gummies as a source of "comprehensive" and "complete" nutrition, claiming that they provide "everything you need" and can effectively replace multivitamins, dietary supplements, and entire food groups such as fruits and vegetables.

220.    Defendant's Grüns Adults advertising campaign targets individuals taking GLP-1 medications and fosters the false impression that Grüns Adults are sufficient to meet their nutritional needs, despite containing minimal quantities of essential nutrients, often far below the daily recommended levels of intake.

221.    Defendant's Grüns Kids advertising campaign targets parents and caregivers and fosters the false impression that Grüns Kids are sufficient to meet a child's daily nutritional needs, despite containing minimal quantities of essential nutrients, often far below the daily recommended levels of intake.

222.    Defendant's acts and practices deceived Plaintiff Cavallaro-Kearins and the New York Subclass. Plaintiff and the Subclass reasonably relied on these representations and believed they were purchasing a "comprehensive" and "complete" nutritional substitute for a balanced diet. In truth, Grüns cannot provide the advertised benefits.

223.    Plaintiff Cavallaro-Kearins and the New York Subclass did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as delivering "comprehensive" and "complete" health and nutrition. The Gummies were not capable of delivering on the promises Defendant made in its widespread marketing materials.

224.    Defendant disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Cavallaro-Kearins and the New York Subclass.

225.   Plaintiff Cavallaro-Kearins and the New York Subclass have been injured by Defendant's deceptive acts or practice, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

226.   Plaintiff Cavallaro-Kearins and the New York Subclass have no adequate remedy at law.

227.   Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Cavallaro-Kearins and the New York Subclass and will continue to mislead consumers unless enjoined by this Court.

### SECOND CAUSE OF ACTION

**Violations of New York Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Cavallaro-Kearins and the New York Subclass)**

228.   Plaintiff Cavallaro-Kearins incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

229.   By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Plaintiff Cavallaro-Kearins and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

230.   Defendant caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

231.    Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Defendant's material misrepresentations.

232.    Plaintiff Cavallaro-Kearins and the New York Subclass have been injured by Defendant's deceptive acts or practices.

233.    Plaintiff Cavallaro-Kearins and the New York Subclass have no adequate remedy at law.

234.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Cavallaro-Kearins and the New York Subclass and will continue to damage both Plaintiff Cavallaro-Kearins and the New York Subclass and deceive the public unless enjoined by this Court.

235.    Pursuant to NY GBL § 350-e, Plaintiff Cavallaro-Kearins and the New York Subclass seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

236.    Defendant's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Defendant's false advertising in deciding to purchase the Gummies. By marketing the Gummies as providing "comprehensive" and "complete" nutrition and as a substitute for multivitamins and healthy eating, despite lacking adequate quantities of essential

nutrients, Defendant misled reasonable consumers into paying a premium for a product that cannot deliver the advertised benefits. The widespread deception not only caused financial harm to consumers but also promoted misleading narratives about children's and adults' nutritional needs, thereby exploiting parental concerns and discouraging reliance on more effective, evidence-based sources of nutrition.

237.    Defendant's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

### THIRD CAUSE OF ACTION

**Violations of Consumers Legal Remedies Act (the "CLRA")**
**California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiff Mestaz-Heiser and the California Subclass)**

238.    Plaintiff Mestaz-Heiser incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

239.    Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

240.    Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

241.    The Gummies that Plaintiff (and other similarly situated California Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

242.    By engaging in the actions, representations, and conduct set forth in the Complaint, Defendant has violated, and continues to violate, §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

243.   In violation of § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

244.   In violation of § 1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

245.   In violation of § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

246.   Defendant's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Gummies are dietary supplements that provide "comprehensive" and "complete" nutrition capable of meeting complex, real-world health needs, including as stand-ins for the diverse nutrients and benefits found in produce, such as for children who avoid fruits and vegetables or individuals whose diets are limited by GLP-1 medications.

247.   In reality, the Gummies omit entire classes of essential nutrients and provide inadequate amounts of others. Moreover, the Gummies fail to replicate the broader nutritional and functional value of certain whole foods. The Gummies do not and cannot deliver the advertised benefits.

248.   Plaintiff Mestaz-Heiser reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the adequacy of the Gummies an important factor in deciding whether to purchase the products. The representations

and omissions were a substantial factor in Plaintiff's decision to purchase the products.

249.    Defendant's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Mestaz-Heiser and the California Subclass. Absent Defendant's misrepresentations and omissions, Plaintiff would not have purchased the Gummies or would have paid substantially less for them.

250.    Plaintiff Mestaz-Heiser seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

251.    Plaintiff Mestaz-Heiser, on behalf of herself and the class members, also demands judgment against Defendant for actual damages, punitive damages, injunctive relief, and attorney's fees and costs.

252.    In addition, Plaintiff Mestaz-Heiser also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Gummies. Injunctive relief is appropriate because Defendant continues to deceptively market the Gummies as dietary supplements that provide "comprehensive" and "complete" nutrition capable of meeting complex, real-world health needs. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence

of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

253.    **Permanent public injunctive relief.** Plaintiff Mestaz-Heiser also seeks public injunctive relief to protect the general public from Defendant's conduct.

254.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff Mestaz-Heiser seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## FOURTH CAUSE OF ACTION

### Violations of California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (On Behalf of Plaintiff Mestaz-Heiser and the California Subclass)

255.    Plaintiff Mestaz-Heiser incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

256.    California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

257.    Defendant's false and misleading advertising claims regarding the Gummies violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

258. First, Defendant's representations and omissions regarding the Gummies are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

259. Second, Defendant's conduct violates the "unfair" prong of the UCL because Defendant's representations and omissions regarding the Gummies are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Defendant's conduct.

260. Third, Defendant's conduct violates the "fraudulent" prong of the UCL because Defendant's representations and omissions are likely to deceive members of the public.

261. Plaintiff Mestaz-Heiser reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the adequacy of the Gummies an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

262. As a direct and proximate result of Defendant's violations of the UCL, Plaintiff Mestaz-Heiser and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Gummies and/or were denied the benefit of the bargain.

263.    Absent Defendant's misrepresentations and omissions, Plaintiff Mestaz-Heiser would not have purchased the Gummies or would have paid substantially less for them.

264.    Plaintiff Mestaz-Heiser seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

265.    Plaintiff Mestaz-Heiser also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Gummies. Injunctive relief is appropriate because Defendant continues to deceptively market the Gummies as dietary supplements that provide "comprehensive" and "complete" nutrition capable of meeting complex, real-world health needs. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

266.    **Permanent public injunctive relief.** Plaintiff Mestaz-Heiser also seeks public injunctive relief to protect the general public from Defendant's conduct.

267.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff Mestaz-Heiser seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

## FIFTH CAUSE OF ACTION

### Violations of California False Advertising Law ("FAL")
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*
### (On Behalf of Plaintiff Mestaz-Heiser and the California Subclass)

268.    Plaintiff Mestaz-Heiser incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

269.    The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

270.    The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

271.    Defendant violated section 17500 when it advertised and marketed the Gummies through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Gummies are dietary supplements that provide "comprehensive" and "complete" nutrition capable of meeting complex, real-world health needs, including as stand-ins for the diverse nutrients and benefits found in certain food groups, such as for children who avoid fruits and vegetables or individuals whose diets are limited by GLP-1 medications. In reality, the Gummies omit entire classes of essential nutrients and provide inadequate amounts of others. Moreover, the Gummies fail to replicate the broader nutritional and functional value

of specific whole foods. The Gummies do not and cannot deliver the advertised benefits.

272. Plaintiff Mestaz-Heiser reasonably relied on Defendant's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the adequacy of the Gummies an important factor in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

273. As a direct and proximate result of Defendant's violations of the FAL, Plaintiff Mestaz-Heiser and the California Subclass have suffered injury in fact and have lost money. Plaintiff and the California Subclass paid an unwarranted premium for the Gummies and/or were denied the benefit of the bargain.

274. Absent Defendant's misrepresentations and omissions, Plaintiff Mestaz-Heiser would not have purchased the Gummies or would have paid substantially less for them.

275. Plaintiff Mestaz-Heiser seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

276.    Plaintiff Mestaz-Heiser also seeks injunctive relief in the form of an order enjoining Defendant from continuing to deceptively market the Gummies. Injunctive relief is appropriate because Defendant continues to deceptively market the Gummies as dietary supplements that provide "comprehensive" and "complete" nutrition capable of meeting complex, real-world health needs. Plaintiff would like to purchase products from Defendant in the future if she could have confidence regarding the truth of Defendant's marketing claims, but in the absence of injunctive relief she will be left to guess whether the claims are accurate. Injunctive relief is therefore necessary to prevent Defendant from continuing to engage in the unlawful conduct and to prevent future harm to Plaintiff and the California Subclass, which cannot be achieved through available legal remedies.

277.    **Permanent public injunctive relief.** Plaintiff Mestaz-Heiser also seeks public injunctive relief to protect the general public from Defendant's conduct.

278.    Defendant's false advertising is ongoing and will continue to harm the public absent a permanent public injunction. Accordingly, Plaintiff Mestaz-Heiser seeks a permanent injunction to enjoin Defendant from engaging in the misconduct alleged herein.

### SIXTH CAUSE OF ACTION

#### Unjust Enrichment
#### (On Behalf of Plaintiffs and All Classes)

279.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

280.    Plaintiffs and members of the Class conferred a tangible economic benefit on Defendant in the form of monetary payments for the Gummies, which were purchased based on Defendant's misrepresentations and omissions regarding the Gummies' nutritional value and health benefits.

281.    Defendant knowingly accepted and retained these financial benefits under circumstances that make such retention unjust. Defendant marketed and sold the Gummies as providing "comprehensive" and "complete" nutrition, "all-in-one health," and "everything you need," claims that were false, misleading, and not substantiated by the actual composition or efficacy of the Gummies.

282.    Plaintiffs and members of the Class did not receive the full value of what they paid for. Had they known the truth, Plaintiffs and members of the proposed classes would not have purchased the Gummies or would have paid significantly less.

283.    It would be inequitable for Defendant to retain the profits from the sale of these deceptively marketed Gummies, as the enrichment was obtained through false and misleading advertising, omissions of material fact, and a campaign designed to create the false impression that the Gummies offered a nutritionally sufficient solution.

284.    Defendant's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

## SEVENTH CAUSE OF ACTION
### Fraud
### (On Behalf of Plaintiffs and All Classes)

285.  Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

286.  Defendant markets the Gummies as a source of "comprehensive" and "complete" nutrition, claiming that they provide "everything you need" and can effectively replace multivitamins, dietary supplements, and entire food groups such as fruits and vegetables.

287.  These representations are false because the Gummies omit essential macronutrients such as protein and fat; fail to provide critical micronutrients such as calcium and inadequate iron; contain inadequate and imbalanced levels of fiber, failing to reflect the mix of soluble and insoluble fibers in produce that are required for digestive health; and cannot replace the complex nutritional package delivered by fruits and vegetables or the diverse benefits provided by all other supplements.

288.  Defendant's Grüns Adults advertising campaign targets individuals taking GLP-1 medications and fosters the false impression that Grüns Adults are sufficient to meet their nutritional needs, despite containing minimal quantities of essential nutrients, often far below the daily recommended levels of intake.

289.  Defendant's Grüns Kids advertising campaign targets parents and caregivers and fosters the false impression that Grüns Kids are sufficient to meet a child's daily nutritional needs, despite containing minimal quantities of essential nutrients, often far below the daily recommended levels of intake.

290.    Defendant's knowingly and intentionally deceived Plaintiffs and the class members. Plaintiffs and the class members reasonably relied on these representations and believed they were purchasing a "comprehensive" and "complete" nutritional substitute for a balanced diet or replacement for all other supplements. In truth, Defendant cannot provide the advertised benefits.

291.    Plaintiffs and the class members did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as delivering "comprehensive" and "complete" health and nutrition. The Gummies were not capable of delivering on the promises Defendant made in its widespread marketing materials.

292.    Plaintiffs' and the class members' reliance on Defendant's false and misleading statements was a substantial factor in causing harm to Plaintiffs.

293.    Defendant's conduct has caused and continues to cause immediate and irreparable injury to Plaintiffs and the class members and will continue to mislead consumers unless enjoined by this Court

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    awarding Plaintiffs and the Classes exemplary and punitive damages;

E.    awarding Plaintiffs and the Classes civil penalties;

F.    granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.    enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.    awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.    awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.    awarding pre-judgment and post-judgment interest; and

K.    granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: September 12, 2025

Respectfully submitted,

*/s/ Raphael Janove*
Raphael Janove

- 98 -

**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
Tel: (646) 347-3940
Email: raphael@janove.law

**ZIMMERMAN REED LLP**
Ryan J. Ellersick
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Email: caleb.marker@zimmreed.com
Email: ryan.ellersick@zimmreed.com