

| | | |
|---|---|---|
| Raphael Janove<br>Shareholder | www.janove.law<br>T 646-347-3940 | 1617 John F. Kennedy Blvd., 20th Fl.<br>Philadelphia, PA 19103 |
| raphael@janove.law | 500 7th Ave., 8th Fl.<br>New York, NY 10018 | 979 Osos St., Ste. A5<br>San Luis Obispo, CA 93401 |

April 24, 2026

**VIA ECF**
The Honorable Lewis J. Liman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re:** *Cavallaro-Kearins v. Gruns Nutrition, Inc.*, No. 25-cv-04998-LJL

Dear Judge Liman:

Plaintiffs in the above-captioned matter move to compel Defendant to search for and review documents with the search term "(essential* w/4 (vitamin* OR mineral*))" (the "Search Term"). Plaintiffs certify that they have met and conferred with Defendant on this issue, including on April 23, 2026.

The Search Term seeks highly relevant documents that go to a key misrepresentation in the case—Defendant's use of the term "essential" to mislead Plaintiffs and the class members about which vitamins and minerals are contained in the Gummies, causing them to pay an artificial price premium.

As alleged, Defendant repeatedly (and falsely) represents that its comprehensive Gummies provide a consumer with their "essential" vitamins and minerals. *See, e.g.*, ECF No. 22, FAC ¶ 35 ("Packed with essential vitamins and minerals . . . Grüns Comprehensive Nutrition Gummies"); *id.* ¶ 37 ("Our gummies are specially [sic] designed to fill in the gaps, ensuring you're getting essential vitamins, minerals, and fiber every day" on an ad advertising "Comprehensive Gummies for Ozempic Users"); *id.* ¶ 54 ("Grüns Cubs provide essential vitamins and minerals in a delicious gummy form . . . without the fight over veggies"). Despite Defendant's representations, the Gummies do not contain many essential nutrients, including essential minerals like calcium and magnesium, and do not "meet the expectations of a basic multivitamin." *Id.* ¶¶ 99, 119.

The Search Term is narrowly tailored to identify documents relevant to these allegations. The Parties have largely agreed on a set of search terms that yields 46,606 unique documents.[1] Plaintiffs seek to add this one Search Term, which would increase the review set by 8,088 documents, to 54,694 documents. Given ██████████████ at stake in this litigation, and ████████████ in revenue Defendant has generated from sales to the class members, requiring Defendant to review just over 8,000 additional documents on this key topic is proportional and does not constitute an undue burden. *See Eletson Holdings Inc. v.*

---

[1] Notably, Defendant has refused to run the search term "comprehensive w/2 nutrition"—a term that is ubiquitous in Defendant's false advertising and central to Plaintiffs' claims in this case. Plaintiffs are skeptical that it is appropriate for Defendant to exclude this term, but proposed the Search Term as a compromise, in an attempt to address Defendant's concerns and minimize the burden on Defendant. Plaintiffs reserve all rights to request additional searches if discovery produced in this case shows additional searches are appropriate.

*Levona Holdings Ltd.*, 2025 WL 1898237, at *1 (S.D.N.Y. July 9, 2025) (Liman, J.) (parties "may seek nonprivileged information 'relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") (quoting Fed. R. Civ. P. 26(b)(1)).

If anything, 54,000 documents is too few considering the volume of misstatements and size of the case. In the words of Defendant's Chief Marketing Officer, Defendant's ads are published at an "insane" "velocity of output," FAC ¶ 22, and have been viewed by consumers more than 3.5 *billion* times since 2023. *See* Def's Resp. Rog No. 3, reproduced here at App'x A. Defendant has sold ▮▮▮▮▮▮▮▮▮▮ worth of Gummies. GRUNS020076. Plaintiffs' claims seek ▮▮▮▮ ▮▮▮▮▮ in damages on behalf of the class. From ▮▮▮▮▮▮▮▮▮▮▮▮▮ alone, Defendant made ▮▮▮▮▮▮▮▮ in total income and more than ▮▮▮▮▮▮ in gross profit based on these misstatements. GRUNS013230. In ▮▮▮, Defendant projected that it would make more than ▮▮▮▮▮▮▮▮▮ in gross profit in ▮▮. *Id.* A review of 54,000 documents containing key terms is very small for a case of this nature and size, and reflects the amount of time and effort that Plaintiffs have expended working with Defendant to craft narrowly tailored search terms.

Defendant argues that the Search Term is overbroad because it is "not tied to any of the claims that the judge allowed discovery on at the 4/19 hearing," and contends that the only relevant term is "Health Essentials." *See* Ex. 1, April 9, 2026 Email. Not so. The Court did not limit discovery on the concept of essential nutrition to just a single phrase. To the contrary, your Honor held only that the RFPs at issue (Nos. 6, 18, 26/27, 40) in Plaintiffs' first motion to compel shall "be limited to the marketing phrases used in connection with the gummies *such as* comprehensive, complete, holistic, all in one, or any similar descriptor to include the descriptors and the phrases referenced in footnote 3 of the letter of March 11, 2026." (Hr'g Tr. at 21:6–10) (emphasis added). That ruling defines the relevant universe to include "any similar descriptor," and the phrases identified in footnote 3 confirm that scope, including claims that the Gummies are the "very best way to get all the vitamins, minerals, fruits, and veggies growing kids [] need," *id.* ¶ 56; that consumers can "get ALL [their] nutrients on Ozempic," *id.* ¶ 38; and that consumers can obtain "all of [their] daily nutrients while you are eating less," *id.* ¶ 37. *See* ECF No. 42 at 1–2 & n.3 (listing examples of false advertising).

These exemplary advertising claims reflect the same core message conveyed by terms like "comprehensive," "complete," and "all-in-one"—that the Gummies provide the full set of essential nutrients a consumer needs. The Search Term captures these functionally identical representations and therefore falls squarely within the Court's directive to include "similar descriptor[s]." Defendant's attempt to reduce discovery to "Health Essentials" improperly rewrites this Court's ruling. Moreover, discovery extends to the basis for those representations—i.e., whether the Gummies' ingredients and formulation support Defendant's claims, as Plaintiffs' counsel explained at the hearing. *See* Hr'g Tr. at 11:6–16, making the Search Term directly relevant not only to the marketing claims at issue but also to Defendant's substantiation for those claims.



Defendant also argues that the Search Term is duplicative, but that is obviously not the case, or it would not pull in 8,088 unique documents. Only four of the agreed-upon terms include the word "essential," and none capture the phrases "essential vitamins," "essential minerals," or "essential vitamins and minerals" in the manner proposed here.[2] The result is that a substantial set of relevant documents—particularly those reflecting how Defendant uses and consumers understand "essential" in context—will not be captured without the Search Term.

To illustrate, Defendant has produced a set of non-custodial and custodial documents that confirm that documents exist using phrases that would otherwise only be captured by the Search Term—include key false advertising claims by Defendant and customer communications. As part of a non-custodial collection, Defendant has produced advertisements that contain phrases such as: "Calcium + Vitamin D = Strong bones for growth . . . Essential minerals to help reach their full potential," GRUNS000540, and "Packed with essential vitamins & minerals." GRUNS000780.

And as part of its custodial collection, Defendant's production has included documents showing that customers, in response to Defendant's false advertising, have also communicated about these phrases, including, for example, statements such as "I've tried just about everything to make sure my kids get the nutrients they need—and nothing ever stuck . . . I have peace of mind knowing they're getting essential vitamins and minerals." GRUNS003032.[3] Plaintiffs received these documents simply because they contained language that hit on other search terms. But this only underscores the need for Defendant to review some 8,000 unique documents from the additional "essential" search term—there are potentially thousands of relevant documents to the key concept that will not be reviewed and produced otherwise.

Defendant also argues that reviewing 8,000 documents would constitute an undue burden. But Defendant has articulated no burden other than the time it takes to review and produce the documents, which they have already collected. And that burden is not undue when the Search Terms is narrowly tailored and likely to identify responsive documents that are highly relevant to a key false claim in this case. *See Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1, 5 (E.D.N.Y. 2022) ("'Whether production of documents is unduly burdensome or expensive turns primarily on whether they are kept in an accessible or inaccessible format (a distinction that corresponds closely to the expense of production).") (cleaned up) (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318 (S.D.N.Y. 2003)); *see also In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2023 WL 6118208, at *1 (S.D.N.Y. July 28, 2023) (Liman, J.) ("Defendants previously represented that they had 'possession of certain relevant documents' . . . . The Court orders that Defendants produce such documents if they have not already been produced.").

For these reasons, Plaintiffs respectfully request that the Court order Defendant to run the Search Term and produce the additional responsive documents it identifies.

---

[2] These four terms are: (1) essential* w/7 nutri*, (2) (feedback OR survey*) w/5 (comprehensive* OR complete* OR "100%" OR holistic OR essential* OR "all-in-one"), (3) essential* w/7 supplement*, and (4) "Health Essentials".

[3] *See also id.* ("The blend of essential vitamins and minerals is well-rounded, ensuring that I'm not missing out on any key nutrients."), *id.* ("I know I'm always getting my essential vitamins and minerals for good health.").



Sincerely,

*/s/ Raphael Janove*

Raphael Janove

CC: All counsel of record (via ECF)

The motion to compel is denied without prejudice.  On the current record, Plaintiffs have not shown that the search terms already agreed upon by the parties do not constitute a reasonable search for all responsive and relevant documents.
Date: April 29, 2026

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

**JANOVE** PLLC

**APPENDIX A: DEFENDANT'S THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**

Subject to and without waiving the foregoing general and specific objections, Defendant supplements its response as follows with impressions (the number of times ads appeared) across the Gummies' ads from 2023-2025:

| Gruns + Kids | 2023 | 2024 | 2025 |
|---|---|---|---|
| Facebook | 45,191,700 | 320,700,577 | 1,629,027,175 |
| TikTok | 1,132,652 | 47,110,381 | 46,334,499 |
| YouTube | 4,884,146 | 557,501,858 | 551,593,674 |
| Google Ads | 1,965,332 | 44,306,629 | 96,666,030 |
| Axon by AppLovin | 0 | 27,511,022 | 49,077,725 |
| Snapchat | 0 | 874,451 | 136,476,299 |
| Microsoft Ads | 0 | 0 | 11,483,194 |
| CTV | 0 | 0 | 75,388,128 |