UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
PATRICIA CAVALLARO-KEARINS and JENIFER            :
MESTAZ-HEISER, on behalf of themselves and all        :
others similarly situated,                                         :
                                                                   :
                            Plaintiffs,                            :
                                                                   :
              -v-                                                  :
                                                                   :
GRÜNS NUTRITION INC.,                                    :
                                                                   :
                            Defendant.                        :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/19/2026

25-cv-4998 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Grüns Nutrition, Inc. ("Grüns") moves, pursuant to Federal Rules of Civil

Procedure 9(b) and 12(b)(6), to dismiss the first amended complaint filed against it by Plaintiffs

Patricia Cavallaro-Kearins ("Cavallaro-Kearins") and Jenifer Mestaz-Heiser ("Mestaz-Heiser").

Dkt. No. 30.  For the reasons that follow, the motion is granted.

## BACKGROUND

The well-pleaded allegations in the first amended complaint are accepted as true for

purposes of the motion to dismiss.

Grüns is a Delaware corporation headquartered in Oregon.  Dkt. No. 22 (the First

Amended Complaint, or "FAC") ¶ 10.  Grüns manufactures, markets, and sells Superfood

Greens Gummies for Adults ("Grüns Adults") and a similar product for children called Grüns

Cubs for Kids ("Grüns Kids," and with Grüns Adults, the "Gummies").  *Id.* ¶ 1.  Grüns markets

the Gummies as a "comprehensive" and "complete" solution for daily nutrition, claiming they

provide "100% of kids' daily nutrition," "all-in-one" support for GLP-1 users, and act as a

replacement for essential nutrients.  *Id.* ¶ 4.

Plaintiff Cavallaro-Kearins is a New York resident who purchased sugar-free versions of the Gummies from Grün's website, Grüns.co, in December 2024. *Id.* ¶ 8. Plaintiff Mestaz-Heiser is a California resident who purchased Grüns Adults from the company's website in March 2025. *Id.* ¶ 9. Both relied on Grüns' representations of the Gummies' nutritional benefits and would not have purchased them if they knew those representations were false. *Id.* ¶¶ 8–9.

Plaintiffs' allegations concern the development and marketing of the Gummies. Grüns sells the Gummies through its own website and through third-party retailers. *Id.* ¶ 16. It markets the Gummies as providing "comprehensive" and "complete" nutrition sufficient to meet a person's daily health needs. *Id.* ¶ 17. The front of the Grüns Adults packaging states that the Gummies are a "dietary supplement" that provide "comprehensive nutrition." *Id.* ¶ 1. The Grüns Kids packaging similarly states that the product provides "comprehensive nutrition for kids," and that it is an "all-in-one" "dietary supplement." *Id.*



Additional marketing emphasizes those themes. *Id.* ¶¶ 20–23. Grüns charges a price premium for the Gummies: the Adult Gummies (Low Sugar) have retailed for $79.99 or higher, and the Adult Gummies (Sugar-Free) have been priced at $87.99. *Id.* ¶ 24. Grüns Kids are

2

priced at $50.24 for a four-week pouch. *Id.* ¶ 25. This premium is not driven by higher manufacturing costs than competitors or by proven health benefits. *Id.* ¶ 26.

The FAC details a number of marketing statements made in relation to Grüns Adults, which include that they are, or provide: "Basically everything you need in a fun comprehensive gummy"; a way to "jumpstart your journey to comprehensive health with Grüns"; "One packet, all the nutrients"; "fully comprehensive" nutrition; an "all in one supplement"; an "all-in-one health hack"; and "your all-in-one supplement solution." *Id.* ¶¶ 30–34. Similar language about the "comprehensive" nature of the supplement is found throughout Grüns' advertisements. *Id.* ¶ 35. Grüns has also specifically extended that advertising to individuals taking GLP-1 receptor agonist medications. *Id.* ¶¶ 36–39. Plaintiffs allege that a key focus of the GLP-1 targeted ads is the fiber content of Grüns, which the company has promoted as a substitute for fruits and vegetables. *Id.* ¶ 40. For example, Grüns has advertised Grüns Adults as containing "more fiber than 2 cups of broccoli per pack," the same amount as "9 cups of raw spinach," and as containing more than 6 grams of fiber, stating that "you'd need a whole salad bar to match the fiber in just one pack of Grüns." *Id.* ¶¶ 41–44. Grüns has tied the fiber content to stopping symptoms like bloating and indigestion. *Id.* ¶ 45.

The FAC also details Grüns' advertising as to Grüns Kids. Promotional materials describe the product as providing "complete nutrition for kids," and "the easy way to cover kids' nutrients." *Id.* ¶ 47. The kid-focused advertisements emphasize that Grüns Kids contain "all the nutrition," "100% of kids' daily nutrition," and "all-in-one nutrition." *Id.* ¶¶ 48–50; *see also id.* ¶ 51 (advertisement stating that "Your Kid Hate Greens? This Tastes Like Candy."). The advertisements expressly equate the Gummies with produce, stating, for example, that "[t]his has a full serving of veggies," and that "this is how I finally got my kids to eat more than 10 veggies

a day without any battles," and that  the Gummies are the "very best way to get all the vitamins, minerals, fruits and veggies growing kids like me need."  *Id.* ¶¶ 52–56.  The advertisements specifically target parents of children with sensory processing difficulties.  *Id.* ¶ 57.

Grüns' advertisements also focus on health outcomes.  Grüns advertises that the Gummies help consumers to support their gut and digestive health; improve energy, focus, and cognitive function; support the immune system and prevent cold and flu symptoms; improve hair, skin, and nail health; and improve men's health and testosterone.  *Id.* ¶¶ 62–66.  The advertisements also promote the Gummies as a "protein multiplier," and "your protein's new best friend."  *Id.* ¶¶ 67–68.

The marketing messages described by Plaintiffs were also distributed through direct email communications sent from Grüns' customer service address, care@Grüns.co.  *Id.* ¶ 70; *see id.* ¶¶ 71–73 (detailing advertising statements made through email communications).  Similar messages are present on Grüns' website.  *Id.* ¶¶ 75–76.  Certain statements on its website specifically point to consumers' widespread nutritional deficiencies, stating, for example, that "[y]ou have nutrition gaps.  Grüns fills them."  *Id.* ¶¶ 77–78.  The FAQ section of the website notes that "Grüns replaces handfuls of health products at a fraction of the cost."  *Id.* ¶ 79.  And Grüns makes claims tied to specific ingredients, including fiber.  *Id.* ¶¶ 80–81.  Grüns also sells the Gummies on third-party platforms, including Amazon and Target.  *Id.* ¶ 83.  On Amazon, more than 50,000 customers purchase the Gummies each month.  *Id.* ¶ 84.  The messaging on those third-party platforms is that the Gummies are "comprehensive."  *Id.* ¶¶ 85–86.  Plaintiffs allege that Grüns' packaging itself reinforces these claims.  The label for both the Grüns Adult and Grüns Kids products declares that they provide "comprehensive nutrition."  *Id.* ¶¶ 87–88.

Plaintiffs allege that this marketing is deceptive.  Although the Gummies claim to provide "comprehensive nutrition" and "100% of your essential nutrients," the human body requires several essential nutrients that are entirely absent from the Gummies, including protein, fats, and omega-3 fatty acids.  *Id.* ¶¶ 93–97.  The Gummies contain only minimal amounts of other key minerals like iron and lack others such as calcium altogether.  *Id.* ¶ 97.  These nutrients and minerals are crucial in a healthy diet.  *Id.* ¶¶ 98–99.  Plaintiffs allege too that Grüns' advertising with respect to fiber is misleading because the daily recommended amount of fiber for an adult is 28 grams of soluble and insoluble fiber per day, whereas Grüns contain only six grams of "soluble fiber."  *Id.* ¶ 100.  Medical consensus also stresses the importance of eating fruits and vegetables, which Grüns' advertisements indicate may be substantially replaced by the Gummies.  *Id.* ¶¶ 102–03.  The fiber contained in such fruits and vegetables is fundamentally different from that contained in Grüns.  *Id.*  In fact, the fiber in the Gummies may aggravate rather than relieve the very conditions it claims to solve.  *Id.* ¶ 104.  Grüns' claims regarding testosterone are also allegedly misleading.  Studies confirm that zinc, vitamin B6, and vitamin D do not increase testosterone in men with adequate diets.  *Id.* ¶¶ 107–11.  Nor is there support for the claim that the Gummies, which contain no protein, multiply, enhance, or can be a substitute for protein impact.  *Id.* ¶¶ 112–16.  Plaintiffs allege that consumers often take a variety of supplements to meet targeted needs, and that the Gummies cannot replace most of them.  *Id.* ¶¶ 117–18.  The Gummies do not, Plaintiffs allege, even meet the expectations of a basic multivitamin, as they contain neither calcium nor magnesium.  *Id.* ¶ 119.

Plaintiffs also allege that Grüns' advertising is misleading to GLP-1 users because such users face well-documented nutritional risks that the Gummies do not address.  *Id.* ¶¶ 122–23.

The Gummies do not contain protein or fat or sufficient carbs, fiber, or iron to make up the nutritional needs of a GLP-1 user.  *Id.* ¶¶ 124–32.

Plaintiffs also allege that the advertising statements as to children are false.  Most children do not require supplements at all.  *Id.* ¶ 135.  Moreover, a supplement like Grüns Kids is not a substitute for fruits and vegetables, which contain more than isolated nutrients (and other nutrients absent from Grüns).  *Id.* ¶¶ 136–39.  Among the nutrients that Grüns Kids do include, those levels are inadequate, as they do not contain sufficient fiber, iron, or calcium.  *Id.* ¶¶ 140–45.  Grüns' advertising is especially misleading as to children with sensory processing challenges or feeding issues, for whom nutrition is not just about nutrient targets but about repeated, structured exposure to foods.  *Id.* ¶¶ 148–50.

Plaintiffs allege that marketing touting "complete" and "comprehensive" nutrition drives sales and allows Grüns to command a substantial price premium.  *Id.* ¶ 155.  Because the advertisements are false, consumers do not receive the benefit of that bargain.  *Id.* ¶¶ 158–59.

With respect to the named Plaintiffs in particular, the FAC alleges that Cavallaro-Kearins first purchased Grüns Adults and Grüns Kids on December 21, 2024, and subscribed to regular purchases of Grüns Kids beginning on January 18, 2025.  *Id.* ¶ 160.  She bought the products based on Grüns' advertising because the company represented the Gummies as a comprehensive solution to a range of health concerns.  *Id.* ¶¶ 161–62.  She believed they would provide all essential nutrients and the associated advertised benefits.  *Id.* ¶ 163.  As a GLP-1 user, she was especially drawn to Grüns' representations that the Gummies addressed her nutritional needs and the side effects of that medication.  *Id.* ¶ 164.  She purchased Grüns Kids for her daughter believing that the Gummies were a direct substitute for fruits and vegetables.  *Id.* ¶¶ 165–67.  The purchase for her daughter was also based on her daughter's requests for the Gummies, which

6

was the result of Grüns' advertising. *Id.* ¶ 168. In making her purchases, Cavallaro-Kearins also reviewed the Grüns website, which reinforced the same themes, including claims such as "what if your kids had 100% of their daily nutrients," and "just comprehensive and complete nutrition." *Id.* ¶ 171. Cavallaro-Kearins did not purchase Grüns Adults after January 2025 because it did not produce any of the benefits she believed were advertised. *Id.* ¶ 174. She continued to purchase Grüns Kids for her daughter through June 2025, driven by Grüns' email marketing repeating the same false promises elaborated above. *Id.* ¶¶ 175–76. Cavallaro-Kearins eventually stopped purchasing Grüns Kids when it became clear that the product was costly and ineffective. *Id.* ¶ 178. She would have continued to purchase the products if the representations had been accurate, but she was left with the conclusion that the Gummies were not what Defendant promised. *Id.* ¶¶ 179–80.

Mestaz-Heiser first purchased Grüns Adults on March 17, 2025, and purchased the product again in April and May of the same year. *Id.* ¶ 186. She purchased the Gummies after viewing an advertisement on Instagram, which directed her to the Grüns website. *Id.* ¶ 187. She relied on the sweeping claims about comprehensive nutrition contained on the website. *Id.* ¶¶ 190–94. She did not receive the benefits promised and did not purchase the Gummies again. *Id.* ¶ 195.

**PROCEDURAL HISTORY**

Plaintiffs initiated the case by complaint filed on June 13, 2025. Dkt. No. 1. Defendant filed a motion to dismiss the complaint on August 22, 2025. Dkt. No. 21. Plaintiffs then filed the FAC on September 12, 2025. Dkt. No. 22. The Court accordingly denied the first motion to dismiss as moot considering the filing of the FAC. Dkt. No. 25. On October 10, 2025, Defendant moved again to dismiss the FAC, including a memorandum of law, declarations from Chad Janis and Mariam Yusuf, and nineteen exhibits. Dkt. No. 30. Plaintiffs opposed the

motion to dismiss on October 31, 2025, Dkt. No. 35, to which Defendant replied on November 14, 2025, Dkt. No. 36.

On February 23, 2026, Defendant submitted a letter motion to stay discovery. Dkt. No. 38. Plaintiffs responded to the motion on February 25, Dkt. No. 39, to which Defendant replied on February 27, Dkt. No. 40. The Court denied the motion for a stay of discovery on March 3, 2026. Dkt. No. 41.

## LEGAL STANDARD

Plaintiffs bring claims on behalf of themselves and all others similarly situated under the New York consumer fraud statute, New York General Business Law ("GBL") §§ 349–50; the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and for common law prohibitions on unjust enrichment and fraud. Grüns moves to dismiss each of Plaintiffs' claims for failure to state a claim for relief.

On a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002). This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). The ultimate question is whether a "claim has facial plausibility,"

8

which is established where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Twombly*, 550 U.S. at 556; *see Mattrixx Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The heightened pleading standard for fraud claims under Rule 9 applies to Mestaz-Heiser's FAL, UCL, and CLRA claims, as well as to both Plaintiffs' fraud claims. *See Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 344–45 (S.D.N.Y. 2021) (citing *Great Pac. Sev. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). To satisfy Rule 9(b)'s heightened pleading standard, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "(1) detail the statements (or omissions) that the plaintiffs contend are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guaranty Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402–03 (2d Cir. 2015). Claims under the GBL, however, are not subject to Rule 9(b). *See Manchanda v. Navient Student Loans*, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) ("Claims under GBL §§ 349 & 350 are 'not subject to the pleading-with-particularity requirements of Rule 9(b),'" and "need only meet the bare-bones notice-pleading requirements of Rule 8(a)." (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005))).

**DISCUSSION**

**I.      Deceptive Marking**

      **A.      The GBL Claims**

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350. "In order to state a claim under either Section 349 or 350, a plaintiff must allege: (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are deceptive or misleading in a material way, and (3) that the plaintiff has been injured as a result." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 675 (S.D.N.Y. 2021) (citing *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014)); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (at the pleading stage, plaintiff must allege that "on account of a materially misleading practice, [Plaintiff] purchased a product and did not receive the full value of [their] purchase" (citation omitted)). As noted, Sections 349 and 350 of the GBL are "subject only to the 'bare-bones notice-pleading requirements of Rule 8(a)' and not 'the pleading-with-particularity requirements of Rule 9(b).'" *Fishon v. Peloton Interactive, Inc.*, 2020 WL 6564755, at *9 (S.D.N.Y. Nov. 9, 2020) (quoting *Pelman*, 396 F.3d at 511), *vacated on other grounds sub nom. Passman v. Peloton Interactive, Inc.*, 2025 WL 1284718 (S.D.N.Y. May 2, 2025)[1]; *see State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists*, 2025 WL 1166982, at *10 (E.D.N.Y. Mar. 26, 2025).

---

[1] Although the decision in *Fishon* was vacated, the vacatur was unrelated to the merits of that opinion. Courts have continued to cite *Fishon* for its analysis of the pleading standard as to claims under the GBL. *See Birenbaum v. Bridgestone Retail Operations*, 2025 WL 2308606, at *8 n.14 (E.D.N.Y. June 13, 2025) (noting that the opinion vacating *Fishon* "did not disturb" any

Under the GBL, a deceptive act or practice is one "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). "The test applies an objective standard." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021). In determining whether a label is deceptive, "[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole." *Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) (citation and internal quotation marks omitted); *see also Fink v. Time Warner*, 714 F.3d 739, 742 (2d Cir. 2013) (noting that "context is crucial"). As this Court has previously explained:

> A plaintiff can plead injury and causation for purposes of Sections 349 and 350 in at least one of two ways. First, the plaintiff can plead that she was exposed to a material deceptive act and relied on that misrepresented fact to her detriment. The plaintiff is directly injured when she pays a higher price than she otherwise would have paid based on her belief in the fact that is misrepresented. . . . Second[,] . . . a plaintiff can also plead both injury and causation under GBL §§ 349 and 350, by alleging that the defendant's misleading or deceptive advertising campaign caused a price premium, that the price premium was charged both to those who saw and relied upon the false representations and those who did not, and that, as a result of the price premium, plaintiff was charged a price she would not otherwise have been charged but for the false campaign.

*Fishon*, 620 F. Supp. 3d 80, 99–100 (S.D.N.Y. 2022); *see also Gomez v. PetPivot, Inc.*, 2026 WL 507708, at *9 (S.D.N.Y. Feb. 24, 2026) (explaining that "[a] plaintiff need not allege that she purchased defendant's product in reliance on a misrepresentation or omission to state a claim under §§ 349 and 350").

To evaluate whether a challenged advertisement is false or misleading, the Court reviews

---

of the "underlying reasoning or conclusions regarding injury and other courts have relied on *Fishon*"), *report and recommendation adopted*, 2025 WL 2306641 (E.D.N.Y. Aug. 11, 2025); *see also Peck Garrido v. Xgimi Tech. Inc.*, 2025 WL 3165671, at *5 (E.D.N.Y. Nov. 12, 2025); *Hernandez v. Wonderful Life Co., LLC*, 2024 WL 4882180, at *7 (S.D.N.Y. Nov. 25, 2025); *Pizarro v. Sazerac Co., Inc.*, 2024 WL 4290647, at *14 (S.D.N.Y. Sept. 25, 2024).

11

it "as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). Traditionally, courts have focused on the "particular advertisement" that is the subject of challenge. *Fink*, 714 F.3d at 742; *see Mantikas*, 910 F.3d at 636–37; *Brockington v. Dollar General Corp.*, 695 F. Supp. 3d 487, 495 (S.D.N.Y. 2023); *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 369 (S.D.N.Y. 2021); *Budhani*, 527 F. Supp. 3d at 679. The Second Circuit has acknowledged that "when ambiguity might exist related to certain representations on a product's label, context can be crucial in determining whether a reasonable consumer would have been misled or deceived, as 'under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception.'" *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (summary order) (quoting *Fink*, 714 F.3d at 742). Language in one advertisement, however, will not necessarily defeat a claim of deception based on language in a different advertisement. More recently, however, in *MacNaughton v. Young Living Essential Oils, LC*, the Circuit appears to have expanded the field of vision. In determining whether the labeling of the defendant company's products there was misleading, the court looked not only at the language of the particular advertisement, but also to the statements that the company's salespeople had been directed to make and to statements on the defendant's website. 67 F.4th 89, 97 (2d Cir. 2023).

In determining whether language in a disclaimer or on the back of a label dispels the misleading message communicated by the front of the label, courts ask whether the challenged statements are unambiguous. *Bates v. Abbot Labs*, 2025 WL 65668, at *2 (2d Cir. Jan. 10, 2025) (summary order). Where a product label contains "misleading information set forth in large bold type on the front of [a package]," a reasonable consumer is entitled to rely on the inferences created by that information without consulting the "small print on the side of the box."

12

*Mantikas*, 910 F.3d at 637 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).  "*Mantikas* instructs that in considering advertisements regarding a product's nutritional content, a small-print ingredient list cannot 'cure' front-label representations that are otherwise highly deceptive because 'reasonable consumers expect that the ingredient list contains more detailed information about the product that confirm other representations on the packaging.'" *Hardy v. Ole Mexican Foods, Inc.*, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023) (summary order) (quoting *Mantikas*, 910 F.3d at 637).  Where the front of the package does not contain an "express" misrepresentation, a court is not precluded from examining the back of the package to determine whether any misleading impression is dispelled.  *Id.* at *3.  Put differently, "when ambiguity might exist related to certain representations on a product's label, context can be crucial in determining whether a reasonable consumer would have been misled or deceived." *Bates*, 2025 WL 65668, at *1.  And the Court may ultimately conclude, on a motion to dismiss, that the "presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* (quoting *Fink*, 714 F.3d at 742).

Additionally, under the GBL, an allegedly deceptive statement is not actionable when it constitutes "mere puffery" that a reasonable consumer would not rely on as a truthful representation of the product's qualities.  *MacNaughton*, 67 F.4th at 96.  "The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 941 (3d Cir. 1993)).  The Second Circuit has described two different kinds of non-actionable puffery: "(1) subjective statements that cannot be proven true or false and are therefore non-actionable puffery as a matter of law and (2) objective statements that can be proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on

13

them." *MacNaughton*, 67 F.4th at 96 (citing *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022)). The first, subjective category "often manifests as exaggeration[s] or overstatement[s] that mention nothing specific, but rather amount to general claim[s] of superiority expressed in broad, vague, and commendatory language that are considered to be offered and understood as an expression of the seller's opinion only." *Id.* (cleaned up). The second category consists of statements "that are *objective*—and therefore technically provable— but upon which no reasonable buyer would be justified in relying." *Id.* "Even if a claim is provable as false, if it is 'so patently hyperbolic that any allegations that it misled consumers are facially implausible,'" it is non-actionable puffery that "no reasonable buyer would be justified in relying on.'" *Id.* at 96–97 (quoting *Int'l Code Council*, 43 F.4th at 60). "Once the statement is identified as both provable as false and plausible, a defendant can only prevail on the puffery defense after a fact-intensive inquiry on how a reasonable buyer would react," an inquiry that "cannot be resolved at the pleadings stage." *Id.* at 97.

Applying those standards under the GBL to the allegedly deceptive advertisements at issue here, the Court starts with the packaging of the Gummies. Plaintiffs challenge the statement on the front label of the package that Grüns offers "Comprehensive Nutrition." The front of the label also describes the product as "Superfoods Green Gummies," a "Dietary Supplement," and notes that it "Supports Gut Health Energy Immunity Recovery Beauty Cognition." FAC ¶ 1. Plaintiffs allege that the claim that the Gummies offer "Comprehensive Nutrition" is false and misleading because "[t]he Gummies lack key macronutrients like protein and fat, contain inadequate amounts of critical nutrients like fiber and iron, and none of others, like calcium and omega-3 fatty acids, and cannot plausibly replace the nutritional complexity of fruits and vegetables and all other targeted supplementation." *Id.* ¶ 5. Plaintiffs reason that the

14

terms "comprehensive" and "complete" are synonymous, Dkt. No. 35 at 3–4, 17, and that the use of the modifier "comprehensive" with nutrition thus conveys that the Gummies constitute "'a standalone, comprehensive nutrition solution' that 'eliminate[s] the need for all other supplements or the consumption of fruits and vegetables,'" *id.* at 17 (quoting FAC ¶ 29).

Plaintiffs do not contend that the language of the package should be taken literally—that the Gummies provide either complete or comprehensive nutrition such that a person who eats a pack of the Gummies need not eat anything else in order to survive. That is what the plain text read in isolation states. The definition of nutrition is "[t]he action or process of supplying, or of receiving, nourishment or food." *Nutrition*, The Oxford English Dictionary (3d ed. 2004). Nourishment, in turn, is understood to be "[t]he action, process, or fact of nourishing; nurture," and "nourishing" means "to sustain life and health". *See Nourishment*, The Oxford English Dictionary (3d ed. 2003); *Nourishing*, The Oxford English Dictionary (3d ed. 2003). Thus, the provision of comprehensive "nutrition" in isolation is naturally read to mean that the recipient receives *all* necessary nutrients, including all macronutrients and micronutrients necessary to sustain life. A diet that truly provides complete or comprehensive nutrition eliminates the need for a person to eat any other food. Taken literally, the representation regarding complete or comprehensive nutrition would mean that a consumer could eat only the Gummies and nothing else. Such a representation might be reasonably credited if made by a wellness resort or health food spa about the program it offers for visitors. When made by a purveyor of gummies, it is plainly hyperbolic, and no reasonable consumer could understand that a small packet of gummy bear supplements that weighs .7 ounces and that is advertised as a "Dietary Supplement" could replace the need to eat any other foods. The very notion of a "supplement" is that it adds to what is being consumed and not that it replaces it. Accordingly, the statement that the Gummies

provide "comprehensive" nutrition is a statement "upon which no reasonable buyer would be justified in relying." *Int'l Code Council*, 43 F.4th at 60.

This case thus is distinguishable from the cases upon which Plaintiffs rely: *Weinstein v. Rexall Sundown, Inc.*, 2024 WL 4250353, at *1 (E.D.N.Y. Aug. 26, 2024) and *Cabrera v. Bayer Healthcare*, LLC, 2019 WL 1146828, at *10 (C.D. Cal. Mar. 6, 2019). In *Weinstein*, the plaintiff alleged that the label advertising "complete multivitamin gummies" accompanied by the language that the product contained "B Vitamins" and "13 Essential Nutrients" was plausibly misleading and not puffery when the product did not in fact contain Victims B1, B2, and B3. 2024 WL 4250353, at *2. The court determined that the packaging's statement that it was "complete" as used in reference to B vitamins specifically plausibly conveyed that the product contained all the B vitamins and nutrients that the FDA recommended. *Id.* at *5. In *Cabrera*, the court, considering California statutory law, held that the claim that a product was a "complete" multivitamin was plausibly misleading when the product was missing 13 vitamins that the body requires. 2019 WL 1146828, at *9. In both cases, the adjective "complete" modified the noun "vitamin." The courts held that language on the front of the package conveyed an unambiguously false impression that was not dispelled by the information on the back. In *Weinstein*, the front label unambiguously suggested that the product contained all required B vitamins. The court held that a reasonable consumer should "not be expected to look beyond the misleading representations on the front of the box to discover the truth from the ingredients list in small print on the side of the box." 2024 WL 4250353, at *5 (quoting *Campbell*, 516 F. Supp. 3d at 382). And in *Cabrera*, the front of the package conveyed that the product contained "'all' vitamins, or at least 'all' vitamins considered essential by the FDA." 2019 WL 1146828, at *10.

16

This case is different from *Weinstein* and *Cabrera*.  Defendant does not claim that its product contains all the vitamins considered essential by the FDA or all required B vitamins. The label states "comprehensive nutrition."  The United States Departments of Agriculture and Health and Human Services have suggested nutritional values for vitamins and minerals are calculated in milligrams or less.  *See* U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans 2020–2025* 146 (Dec. 2020), available at https://www.dietaryguidelines.gov/sites/default/files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf (last accessed May 19, 2026).  By contrast, nutrients include not just vitamins and minerals, but also macronutrients like fat, carbohydrates, and protein.  *See* U.S. Food & Drug Admin., *Daily Value on the Nutrition and Supplemental Facts Labels*, available at https://www.fda.gov/food/nutrition-facts-label/daily-value-nutrition-and-supplement-facts-labels (last accessed May 13, 2026)[2]; FAC ¶ 5 (distinguishing macronutrients "like protein and fat" from micronutrients "like fiber and iron"). It may be plausible to believe that a pill could contain all necessary vitamins.  It is entirely implausible to conclude that a single pack of Gummies would include all necessary nutrients for a healthy diet.

Plaintiffs thus retreat from the literal understanding of the term "comprehensive nutrition" to narrower ones.  They say that a reasonable consumer would understand that Gummies supply "all essential nutrients," Dkt. No. 35 at 13, or "essential nutrients such as calcium and magnesium" *id.* at 14; that Grüns conveys that the products can "replace all other supplementation" or "all other supplements," *id.*; that the "Gummies provide what fruits and

---

[2] "Courts in the Second Circuit routinely take judicial notice of FDA documents posted on public websites." *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *2 (S.D.N.Y. Mar. 28, 2023) (citing cases).

vegetables provide—the same nutrition, in another form," *id.*; that they "replace supplements and whole foods," *id.* at 15; that "no other supplementation, including from fruits and vegetables, is necessary," *id.*; that the products "eliminate the need for all other supplements or the consumption of fruits and vegetables," *id.* at 17; and that a consumer would understand that the gummies "comprehensively and completely replace other products: fruits, vegetables, and supplements," *id.* at 18. Plaintiffs also argue that the claim that the Gummies provide "comprehensive nutrition" is false because they cannot "replace all supplements" and "replace fruits and vegetables," *id.* at 19, and that the label conveys that the Gummies provide "comprehensive nutrition as per FDA recommendations," *id.* The FAC states that the products' packaging and advertisements convey that the Gummies provide "'everything you need' and can effectively replace multivitamins, dietary supplements, and entire food groups such as fruits and vegetables." FAC ¶ 219.

In so attempting to narrow their claim, however, Plaintiffs walk themselves into different problem. If the term "comprehensive nutrition" is not understood by its dictionary definition then it is ambiguous. Taking Plaintiffs' various stated claims, the language on the Gummies packaging that they provide "comprehensive nutrition" could mean that the Gummies contain: (1) some non-trace amount of every kind of nutrient necessary to sustain life; (2) each nutrient necessary to sustain life in the quantities necessary to sustain life; or (3) all nutrients, including ones unnecessary to sustain life, in some amount, or just certain "essential nutrients" or just nutrients such as calcium or magnesium. It could refer to any number of nutrients as being essential or could mean that someone consuming the product need never eat fruits or vegetables (as the Gummies replace fruits and vegetables), or just that the product supplements the nutrients contained in fruits and vegetables. The term "supplement" itself does not give further definition

18

to the packaging's language to resolve that ambiguity, as that term itself is indeterminate.  What needs to be supplemented is the diet of the consumer and that necessarily depends on the idiosyncrasies of the individual consumer.  What might be missing from the diet of one person might be present in abundance in the diet of another.  And what might be present in the diet of the first person might be missing in the diet of the second person.  Unless the term supplement is read to indicate everything that can be supplemented, it means nothing specific.  In short, the language "comprehensive nutrition," in isolation, does not answer the question what comprehensive nutrition means.  It is ambiguous.

A reasonable consumer interested in understanding what nutritional value the Gummies have would therefore, to understand such an ambiguous claim, naturally read the label as a whole and not stop with the language "Comprehensive Nutrition."  *See Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous.  If so, the clarification can defeat the claim.").  And read as a whole, the packaging of the Gummies would not convey a misleading impression.  No reasonable consumer could understand from the package as a whole that the Gummies contained "key macronutrients like protein and fat," that it contained adequate "amounts of critical nutrients like fiber and iron," or that it contained "calcium and omega-3 fatty acids," much less that it could "replace the nutritional complexity of fruits and vegetables and all other targeted supplementation."  FAC ¶ 5.  The back label explains what Grüns means by "comprehensive nutrition" and clarifies that the Gummies contain over 60 ingredients, including those from Whole Food Vegetables, Whole Food Fruits, Vitamins & Minerals, Super Mushrooms, Antioxidants, Adaptogens, and Gut Health Prebiotics.  Dkt. No. 30-3 at 2.  The

19

back label states that the Gummies contain 100% of the daily value of certain vitamins, but only 5% of the daily value of Carbohydrates, 21% of Dietary Fibers, and 25% of certain minerals including Iron, Iodine, and Zinc. *Id.* It is evident from the back label that the Gummies do not contain protein, fat, calcium, or omega-3 fatty acids at all. *See Devane v. L'Oreal USA, Inc.*, 2020 WL 5518484, at *4 (S.D.N.Y. Sept. 14, 2020) ("[I]t is not reasonable to assume that a product contains certain ingredients when it is not listed in the ingredient list."). Thus, "[e]ven assuming that the representation[s] on the front label might be considered ambiguous, the additional information on the . . . back label provides clarifying language that definitively dispels any arguable ambiguity on the front." *Foster*, 2023 WL 8520270, at *2; *see Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 135 (S.D.N.Y. 2022).

Plaintiffs argue that Defendant's labeling and advertisements must be read in context and that in the context of a "constantly shifting array of similarly false marketing messages," Dkt. No. 35 at 2, Defendant's advertising is misleading. The context that Plaintiffs rely upon includes marketing statements made on Defendant's website, through emails sent to consumers, on social media, and on third-party retailer websites.

In its motion to dismiss, Defendant argues that the statements made on its website constitute non-actionable puffery. Dkt. No. 30 at 22–24. Plaintiffs do not respond to Defendant's argument, and so their response is considered waived. *See Lee*, 637 F. Supp. 3d at 140 (finding argument waived by plaintiff where he "failed to raise it in his opposition brief"). In any event, any such response would lack merit. Defendant points out that several of the statements from the website simply parrot the language that the Gummies provide "comprehensive" and/or "complete" nutrition. FAC ¶ 171 ("Just comprehensive and complete nutrition"); *id.* ("comprehensive and real nutrition"); *id.* ("revolutionary comprehensive nutrition

gummy*")*; *id.* ("Comprehensive: nutrition that works"); *id.* ("Comprehensive"); *id.* ("Comprehensive"). The language is no less puffery because it is contained on a webpage rather than printed on the product packaging. The full language on the website pages dispels any notion that the Gummies contain macronutrients, can entirely replace fruits and vegetables, or can replace all other supplements. Other statements on the website clearly indicate that the product contains "20+ vitamins & minerals," *id.*; that it is "formulated from 60 nutrient-dense and whole-food ingredients," *id.*; that it has "60 whole-food bioavailable ingredients, vitamins and minerals, super mushroom, and more" that "bridge[] the gap in your daily nutrition," *id.*; and that it "replaces handfuls of health products at a fraction of the cost," *id.* Plaintiffs do not claim that any of those statements are false or misleading.

Other statements on the Grüns website are ambiguous and cannot be read literally. For example, the website asks rhetorically, "What if your kids had 100% of their daily nutrients?" *Id.* The language cannot plausibly and reasonably be read to indicate that a single packet of the Gummies replaces all the daily nutrients that a child must receive to sustain life, including fats, protein, and dietary fiber. To the extent the language can be read to make a declarative statement, it is puffery. Another website page makes the exclamatory statement: "The easiest way for kids to get all their nutrients!" *Id.* It does not say that the Gummies themselves provide all nutrients, and the remainder of the language states that it is a "[s]weet treat" that is "100% organic fruits, vegetables, and mushrooms." *Id.* The language can be read to indicate that the Gummies are better than the "leading chewable" and "leading gummy" to which they are compared. *Id.* It cannot be plausibly read to mean that it supplies all nutritional needs itself. Plaintiffs also quote from webpages that state that the "gummies are brimming with 60 premium ingredients," *id.*, and tout the health benefits of the Gummies, *id.*, but the FAC does not allege

21

any facts to suggest that such statements regarding the ingredients of the Gummies are false. Plaintiffs also identify language on the website that states that "[y]ou have nutrition gaps.  Grüns fills them."  *Id.* ¶ 191.  The webpage does not state that the Gummies fill *all* nutrition gaps.  To the contrary, it goes on to state: "Over 92% of people are deficient in the critical nutrients that Grüns covers."  *Id.*  In short, the cited statements are naturally read to indicate that the Gummies help fill the nutrition gap for one or more critical nutrients that most people lack—not that they fill all nutrition gaps, or even necessarily that they entirely fill any single nutritional gap. Plaintiffs have not identified a statement on the website that is false or misleading, and even viewing the packaging and the website together and in context does not demonstrate that Defendant's statements about comprehensive or complete nutrition are false.[3]

Plaintiffs' claims are not saved by the numerous social media and email messages to which they cite.  Many of the communications simply parrot the language of "comprehensive nutrition," or use the adjective "comprehensive" in an even less specific manner than on the packaging, referring to a "comprehensive gummy" or "comprehensive health."  *Id.* ¶¶ 30–32, 35. They make no representations about any specific quality of the product, except that they are "[p]acked with essential vitamins and minerals" and with "nutrient-rich greens and essential vitamins" and "promote digestion, balance, and overall wellness."  *Id.* ¶ 35.  There are no allegations that such statements are false.[4]  The social media messages also tout the product as a

---

[3] Cavallaro-Kearins' claim as to the statements contained on the Amazon page also fail. Plaintiffs identify a single Amazon page upon which she "further relied."  FAC ¶ 177.  That page states that Grüns is "dedicated to bringing comprehensive and complete nutrition to you through our gummies, formulated from 60 nutrient-dense and whole-food ingredients."  *Id.*  There is no allegation that the statements on that page referring to Grüns' objectives and to the 60 ingredients in the product are false.  And the allegation with respect to a price premium is tied to the claim that the product delivers "'comprehensive' and 'complete' health and nutrition" and not to any other statements.  *Id.* ¶¶ 26, 155, 157, 223.

[4] The social media advertisements also reference "100% organic fruits & veggies," "1g net carb,"

"all-in-one supplement" superior and preferable to pills and other supplements. *Id.* ¶¶ 33–34. But Plaintiffs allege that it was the message regarding comprehensive and complete nutrition, not any statement that the Gummies have vitamins and minerals, upon which they relied and that caused a price premium. Nor do Plaintiffs identify anything false about these statements. Certain of the email messages are more specific, *e.g.*, *id.* ¶ 71 ("You could eat a bowl of kale . . . or just chew 8 gummies"); *id.* ¶ 73 ("Fix your gut with 8 green gummies"), but those particular emails were sent after Plaintiffs stopped purchasing the products, *id.* ¶ 160 (Cavallaro-Kearins' last purchase was on May 5, 2025); *id.* ¶ 186 (Mestaz-Heiser purchased Grüns Adults on March 17, 2025, and again in April and May 2025), and there is no allegation that messaging regarding specific medicinal qualities of the Gummies caused a price premium.

Plaintiffs also detail Defendant's promotion of the Gummies as a solution to specific areas of health concern, including gut and digestive health, energy, focus, cognitive function, immune support, cold and flu prevention, hair/skin/nail health, and testosterone/men's health. *Id.* ¶¶ 60–69. A number of these representations are mere advertising puffery that could not be tested as true or false, and Plaintiffs have not alleged that they are otherwise misleading. *See, e.g.*, *Id.* ¶ 62 ("Gut health that fits in a lunchbox"); *id.* ¶ 63 ("#1 energy hack"). Some are more specific. For example, Grüns advertises that the Gummies "help reduce colds by 70%," *id.* ¶ 64, result in "stronger hair in just 30 days," *id.* ¶ 65, and "boost T-levels," *id.* ¶ 66. However, neither Plaintiff alleges that she relied on these advertisements in making her purchase. Nor have Plaintiffs included advertisements regarding the possibility that the Gummies will have medicinal effects in their price premium theory. *Id.* ¶ 158 (Plaintiffs "paid a price premium for a product falsely marketed as delivering 'comprehensive' health and nutrition.").

---

and "6g fiber." FAC ¶ 32. There are no allegations that such representations are false.

Cavallaro-Kearins also alleges that Grüns advertisements are misleading as targeted at children. Again, advertisements stating that the Gummies contain "all-in-one" or "comprehensive" nutrition are at most ambiguous. *Id.* ¶¶ 47–49. The other information contained within those advertisements would accordingly resolve any ambiguity, as they clarify that the Gummies do not contain nutrition sufficient to sustain life, but rather "21+ vitamins and minerals," "prebiotics & adaptogens," and "whole fruits and veggies." *Id.* ¶ 47; *see also id.* ¶ 49 ("20 essential vitamins and minerals"), *id.* ¶ 58 ("60+ whole-food ingredients" and "20+ vitamins and minerals"). If the "misleading element is ambiguous[,] . . . clarification can defeat the claim." *Davis*, 297 F. Supp. 3d at 334. And Plaintiffs have not stated that advertisements that the Gummies "taste[] like candy" or have "superfoods ingredients" are false. *Id.* ¶ 51. The same is true for advertisements that state that the Gummies are the "easiest way for kids to get their greens," and that if "your kid refuses veggies," you can "start here" with the Gummies. *Id.* ¶ 58. Plaintiffs have simply not alleged that these statements are false.

There is a subset of Plaintiffs' claims that it is plausible a reasonable consumer might find to be misleading. Those are the statements and advertisements from Grüns targeting GLP-1 users in particular. In order to state a claim, "[p]laintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Cavallaro-Kearins pleads that "she was taking a GLP-1 receptor agonist medication and was drawn to Defendant's representations that the Gummies addressed the nutritional needs and side effects of GLP-1 users." FAC ¶ 164. She alleges that Defendant "exploits" GLP-1 users' concerns about nutrient absorption and digestive health by "representing that the Gummies

24

replace nutrients lost while on GLP-1 medication and provide a solution to the wide variety of issues associated with its use." *Id.* ¶ 184. She also alleges that Defendant targets individuals taking GLP-1 receptor agonist medications like Ozempic and Wegovy. *Id.* ¶ 36. The allegedly deceptive advertisements include one stating that for those on "a weight loss journey" with Ozempic, the Gummies "are packed with 100% of your essential nutrients and prebiotics in a convenient, on-the-go pouch," *id.* ¶ 37, and that a consumer can get "all nutrients on Ozempic" by consuming the Gummies, *id.* ¶ 38. Unlike the statements on the products label as to comprehensive or complete nutrition, these statements are significantly more targeted—the language could be reasonably read to represent that GLP-1 medications create specific and uniform gaps in a healthy diet and that the Gummies help fill that gap. So read, the communication would not suggest literally that the Gummies provide total nutrition full stop or that they fill *any* gap that any consumer might have in his or her diet, but that they would fill specific gaps created by GLP-1 medications in particular. Other advertisements targeting GLP-1 users are even more specific and state that the Gummies are "specifically designed to fill in the gaps, ensuring that you're getting essential vitamins, minerals, and fiber every day," *id.* ¶ 37, and highlight the fiber content of the Gummies to Ozempic users, *id.* ¶¶ 38, 41. The use of the definitive article suggests that GLP-1 medications create identifiable gaps specific to that medication and that the Gummies fill those gaps in particular.

Even if the advertisements could be understood to be ambiguous, there is no surrounding context that would dispel a reasonable consumer's understanding that the Gummies contain the nutrients needed to fill gaps created by the medication. Several of the Ozempic ads contain an explanation that the Gummies contain "60+ whole-food ingredients," "21+ vitamins & minerals," and "6g of fiber." *Id.* ¶ 38. That information clarifies that the Gummies do not

25

contain every conceivable macro and micronutrient.  But it does not alleviate the allegedly misleading perception that the Gummies fill the deficiencies in specific vitamins and minerals created by the use of a GLP-1 medication.

Although Plaintiffs have identified potentially misleading advertisements, they are also required to adequately plead that the advertisement was actually deceptive; in other words, that use of GLP-1 medications creates specific nutritional gaps and that the Gummies do not in fact fill those gaps.  *See Budhani*, 527 F. Supp. 3d at 675.  Plaintiff Cavallaro-Kearins alleges that the "formulation is not tailored to the specific needs of GLP-1 users and lacks the dosage strength, clinical targeting, or comprehensiveness to meaningfully address the deficiencies it invokes." FAC ¶ 130.  That statement is conclusory and assumes the very falseness that a Plaintiff is required to plausibly plead.  It does not allege that there exist any specific gaps created by GLP-1 medications or what they are or what is missing that would be necessary to fill the gaps.  As far as one can tell from the complaint, the Gummies may contain the vitamins and minerals necessary to supplement a diet of one on a GLP-1 medication.  Because Cavallaro-Kearins has failed to plausibly allege a deceptive act or misrepresentation by Grüns, the claim must be dismissed but it will be dismissed without prejudice.  *See Stutman v. Chemical Bank*, 731 N.E.2d 608, 613 (N.Y. 2000) (affirming dismissal of GBL claim where "plaintiffs . . . failed to show that the defendant committed a deceptive act").

### B.    The UCL, FAL, and CLRA Claims

The same reasonable person standard that courts apply to GBL claims applies under the UCL, FAL, and CLRA.  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and any act prohibited by the false advertising law.  Cal. Bus. & Prof. Code § 17200.  The FAL "generally prohibits advertising that contains 'any statement . . . which is untrue or misleading, and which is known,

26

or . . . should be known, to be untrue or misleading.'" *Chapman v. Skype*, 220 Cal. Rptr. 4th 217, 226 (Cal. Ct. App. 2013) (quoting Cal. Bus. & Prof. Code § 17500).  Finally, the CLRA was enacted "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.  "Courts often analyze these statutes together because they share similar attributes."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) (collecting cases); *see Binder v. Michael Kors (USA), Inc.*, 2024 WL 3227943, at *6 (S.D.N.Y. June 28, 2024).  Importantly, "all three are 'governed by the reasonable consumer test.'" *Quintanilla*, 541 F. Supp. 3d at 345 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer.").

There are important differences between New York and California consumer protection laws but those are immaterial here.  The California statutes require reliance.  "To bring a UCL, FAL, and CLRA claim, a plaintiff must allege some form of actual reliance."  *Ramos v. EyeBuyDirect, Inc.*, 2025 WL 2633103, at *10 (C.D. Cal. Aug. 27, 2025) (citing *Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 142 (9th Cir. 2020)).  "Reliance is adequately pled when a plaintiff specifies which statements the plaintiff relied on and alleges that the plaintiff would not have purchased the product absent the misrepresentation."  *Nadler v. Nature's Way Prods., LLC*, 2014 WL 12601567, at *3 (C.D. Cal. 2014) (citation omitted).  Mestaz-Heiser's California law claims also are subject to the pleading requirements of Rule 9(b).  *See Binder*, 2024 WL 3227943, at *9. Therefore, she must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were

made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).[5] "The adequacy of particularized allegations under Rule 9(b) is 'case- and context-specific.'" *Binder*, 2024 WL 3227943, at *9 (quoting *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Resp., Inc.*, 865 F.3d 71, 81 (2d Cir. 2017)).

Courts interpret the California consumer fraud statute "interchangeably" with GBL 349 and 350. *See La Rosa v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 841687, at *2 (2d Cir. Mar. 18, 2025) (summary order). *Mantikas* itself involved claims under the New York and California consumer protection laws. 910 F.3d at 634; *see Williams*, 552 F.3d at 938; *Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *2 (2d Cir. Dec. 11, 2023) (summary order). Thus, under either New York or California law, an alleged misrepresentation is not actionable if it is mere puffery. *Williams*, 552 F.3d at 939. When the front label is ambiguous rather than unambiguously deceptive, "the ambiguity can be resolved by reference to the back label." *McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023). A front label is ambiguous "when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Whiteside v. Kimberl Clark Corp.*, 108 F.4th 771, 781 (9th Cir. 2024). Here, as discussed, the term "comprehensive nutrition," if it is narrowly understood such that it is not obviously puffery, is ambiguous such

---

[5] Regardless of the substantive law to be applied, "the pleading requirements of the Federal Rules of Civil Procedure—including Rule 9(b)—govern how a claim must be pleaded, even though a state's law will govern how the claim must be proved." *Sicari v. JC Penny Corp., Inc.*, 2005 WL 3440693, at *2 n.1 (S.D.N.Y. Dec. 14, 2005) (citing 5A Wright & Miller's Federal Practice & Procedure § 1297 (3d ed. 2004)). "In evaluating the applicability of Rule 9(b), the Court also notes that, as is always the case, it is bound by the Second Circuit law pertaining to the applicability of Rule 9(b)." *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 WL 7018369, at *13 (S.D.N.Y. Nov. 12, 2015).

28

that a reasonable consumer would review the back label for additional information about those claims. *See McWhorter v. Procter & Gamble CO.*, 2025 WL 948061, at *6 (N.D. Cal. Mar. 28, 2025); *Corbett v. PharmaCare U.S., Inc.*, 2025 WL 1746308, at *4 (S.D. Cal. June 24, 2025); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

Accordingly, Plaintiffs have failed to state a claim under California law based on the product's packaging. Nor have Plaintiffs stated a claim based on the other alleged misrepresentations for the same reasons detailed above. Mestaz-Heiser also does not allege that she purchased the Gummies based on their advertisements targeting GLP-1 users.

### C.    Leave to Amend

Rule 15 provides that leave to amend "shall freely be given when justice so requires." Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Forman v. Davis*, 371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* Where, by contrast, "it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)). Accordingly, "[o]ne appropriate basis for denying leave to amend is that the proposed amendment is futile." *Id.* (citing *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir.2001)); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here, as here, there is no merit in the proposed amendments, leave to amend should be denied."). An amendment to a pleading is futile if the

proposed claim could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

The Court's conclusion that nearly all of the alleged misrepresentations are not actionable under the GBL or California statutes as a matter of law makes any amendment as to those claims futile. Leave to replead is granted only as to Plaintiffs' claims under the GBL for advertisements targeting GLP-1 users. Because Mestaz-Heiser is not alleged to be a GLP-1 user and did not purchase the Gummies in reliance on the company's representations for GLP-1 users, the California law claims are dismissed with prejudice.

## II.    Common Law Fraud

In addition to its New York and California statutory claims, Plaintiffs allege that Defendant committed common law fraud under New York and California law by "knowingly and intentionally deceiv[ing] Plaintiffs" through their marketing of the Gummies. FAC ¶¶ 285–93.

To plead a claim of fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009)); *see Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006). "To prove common law fraud, a plaintiff must show more than § 349 requires." *Miao Xin Hu v. Iovate Health Scis. USA, Inc.*, 2018 WL 4954105, at *3 (S.D.N.Y. Oct. 12, 2018); *see Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452 (E.D.N.Y. 2007) ("Section 350 has elements different from, and more relaxed than, common law fraud." (citation omitted)). Plaintiff must also plead scienter and

30

reliance. *Oswego*, 647 N.E.2d at 745. The elements of common law fraud are the same under California law, and a plaintiff must plead not only reliance, but also scienter. *See Matyas v. SummerKids, Inc.*, 2022 WL 17885687, at *5 (C.D. Cal. May 16, 2022); *Rice v. Kimberly-Clark Corp.*, 2022 WL 16804522, at *4 (E.D. Cal. Nov. 8, 2022) ("Standing to bring CLRA, UCL, and FAL claims' requires plaintiffs to allege 'actual reliance.'" (quoting *Stewart v. Electrolux Home Prod., Inc.*, 2018 WL 1784273, at *4 (E.D. Cal. Apr. 13, 2018))).

"In a common law fraud action, scienter 'can be pleaded by alleging motive and clear opportunity, or by alleging facts constituting strong circumstantial evidence of conscious behavior or recklessness on the part of defendants.'" *Felice v. Westpark Cap., Inc.*, 2024 WL 4349482, at *10 (S.D.N.Y. Sept. 30, 2024) (quoting *G-I Holdings, Inc. v. Baron & Budd*, 2003 WL 193502, at *12 (S.D.N.Y. Jan. 29, 2003)). "A plaintiff is not required to produce direct evidence of scienter because 'fraudulent intent is rarely susceptible to direct proof and must ordinarily be established by circumstantial evidence and the legitimate inference arising therefrom.'" *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 352–53 (E.D.N.Y. 2008) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007)); *see also Duran*, 450 F. Supp. 3d at 353 (explaining that a plaintiff may demonstrate this inference by (1) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (2) "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" (quoting *Lerner*, 459 F.3d at 290–91)).

Plaintiffs also must satisfy Rule 9(b)'s heightened pleading standard. *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013). "Intent" may be "alleged generally" under Rule 9(b). Fed. R. Civ. P. 9(b). However, in this Circuit, the plaintiff must still allege "facts that

31

give rise to a strong inference of fraudulent intent." *Allstate Ins. Co. v. Afanasyev*, 2016 WL 1156769, at *11 (E.D.N.Y. 2016) (quoting *Lerner*, 459 F.3d at 290).

Numerous courts in this circuit have addressed common law fraud claims brought alongside GBL Section 349 and Section 350 claims. In evaluating scienter, courts do not credit bare allegations that a defendant's "fraudulent intent is evinced by its failure to accurately identify the product on the front label . . . when it knew its statements were neither true nor accurate." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021). That is because "[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' generalized motive to satisfy consumers' desires or increase sales and profits." *Brockington*, 695 F. Supp. 3d at 515 (quoting *Davis*, 297 F. Supp. 3d at 337); *see Chill v. General Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996). Such allegations do not constitute facts that the defendant had a "motive to deceive and access to accurate information," or "circumstantial evidence of conscious behavior or recklessness." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 586 (S.D.N.Y. 2021) (quoting *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005)); *see also Barreto v. Westbrae Natural, Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021); *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 309 (S.D.N.Y. 2023); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 473 (S.D.N.Y. 2020); *Bardsley v. Nonni's Foods LLC*, 2022 WL 814034, at *14 (S.D.N.Y. Mar. 16, 2022); *Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 462 (S.D.N.Y. 2023).

Those few courts that have sustained a fraud claim where it is largely duplicative of a false advertising claim have relied on more robust allegations going to intent. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) ("Specifically, the complaint alleges (1) that [the defendant's] labeling practices violate every applicable labeling

32

standard, of which any commercial producer would be aware, and (2) that in 2009, a Vice President of [the defendant] tried and failed to prevent the state of Connecticut from banning olive oil that does not comply with the [the relevant] standards, thereby showing that [the company] was at the time aware of those standards."); *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 73 (E.D.N.Y. 2017) (the defendant had sponsored a study "whose results did not support Defendant's health claims," and had also "Corresponded with the FDA about how to circumscribe and cabin the health claims to avoid deceiving customers").

Plaintiffs' sparse allegations are insufficient to state a claim for common law fraud. Plaintiffs allege that Grüns made false representations, that it knew its representations were false, and that Plaintiffs paid a price premium as a result of those false statements. FAC ¶¶ 285–93. Plaintiffs argue that scienter can be inferred from the fact that Defendant on the same day ran two different email ads with inconsistent messages regarding the amount of fiber needed by children. Dkt. No. 35 at 24–25. One ad states: "95% of kids don't get enough fiber," while the other states that "78% of the children do not meet the recommended intake for fiber." *Id.* ¶ 20.[6] That single allegation does not clear the hurdle necessary for Plaintiffs to plead scienter. The two messages are not necessarily conflicting. It is possible that "kids" may need more fiber than "the recommended intake for fiber." Moreover, that Plaintiffs allege that 78% of children do not meet the recommended intake for fiber hardly establishes that the statement that 95% of kids do not get enough fiber is materially and knowingly false. The point of the advertisement is that a large percentage of children do not get enough fiber. Plaintiffs do not allege that either figure is false. And the discrepancy between the figures does not establish that Defendant knew it was

---

[6] The second message contains an asterisk next to the challenged statement. The language in the asterisk is not included in the pleadings.

making a false statement when it claimed that the Gummies offered comprehensive nutrition.

Plaintiffs' common law fraud claim is thus dismissed with prejudice.

## III.    Unjust Enrichment

Plaintiffs' sixth cause of action is for unjust enrichment.  Plaintiffs allege that they

"conferred a tangible economic benefit on Defendant in the form of monetary payment for the

Gummies," and that Defendant accepted that money "under circumstances that make such

retention unjust" because they "did not receive the full value of what they paid for."  FAC ¶¶

280–82.[7]

To prevail on a claim for unjust enrichment in New York, a plaintiff must establish: "(1)

defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances

were such that equity and good conscience require defendant[] to make restitution."  *Intell. Cap.*

*Partner v. Institutional Credit Partners LLC*, 2009 WL 1974392, at *8 (S.D.N.Y. July 8, 2009).

California law is to the same effect.  *See Shin v. ICON Found.*, 2021 WL 6117508, at *3 (N.D.

Cal. Dec. 27, 2021) ("The elements of a claim of unjust enrichment are: (1) receipt of a benefit

and (2) unjust retention of the benefit at the expense of another." (citation omitted)).  "Unjust

enrichment is available only in unusual situations when, though the defendant has not breached a

contract nor committed a recognized tort, circumstances create an equitable obligation running

from the defendant to the plaintiff."  *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at

*11 (S.D.N.Y. July 20, 2016) (internal quotation marks and citation omitted).[8]  Under both

---

[7] Defendant moves to dismiss Cavallaro-Kearins' unjust enrichment claim as duplicative, and both Plaintiffs' unjust enrichment claims because they are "based on the same factual allegations and theory as the statutory claims."  Dkt. No. 30 at 31–32.  The inquiry as to whether the unjust enrichment claims should be dismissed because they are duplicative or because the facts and theory underlying both are identical is the same, and the Court addresses them together.

[8] The court in *Shin* noted that "courts disagree as to whether unjust enrichment is a standalone claim under California law."  *Id.*  As it explained, the California Supreme Court has recently "allowed an independent claim for unjust enrichment to proceed."  *Id.* (citing *Hartford Cas. Ins.*

California and New York law, "an unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Koenig v. Bolder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)); *see Gamino v. Spin Master, Inc.*, 2025 WL 1421907, at *8 (C.D. Cal. Mar. 31, 2025) ("Applying the law of both states, district courts . . . have concluded that 'unjust enrichment claims should be dismissed where the violative conduct alleged is coterminous with a conventional tort or contract claim, regardless of whether the tort of contract claim is dismissed.'" (quoting *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021)).

Plaintiffs' unjust enrichment claim is based on the same facts and theories as their statutory claims under the New York and California law.  If Plaintiffs establish that Defendant made a materially false statement that would have mislead a reasonable consumer and that injured them, they would be able to recover under the New York and/or California consumer fraud laws.  If they cannot establish as much, Defendant has not been unjustly enriched.  The unjust enrichment claim adds nothing.  *See Brockington*, 695 F. Supp. 3d at 516; *Kelly*, 640 F. Supp. 3d at 305; *Valcarcel v. Ahold USA, Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021); *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) ("[C]ourts in the Second Circuit have consistently held that unjust enrichment claims are duplicative of GBL claims."); *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1029 (C.D. Cal. 2024) (addressing unjust enrichment pled alongside UCL, FAL, and CLRA claims, and explaining that

---

*Co. v. J.R. Mktg. LLC*, 353 P.3d 319, 326 (Cal. 2015)).  The Court assumes, for the purposes of this motion, that such a claim exists, or is otherwise available as a "cause of action through quasi-contract."  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see Emerson v. N. Tr. Corp.*, 2023 WL 11884751, at *6 (N.D. Cal. June 20, 2023).

California law requires courts to dismiss unjust enrichment claims where the plaintiff "does not identify any independent theory of unjust enrichment that does not rise or fall with her statutory claims" (quoting *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021))).

Plaintiffs' unjust enrichment claim is not saved, as they urge, by the fact that it is pleaded in the alternative. "In New York, a plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019); *see Barton*, 535 F. Supp. 3d at 249. That is, it cannot be pleaded in the alternative where it is not "conceivable that the plaintiff could recover under one theory but not the other." *In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 451 (S.D.N.Y. 2019) (quoting *In re Operations N.Y. LLC*, 490 B.R. 84, 100 (Bankr. S.D.N.Y. 2013)); *see NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (2d Dep't 2008))). Because Plaintiffs have failed to plead a claim under the deceptive marking laws, their unjust enrichment would necessarily fail as well, as it too is predicated on the fact that they "purchased" the Gummies "based on Defendant's misrepresentations." FAC ¶ 280. Plaintiffs have provided no reason that the unjust enrichment claim could survive where the statutory claims have not. *See In re Chantix Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2024 WL 2784234, at *31 (S.D.N.Y. Mar. 28, 2024) (explaining that "[t]o validly plead an unjust enrichment claim in the alternative, . . . a plaintiff must demonstrate how she could succeed on her unjust enrichment claim and fail on her other claims" (citations

omitted)); *Walcoff v. Innofoods USA, Inc.*, 2023 WL 3262940, at *9 & n.12 (S.D. Cal. May 4, 2023).[9]  Count VI is accordingly dismissed with prejudice.

## CONCLUSION

The motion to dismiss is GRANTED.  The motion to dismiss is granted without prejudice as to Counts I and II limited to an amendment that would cure the deficiency the Court has identified with respect to the specific advertisements targeted at GLP-1 users.  Any amended complaint must be filled within 20 days of the date of this Opinion and Order.  The motion to dismiss is granted with prejudice as to counts III–VII.  The Clerk of Court is respectfully directed to close Dkt. No. 30.


SO ORDERED.

Dated: May 19, 2026
       New York, New York

_____
               LEWIS J. LIMAN
             United States District Judge

---

[9] For this reason, Plaintiffs' citations are inapposite.  In *East Coast Advanced Plastic Surgery, LLC v. Cigna Health and Life Insurance Co.*, 2025 WL 2371537, at *13 (S.D.N.Y. Aug. 14, 2025), the court specifically noted that an unjust enrichment claim could proceed in the alternative because "there is a scenario under which the unjust enrichment claim may not prove to be duplicative," because "if the more demanding showing required for fraud and negligent misrepresentation claims is not met but the showing for unjust enrichment is," the second might survive.  There is no similar allegation here, as the California and New York statutory claims, as well as the unjust enrichment claims, all rise and fall on the existence of marketing that the reasonable person would not find to be deceptive.  *See also In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325–26 (S.D.N.Y. 2019) ("A claim is alternative and not duplicative if a plaintiff may fail on one but still prevail on the other.").